# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743,
in his own behalf,

                PLAINTIFF:

      -VS-

MARTIN HORN, et al.,

                DEFENDANT'S:

NO. 1:00-CV-00485
(JUDGE RAMBO)

<u>PLAINTIFF'S REBUTAL TO DEFENDANT'S</u>
<u>ANSWER FILED JUNE 12, 2000.</u>

TO THE HONORABLE SYLVIA H. RAMBO, JUDGE:

    Named Plaintiff **RONALD A. RILEY, AK-8743, "pro se"**, files
this herein Rebutal To Defendant's Answer Filed before this Honor-
able Court June 12, 2000.

    1. DENIED. This is a Civil Action authorized by 42 U.S.C.
§ 1983 to redress the deprivation under the color of State Law, of
rights secured by the constitution of the United States. The Court
has jurdisdiction under 28 U.S.C. § 1343. Plaintiff seek declaratory
relief pursuant to 28 U.S.C. § 2201 and 2202.

    2. ADMITTED.

    3-16. Plaintiff contends that all of the Defendants are leg-
ally responsible for the duties of their office's.

    17. Plaintiff contends that SCI-Huntingdons release sheet for
the year of 1993, will prove that Plaintiff was scheduled for rel-
ease December 23, 1993.

    18. ADMITTED.

19. ADMITTED.

20. ADMITTED.

21. ADMITTED.

22. DENIED. Plaintiff was found guilty of assaulting officer Mcfadden November 10, 1993. Plaintiff was not transferred until May 4, 1994. If Plaintiff only received 60 days why was he kept in disciplinary lockup until his transfer May 4, 1994 ? Additionally, when Plaintiff was transferred to SCI-Pittsburgh his custody level was a (4) and not the (2) with outside clearance that he had when he was housed in the Modular Unit at SCI-Huntingdon.

23. See response to paragraph 22 above.

24. ADMITTED in part and DENIED in part. It is ADMITTED that Plaintiff was transferred on May 4, 1994. It is DENIED that the Defendant's have no knowledge of the separation documentation placed on Plaintiff and SCI-Huntingdon. See Defendant's response in paragraph 28 in Defendant's Answer.

25. ADMITTED in part and DENIED in part. It is ADMITTED that Plaintiff was granted parole to the community center March 2, 1999, after completing all of his prescripted programs by the Department Of Corrections and the Pennsylvania board Of Probation And Parole. It is DENIED that the Defendant's have no knowledge of the fact that Plaintiff received (5) one year setbacks from the Pennsylvania Board Of Probation And Parole do to misconduct 668527 November 4, 1993, because it is in Plaintiff's file.

26. DENIED. Plaintiff contends that if it was not a transfer Order why did'nt Plaintiff remain at SCI-Pittsburgh ?

27. ADMITTED in part and DENIED in part. It is ADMITTED that Plaintiff was transferred back to SCI-Huntingdon. It is DENIED that Defendant's have no knowledge of the separation documentation placed

on Plaintiff and SCI-Huntingdon. See Defendant's response to paragraph 28.

28. ADMITTED in part and DENIED in part. It is ADMITTED that Buzminisky notified the Institution at Plaintiff's initial reception committee review that his file indicated an active separation from an officer. It is DENIED that he did not inform said Institution that Plaintiff should not be admitted bach inside SCI-Huntingdon.

29-30. See Plaintiff's response to FIFTH DEFENSE "failure to exhaust his available administrative remedies.

31. ADMITTED.

32. See Plaintiff's response to FIFTH DEFENSE "failure to exhaust his availble administrative remedies.

33. See Exhibit A.

34. See Exhibit A.

35. See Exhibit B.

36. See Exhibit C.

37. ADMITTED.

38. ADMITTED.

39. See Plaintiff's response to FIFTH DEFENSE "failure to exhaust his available administrative remedies."

40. See Plaintiff's response to FIFTH DEFENSE "failure to exhaust available administrative remedies."

41. ADMITTED in part and DENIED in part. It is ADMITTED that on December 8, 1999, the Pennsylvania Board Of Probation And Parole rescinded Plaintiff's parole. Secondly, if the Pennsylvania Board Of

4

Probation And Parole did not rescind Plaintiff's parole because of the retaliatory misconduct, why did they rescind it ?

42-43. ADMITTED.

44. DENIED. Plaintiff contends that all of the information on all of plaintiff's misconducts and separation documentation is in his prison file which Defendant's have in their possession.

45-46. DENIED. Plaintiff contends that all of the information on Plaintiff's custody level is in Plaintiff's file. Additionally, Plaintiff contends that the Pennsylvania Additive Classification Tool (PACT) will prove that Plaintiff is /has the lowest level (2) a prisoner can attain in the State Of Pennsylvania. Also see MCGR-ATH V. JOHNSON, cite. as 67 F.Supp. 2d 504 (E.D. Pa.1999).

47-59. These Constitutional Violations shall be established by this Honorable Court, in the event that they are deemed factual, they are ADMITTED.

<u>SECOND DEFENSE</u>

The complaint fails to state a claim for which relief can be granted.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that the Defendant's violated his FIRST, EIGHTH, and FOUR-TEENTH Amendment Rights. There are two essential elements to any § 1983 action: (1) whether the conduct complained of was committed under State Law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or Laws of the United States. KOST V. KOZAKIEWIEZ, 1 F.3d 176, 184 (3d. Cir.1993).

A motion to dismiss for failure to state a claim can only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." HISHON, 467 U.S. at 73, 104 S.Ct. 2229; see also LEATH-ERMAN, 507 U.S. at 169, 113 S.Ct. 1160. Moreover, the Court is obligated to read pro se Plaintiff's allegations liberally and

apply a less stringent standard to the pleading of a pro se Plain-
tiff than to a complaint drafted by Counsel. <u>HAINES</u>, 404 U.S. at
520-21, 92 S.Ct. 594.

### THIRD DEFENSE

This action is barred in part by the statute of limitations.

Plaintiff contends that he only used misconduct 668566 Novem-
ber 4, 1993, to establish why he was transferred and a separation
documentation placed on him and SCI-Huntingdon.

### FOURTH DEFENSE

At no time have the Defendant's, either individually or in
concert with others, deprived or sought to deprive Plaintiff of
any rights, privileges or immunities secured to him by the Const-
itution or Laws of the United States.

Plaintiff contends that this defense contain conclusions
of law to which no response is required. By way of further response,
see paragraph 47-59 of Plaintiff's Complaint.

### FIFTH DEFENSE

Plaintiff has failed to exhaust his available administrative
remedies.

On May 12, 1999, Plaintiff filed two DC-135A request slips (1
to his counselor Buzminsky, and 1 to the Unit manager Keller) req-
uesting a transfer as soon as Plaintiff arrived at SCI-Huntingdon
that went unanswered. (See Plaintiff's complaint **Id. at ¶ 29**).

On May 23, 1999, Plaintiff filed two DC-135A request slips (1
to his Counselor Buzminsky, and 1 to the Superintendent Frank, a
DC-804 official inmate grievance to the Grievance Coordinator
Diana G. Baney, and a letter to Commissioner Martin F. Horn that
went unanswered. (See Plaintiff's Complaint **Id. at ¶ 30**).

On August 16, 1999, Plaintiff filed a DC-135A request slip

to his newly appointed Counselor Ms. Halderman, and a second DC-804 official inmate grievance to the Grievance Coordinator Diana G. Baney, that again went unanswered. (Exhibit D.).

On September 6, 1999, and December 8, 1999, Plaintiff filed two DC-135A request slips to FA Block United Manager where Plaintiff was moved to that went unanswered. (Exhibit E.).

And finaLLY, ON January 3, 2000, Plaintiff filed a DC-135A request slip to the new Unit Manager of FA Block Tim Launtzthat went unanswered. (Exhibit F.).

Plaintiff asserts that the DC-ADM-804 Consolidated Inmate Grievance Review System is totally inadequate for exhausting administrative remedies at SCI-Huntingdon. There is no system in place or available to inmates that would compel the staff and/or Grievance Coordinator to except and/or docket a complaint filed by an inmate. There is no receipt or other verification given to an inmate by the Staff or Grievance Coordinator to prove that on said time he filed a grievance or request slip. At SCI-Huntingdon inmate grievances are placed in a box market request slip box on the Block in which he is housed. The only means by which an inmate at SCI-Huntingdon can prove that he filed a request slip or grievance is to take said document to the library and make a copy of it before placing it in said box as in the instant case.

Plaintiff asserts that by simply ignoring or refusing to docket or answer a inmate complaint or request slip the Institution can and do preclude a inmates initial review, thereby precluding final review. (Exhibit G.).

Plaintiff contends that the total inadequacy of the administrative remedies available at SCI-Huntingdon violates Plaintiff's Fourteenth Amendment Right to due process and equal protection of the law because clearly the system at SCI-Huntingdon is not speedy and a fair hearing process.

Plaintiff asserts that he has made a good faith attempt to exhaust administrative remedies by (1) filing numerous request slips to his Counselor's and Unit Mananger's (2) FILED TWO OFFICIAL inmate grievances to the Grievance Coordinator Diana G. Baney about plaintiff's situation at SCI-Huntingdon, (3) filed a request slip to the Superintend apprising him of the on going situation, and (4) sent a letter to the Commissioner Martin F. Horn bringing this matter to his attention before filing this complaint before this Honorable Court.

Plaintiff contends that the Defendant's was given ample opportunity to address the herein Constitutional Violations. With deliberate indifference for Plaintiff's well being chose to turn a blind eye to this until Plaintiff filed this complaint before this Honorable Court. Now the Defendant's come forward with this response after totally ignoring all of Plaintiff's appeals for relief for over ten (10) months.

### SIXTH DEFENSE

At all material times, Defendant's acted with a reasonable good faith belief in the lawfulness of their actions and are entitled to immunity.

Plaintiff seeks equitable relief from Defendant's Horn, Frank, Myers, Grace, Levy, Launt, Keller, Director Of Inmate Services, and Word, in their official capacities and seeks both monetary and equitable relief from the Defendant's in their individual capacities, the Eleventh Amendment does not bar Plaintiff's claims. MCGRATH V. JOHNSON, cite as 67 F. Supp. 2d 499 (E.D. Pa.1999).

### SEVENTH DEFENSE

Plaintiff is entitled to no relief, whether compensatory, declaratory, injunctive, punitive or otherwise.

Plaintiff contends that he is entitled to receive injunctive relief to remedy Constitutional Violations which are not physically injurious. See e.g., PERKINS V. KANSAS Dept. of CORRECTIONS, 165 F 3d 803, 807-09 (10th Cir.1999); DAVIS V. Dist. of COLUMBIA, 158 F.

3d 1342, 1346 (C.D. Cir.1998).

ISSUE ONE

DEFENDANT'S VIOLATED PLAINTIFF'S
EIGHTH AND FOURTEENTH AMENDMENT RIGHT
TO THE U. S. CONSTITUTION WITH THE
RETALIATORY TRANSFER OF PLAINTIFF BACK
TO SCI-HUNTINGDON.

1. Plaintiff asserts that on or about March 24, 1999, a Pet-
ition For Transfer was forwarded to the Director of Inmate Bureau
of services, Central Office within the Pennsylvania Dept. of Corr-
ections, from the SCI-Pittsburgh Administration. Defendant's upon
Reclassifying Plaintiff to another Correctional Institution within
the Dept. of Corrections (DOC), observed that Plaintiff had a sep-
aration documentation from officer's, agents and employees within
SCI-Huntingdon.
Defendant's in spite of such separation documentation, with delib-
erate indifference for Plaintiff's well being, placed Plaintiff on
the transfer list back to SCI-Huntingdon where Reprisal and retal-
iatory measures could be initiated towards Plaintiff in violation
of Plaintiff's Eighth and Fourteenth Amendment to the U.S. Const-
itution. (Plaintiff's Complaint Id. at ¶ 48).

2. On May 12, 1999, when Plaintiff arrived back at SCI-Hunt-
ingdon Defendant Buzminsky notified the Administration at SCI-Hun-
tingdon of the separation documentation in Plaintiff's file. In
spite of such separation documentation with deliberate indiffer-
ence for Plaintiff's well being, Defendant's forced Plaintiff
back into this Hostile and Life Threatening environment in viol-
ation of Plaintiff's Eighth and Fourteenth Amendment to the U.S.
Constitution. (Plaintiff's Complaint Id. at ¶ 49).

3. The Pennsylvania Board Of Probation And Prole conspired
with the Department Of Corrections and SCI-Huntingdo Administrat-
ion to violate Plaintiff's Constitutional rights because on Septe-
mber 28, 1999, the Pennsylvania Board Of Probation And Parole rev-

iewed Plaintiff's file at his parole interview at SCI-Huntingdon
which contained the separation documentation. With Deliberate In-
difference for Plaintiff's well being, the Pennsylvania Board Of
Probation and Prole ignored the Separation Documentation in Plain-
tiff's file also despite the fact that the Board gave Plaintiff
five (5) one year setbacks due to the alleged assault November 2,
1993 that led to said separation, and Plaintiff bringing said facts
to the interviewers attention at his review.

4. Plaintiff contends that as his record Through out his incar-
ceration will reflect Plaintiff has utilized his incarceration to re-
habilitate himself by developing the necessary social, educational
and trade skills to enable him to function in society. To return Pla-
intiff to the Hostile Environment at SCI-Huntingdon shows Deliberate
Indifference on the part of all of the Defendant's (who have/had acc-
ess to Plaintiff's prison records to again subject him to this poten-
tially degenerative situation) for Plaintiff's protected rights und-
er the U.S. Constitution.

5. Plaintiff who has the lowest custody level (2)a prisoner
can attain in the State Prison system, who  has completed all of his
prescribed programs by the Department Of Corrections and the Pennsyl-
vania Board Of Probation And Parole, with additional achievements
academically, socially, and vocationally, and who has remained mis-
conduct free for approximately five (5) years prior to being trans-
ferred back to SCI-Huntingdon, should have been transferred to a cus-
tody level (2) Prison which is the reason Plaintiff was supposed to
have been transferred from SCI-Pittsburgh to SCI-Green's outside unit.

6. Plaintiff points out that if he was not going to be trans-
ferred to a Prison that reflect his custody level (2) and achieve-
ments through out his incarceration, why did'nt the Defendant's lea-
ve Plaintiff where he was instead of transfering him into a Hostile
and Life Threatening Environment at a Prison that is a level (4) fac-
ility with separation documentation on Plaintiff and said Prison if
the Defendant's were not Retaliating against Plaintiff.

<u>ISSUE TWO</u>

<u>DEFENDANT'S VIOLATED PLAINTIFF' FIRST,
EIGHTH, AND FOURTEENTH AMENDMENT BY
FAILING TO TRAIN OR SUPERVISE EMPLOYEES/
DEFENDANT' WHICH RESULTED IN A VIOLATION
OF PLAINTIFF'S PROTECTED RIGHTS.</u>

1. On May 23, 1999, Defendant Hoover approached Plaintiff in the main corridor at SCI-Huntingdon and informed him that "they should not have brought your ass back here. That is what is wrong with you stupid ass neggers. But I am going to get your ass if that is the last thing that I do". In addition to filing a DC-135A request slip to Plaintiff's Counselor Buzminsky, the Superintend Frank, a official inmate grievance to the Grievance Coordinator Baney, Plaintiff sent a letter to the Commissioner Horn apprising him of the situation that Plaintiff was forced to endure at the hands of SCI-Huntingdon Administration. (Plaintiff's Complaint Id. at ¶ 50).

2. On May 29, 1999, six days after his Threat, while on a visit with his family Defendant Hoover in retaliation against Plaintiff accused Plaintiff's female visitor of putting her hand in Plaintiff's genital area thereby cancelling Plaintiff's visit and giving him a Class (1) misconduct charging him with a Class (1) Catagory B-4 (Engaging in sexual acts with others or sodomy) and a Class (1) D-25 (Violation of visiting regulation 2D Unacceptable Personal Conduct). After refusing to review the only evidence (video tape from camera (1)) in this case the Hearing Examiner Defendant Stidd dismissed the Class (1) Category B-4 charge. (Plaintiff's Complaint Id. at ¶ 33).

3. Plaintiff's contends that Defendant Hoover's Threat, Racial Comments, and Retaliatory Misconduct, along with Defendant Stidds refusal to review the evidence in this case, and all of the other Defendant's aware of Plaintiff's situation at SCI-Huntingdon who did nothing to correct the situation, deprived Plaintiff of his rights, privileges, and immunities under the Law, Constitution of Pennsylvania, and the First, Eighth, and Fourteenth Amendment to the U.S. Constitution.

4. Plaintiff points out that Superintendent Frank, Deputy Superintend Myers, Major Of The Guard Grace, Intelligence Captain Levy,

and Commissioner Horn are legally responsible for failure to train or supervise municipal employees. The Defendant's actions showed a "Deliberate Indifference" for the rights of Plaintiff. <u>CITY of CANTON V. HARRIS</u>, 489 U.S. 378, 388, 109S.Ct. 1197, 103 L.Ed.2d 412 (1989).

5. In order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be showed that (1) municipal policy makers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling ; and (3) the wrong choice by an employee will frequently cause deprivation of Constitutional Rights. <u>WALKER V. CITY of NEW YORK</u>, 974 F.2f at 297-98 (2d Cir.1992), <u>CARTER V. CITY OF PHILADELPHIA</u>, Cite. as 181 F.3d 339 (3rd Cir.1999).

6. Plaintiff asserts that (1) the municipal policy makers (Depart Of Corrections, Pennsylvania Board Of Probation And Parole, and SCI-Huntingdon Administration) know to a moral certainty that employees will confront the kind of situation in which a inmate is accused of assaulting or allegedly assaulting a Fellow Officer/Staff, (2) the situation involves a difficult choice because the employees have to refrain from allowing his or her personal feelings or opinion about a situation that involves Staff and a inmate from clouding his or her judgment, and (3) the wrong choice by an employee as in the instant case results in Threats, Racial Comments, and other forms of Retaliation that frequently cause deprivation of Constitutional Rights. **Walker supra Id.**

<u>ISSUE THREE.</u>
<u>THE PENNSYLVANIA BOARD OF PROBATION AND PAROLE CREATED A LIBERTY INTEREST THROUGH IT'S MANDATORY LANGUAGE PAROLING PLAINTIFF TO A COMMUNITY CORRECTION CENTER.</u>

1. On March 2, 1999, the Pennsylvania Board Of Probation And Parole (Hereafter Board) sent Plaintiff a Directive of the Boards Decision February 12, 1999, stating:

> "THE MANDATES TO PROTECT THE SAFETY OF
> THE PUBLIC AND TO ASSIST IN THE FAIR
> ADMINISTRATION OF JUSTICE CAN BE ACHIEVED

> THROUGH YOUR RELEASE ON PAROLE. YOU
> THEREFORE ARE: PAROLED TO A COMMUNITY
> CORRECTIONS CENTER FOR A MINIMUM OF 3MONTHS".

(See Exhibit A. attached to Plaintiff's Complaint)

2. On March 25, 1999, Paul M. O'Connor, Director Region (2) stated in his Transfer Order:

> "PLEASE BE ADVISED THAT A PAROLE RELEASE
> DATE FOR THE ABOVE NOTED INMATE HAS BEEN
> ESTABLISHED FOR MONDAY, NOVEMBER 22, 1999".

(See Exhibit B. attached to Plaintiff's Complaint)

3. Plaintiff asserts that in the above Directives issued by the Board and the Director Of Region (2), these State Agencies used language of an unmistakable mandatory character, requiring that certain procedures "must" be met in order to be paroled, absent specified substantive predicates, and that Plaintiff was given a parole release date giving rise to a reasonable expectation that he would be released. HEWITT V. HELMS, 459 U.S. 460, 472, 103 S.Ct. 871 (1983).

4. The "Mandatory Language" in this case is the words "You Therefore Are Paroled", and "Please Be Advised That A Parole Date Has Been Established For Monday, November 22, 1999". The "Substantive Predicates" are the two circumstances (The Mandate To Protect The Safety Of The Public, And To Assist In The Fair Administration Of Justice Can Be Achieved Through Your Release On Parole) that placed substantive limits on official discretion to parole a inmate. See STEPHANY, 835 F.2d at 500, quoting OLIM, 461, U.S. at 249, 103 S. Ct. at 1747.

5. Plaintiff contends that a statue, rule, regulation, or directive creates a liberty interest (or entitlement) if it limits the discretion of officials. In SPECTER V. GARRETT, the Court held that the complainant must show that particularized standards or criteria guid the decision makers in order to claim protection under the due process clause, cite as 971 F.2d at 955 (3rd Cir.1992), KENTUCKY DEPT. OF CORRECTIONS V. THOMPSON, 490 U.S. 454, 462, 109 S.Ct. 1910 (1989); OLIM V. WAKINEKONA, 461 U.S. at 249, 103 S.Ct. at 1747; MEA-

CHUM V. FANO, 427 U.S. at 226-27; CONNECTICUT Bd. of PARDONS V.
DUMSCHAT, 452 U.S. 458, 466-67, 101 S.Ct. 2460 (1981); MENDOZA V.
BLODGETT, 960 F.2d 1425, 1428 (9th Cir.1992), cert. denied, 113
S.Ct. 1005 and 113 S.Ct. 1027 (1993).

6. Plaintiff contends that the most common way of limiting dis-
cretion is to use "Explicitly Mandatory Language" in connection with
requiring substantive predicates. LAYTON V. BEYER, 953 F.2d 839 (3rd
Cir.1992); BANKS V. FAUVER, cite as 801 F.Supp. 1425 (D.N.J. 1992).

7. Plaintiff points out that in denying Plaintiff parole after
creating a liberty interest in obtaining parole release March 2, 1999,
and March 25, 1999, the Board used it's two (2) substantive predicat-
es ("The Mandates To Protect The Safety Of The Public, And To Assist
In The Fair Administration Of Justice Cannot Be Achieved Through Your
Release On Parole. Your Are Therefore Refused Parole") to guide the
decision makers (Board) in reaching the above decision. Ipso facto,
Plaintiff is entitled to protection under the due process clause.
**Specter supra, id.**

### ISSUE FOUR

DEFENDANT'S CONSPIRED TO DENY PLAINTIFF
PAROLE THROUGH THE USE OF A RETALIATORY
MISCONDUCT AND ARBITRARY, CAPRICIOUS, AND
UNCONSTITUTIONAL DECISION MAKING IN VIO-
LATION OF PLAINTIFF'S FOURTEENTH AMENDMENT.

1. On May 23, 1999, six (6) days before receiving the retal-
iatory misconduct from Defendant Hoover May 29, 1999, Plaintiff sent
a DC-135A request slip to his Counselor (Buzminsky), Superintend-
ent (Frank), a official inmate grievance to the Grievance Coordinator
(Baney), and a letter to the Commissioner (Horn) informing them of
Defendant Hoover's Threat to retaliate against Plaintiff for the
alleged assault October 10, 1993. (Id. at ¶ 30).

2. At the hearing held June 2, 1999, the hearing examiner ref-
used to review the Video Taped Evidence from camera (1) in the in-
side visiting room the day in question between 2:00 PM and 3:00 PM.

This refusal was in violation of DC-ADM 801 (c) which states that "the hearing examiner reviews all evidence:". (Exhibit H)

3. After refusing to review the only evidence that could prove Plaintiff's innocents (the video taped evidence fronm camera (1)) hearing examiner Defendant Stidd dismissed the B-4 charge but found Plaintiff guilty of the D-25 charge on Defendant Hoover's word alone despite the existence of independent evidence.

4. On June 3, 1999, Plaintiff appealed the second charge category D-25 to the Prison Review Committee (PRC). After refusing to also review the video tape from the visiting room camera the PRC stated "since the hearing examiner dismissed the sexual act charge B-4 because he did not believe that it was a sexual act, we feel that a reduction in the second is merited and reduced it from a class (1) D-25 to a Class (2) 35 which means "Any violation of a rule or regulation in the Inmate Handbook not specified as a Class (1) misconduct.

5. In the Inmate Handbook DC-ADM 801 (a) there are five (5) misconduct charges that are not Class (1) misconduct charges:

> # 30. Body punching, or horse play.
> # 31. Taking unauthorized food from the dinning room or kitchen.
> # 32. Failure to report to work, or unexcused absence from work.
> #33. Smoking where prohibited.
> # 34. Possession of any item not authorized for retention or recept by the inmate not specifically enumerated as class (1) contraband.

DC-ADM 801 (a) in relevant parts id. (Exhibit I.)

6. Plaintiff points out that the PRC could not, and did not apply any of the above charges to him because (1) the alleged incident took place in the visiting room, and (2) none of the above charges Plaintiff was accused of commiting by Defendant Hoover

May 29, 1999. Additionally, to accuse Plaintiff of one thing, and convict him of something else totally unrelated to the act in which he is charged is a violation of the Fourteenth Amendment to the US Constitution.

7. Plaintiff contends that the Parole Boards decision December 8, 1999, was arbitrary, capricious, and unconstitutional because (1) on a routine bases the Parole Board grant/release prisoners on Parole who have received Class (2) misconducts, (2) the PRC did not specify which one of the five (5) Class (2) charges Plaintiff violated, (3) none of the five (5) Class (2) would make Plaintiff a Threat To The Public Safety, And The Fair Administration Of Justice Can Be Achieved Through Plaintiff's Release On Parole because the PRC did not specify which one of the five (5) Class (2) charges Plaintiff violated, (4) Plaintiff has informed the Parole Board on three occasions through Appeals that this Class (2) misconduct was unspecified as to which one Plaintiff committed, and at no time did Plaintiff's visitor commit the act stated in the retaliatory misconduct.

8. Plaintiff asserts that the Parole Board applied a different standard to his situation that is routinely does not do to other parolee in violation of Plaintiff's liberty interest in the due process of the Fourteenth Amendment.

9. All of the Defendant's conspired with Defendant Hoover in violating Plaintiff's protected rights by refusing to take the appropriate action to circumvent the violations of Plaintiff's Constitutional Rights as a direct result of Defendant Hoover's retaliatory actions against Plaintiff.

C O N C L U S I O N.

WHEREFORE, Plaintiff, RONALD A. RILEY, AK-8743, "pro se" respectfully request this Honorable Court to dismiss Defendant's Answer To Plaintiff's Complaint and grant Plaintiff the monetary/equitable/injunctive relief that he seeks in his Complaint and

this Rebutal To Defendant's Answer To Plaintiff's Complaint.

DATED: 6-19-2000

Respectfully Submitted:

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

## CERTIFICATE OF SERVICE

_         This is to certify that on this date a true and correct copy of Plaintiff's Rebutal To Defendant's Answer To Plaintiff's Complaint was served First Class Mail, and by placing said in his Prison Mail Box for service upon the following:

OFFICE OF THE ATTORNEY GENERAL
MARYANNE M. LEWIS
15th Flr., STRAWBERRY SQUARE
HARRISBURG, PA 17120

DATED: 6-19-2000

                                        Respectfully Submitted,

                                        RONALD A. RILEY, AK-8743
                                        PLAINTIFF pro se
                                        1100 PIKE STREET
                                        HUNTINGDON, PA 16654

E  X  H  I  B  I  T (A).

DC-141  PART II B
Rev. 6-84
DISCIPLINARY HEARING REPORT

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part |
|---|---|---|---|---|---|
| AK-8743 | Riley, Ronald | SCIH | 6/2/99 | 0917 | A129076 |

| INMATE PLEA | ☐ Guilty  ☑ Not Guilty | ☐ No Plea  ☐ Other | Verdict | ☑ Guilty (a)  ☐ Not Guilty | |

HEARING ACTION

CHARGES  4  Engaging in sexual acts with others, or sodomy
25 Violation of visiting regulations (unacceptable personal conduct)

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED  Submits written version
Pleads NG. Testifies his female visitor's hand was
in his and both rested on his "upper thigh"
not my crotch area and not on my genitals."
Requests HEX to view video tape. HEX notes that
MC# A129076 is based on personal observation of C
Hoover not a review of video tape. Riley's request
for stay witnesses denied (as per Part II A).
Credence extended to written testimony of CO Hoover
over Riley's version. HEX believes Riley engaged in
unacceptable personal conduct while on a visit etc.
by allowing his female visitor to deposit her + his
on his genital area while covering her hand with
his. Such conduct violates V.R. rules & regulations
and serves to establish charge 25 but is not viewed
as a sex act. Guilty: 25. Dismiss: 4. Sanction
15 days Cell Restriction eff 6/2/99. Copy of C/R policy
attached. 60 days loss of visiting privileges

| | | The inmate has heard the decision and has been told the reason for it and what will happen. ex. 6/2/99 except legal + sports |
|---|---|---|
| ☐ YES | ☐ NO | |
| ☐ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☐ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☐ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

SEE APPENDICES
☑  II A

NAME(S) OF HEARING EXAMINER/COMMITTEE
(TYPED OR PRINTED)
Mr. J. Stidd
Hearing Examiner

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

| DC-141    PART II C | COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| Rev. 6-84    HEARING SUPPLEMENT<br>INMATE VERSION AND WITNESS STATEMENTS | DEPARTMENT OF CORRECTIONS    Huntingdon |

| DC Number<br>AK-8743 | Name<br>Ronald A. Riley | Institution | No. from PAR |

**INMATE'S VERSION**

Sir, on May 29th 1999 I was on a visit with my visitor (Niña Laytun). As we where sitting in the front section of the visiting area my visitor and I where holding hands. My hand was on top of her hand as our hands rested on my upper leg where they remained until officer Hoover approached us and informed me that my visit was cancelled. At no time was her hand on my groin nor did I quickly lift her hand for any reason.

Sir a review of the visiting room film from the camera by the entrance of the inside visiting room will verify this fact because I was sitting right in front of the camera. In the 14½ years that I was incarcerated I have never received a warning or infraction for this type of behavior.

Sir at no time did I or my visitor violate or disregard any visiting room entire/regulations. Nor were we warned of any such activity at any time!

                                        Sincerely,

                                        [signature]

Video entered into evidence requested!

E X H I B I T (B).

EA/06

DC-141  PART III                COMMONWEALTH OF PENNSYLVANIA
PROGRAM REVIEW COMMITTEE ACTION        DEPARTMENT OF CORRECTIONS
☑ Misconduct Appeal ☐ Periodic Review ☐ Other

| DC Number | Name | Institution | Date of Review | No. from PART I |
|---|---|---|---|---|
| AK-8743 | RILEY, Ronald | Huntingdon | 6/4/99 | A129076 |

PROGRAM REVIEW COMMITTEE'S DECISION AND ITS RATIONALE

P.R.C. Formal Review of Misconduct #A129076

BASIS OF APPEAL:

A.  The punishment is disproportionate to the offense.

B.  The evidence was insufficient to support the decision.

DISCUSSION:

The Appellant asked the PRC to review the tape from the camera in the Visiting Room.  The Appellant feels that the camera will vindicate him in regards to this misconduct.  The Appellant states at no time did his visitor have her hand in his genital area as stated in the misconduct.

PRC at SCI-Huntingdon has reviewed the Appellant's points of appeal and corresponding discussion.  We determine that it is not a question of utilizing the tape or not, for this was not an incident that was caught on tape, but rather a personal observation by an officer.  The PRC does note that the Hearing Examiner dismissed the sexual act charge, because he believed that it was not a sexual act.

The PRC after reviewing and investigating all the information in regards to this case feel that a reduction in Class charges and sanction is merited.  PRC feels that the misconduct should be dropped from a Class I to a Class II charge and that the cell restriction should be dismissed, but the 60 days loss of visiting privileges should remain in effect.  The PRC feels that the Officer's observation and misconduct report provides enough information to substantiate that the Appellant engaged in unacceptable personal conduct and such conduct violates Visiting Room rules and regulations.  It is for the reasons stated above that we feel the Appellant should loose visiting privileges for a period of 60 days.

The action of the Hearing Examiner is sustained and amend from Class I #25 to Class II #35.  Drop 15 days cell restriction, keep 60 days loss of visiting privileges effective 6/2/99, and reinstate visiting privileges on 8/1/99.

mw

DECISION RELATIVE TO HEARING COMMITTEE'S VERDICT

☐ Not Applicable      ☐ Sustain      ☑ Sustain-Amend      ☐ Refer Back for Further Study      ☐ Exonerate Inmate

| ames of Program Review Committee Members | Signatures | Date |
|---|---|---|
| R. Launtz, Unit Manager | | 6-7-99 |
| S. Williamson, Deputy Supt. for Centralized Services | | 6-7-99 |

E   X   H   I   B   I   T   (C).

NOTICE OF P ARD DECISION
PBPP-15(6/96)



COMMONWEALTH OF PENNSYLVANIA
PENNA. BOARD OF PROBATION AND PAROLE


DATE: 07/06/1999

CLIENT NAME:   RONALD A. RILEY                    PAROLE NO:   7297S
INSTITUTION:   SCI - PITTSBURGH                   INSTITUTION NO:   AK8743


AS RECORDED ON 07/06/1999 THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

TEMPORARILY SUSPEND BOARD ACTION, RECORDED 02-12-99, DUE TO MISCONDUCT AND
RELIST FOR INTERVIEW ON NEXT AVAILABLE DOCKET. (10/99)

*MEMO 06-11-99*
*SLR 07-06-99*



            CLIENT COPY
RONALD A. RILEY                  AK8743
SCI - PITTSBURGH
P. O. BOX 99901
PITTSBURGH, PA        15233

*Kathleen Zwierzyna*
KATHLEEN ZWIERZYNA
BOARD SECRETARY

E  X  H  I  B  I  T  (D).

| DC-135A | COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| | DEPARTMENT OF CORRECTIONS |
| **INMATE'S REQUEST TO STAFF MEMBER** | INSTRUCTIONS |
| | Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. |

1. TO: (NAME AND TITLE OF OFFICER)
Mr. HEATHER HALDEMAN, COUNSELOR

2. DATE
8-16-99

3. BY: (INSTITUTIONAL NAME AND NUMBER)
RONALD A. RILEY, AK-8743

4. COUNSELOR'S NAME
HALDEMAN

5. WORK ASSIGNMENT
PAINT SHOP

6. QUARTERS ASSIGNMENT
FA. 1023

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

Ms. Haldeman,

I am sending you this request slip to inform you of my need for a transfer out of this Institution. As you know in my files is a active separation between me and this Institution. I have received two bogus misconducts and a number of threats from Officer Hoover since I returned to this Institution against my will. I would greatly appreciate it if you would expedite a transfer on my behalf as soon as possible.

Thank you,

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY          ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                              DATE

DC-804
PART 1

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| DIANA G. BANEY | SCI-HUNTINGDON | 5-29-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| RONALD A. RILEY, AK-8743 | | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| PAINT SHOP | EA 3050 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Ms. Baney, this is my second complaint to you about my situation here at SCI-Huntingdon. In addition to making verbal threats Officer Hoover on 5-29-99 lied on me and my family member while out on a visit. At no time did this Officer observe my female visitor's hand any where near my testicle area and the camera in the inside visiting room will prove it. Ms. Baney, all of this could have been avoided if this Institution would have transferred me out of this hostile environment. If you will only take a look at my files you will see that I was put in the hole for almost six months and then transferred and a separation placed on me and this Institution for an alleged assault on Officer McFadden. Again Ms. Baney, I am requesting a transfer out of this before something bad happens to me as a result of the hostility being exhibited towards me by your Staff.

B. Actions taken and staff you have contacted before submitting this grievance:

In addition to sending request slips to my counselor Buzminsky, Unit Manager Keller, Grievance Coordinator Baney, Captain Markly, Unit Manager Tim Launrz and Superintendant Franks.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    _____
Signature of Grievance Coordinator                              Date

E   X   H   I   B   I   T (E).

DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

DEPARTMENT OF CORRECTIONS

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) | 2. DATE |
|---|---|
| UNIT MANAGER, KURT GRANLUND | 9-6-99 |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| RONALD A. RILEY, AK-8743 | HALDEMAN |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
|---|---|
| PAINT SHOP | FA. 1018 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

Mr. Granlund,

As a follow up to our conversation 9-3-99, I am sending you this request slip for my transfer. I am fully aware of transfer procedures but that is not the case in this situation. Sir, I am not suppose to be in this Institution. And as I have said both of those misconducts was a set-up. Also you know that my cell has been searched numerous of times for no reason since I have been on FA.Block.

Thank you,

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                                                          DATE

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

DEPARTMENT OF CORRECTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) UNIT MANAGER, KURT GRANLUND | 2. DATE 12-8-99 |
|---|---|

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) RONALD A. RILEY, AK-8743 | 4. COUNSELOR'S NAME HALDEMAN |
|---|---|

| 5. WORK ASSIGNMENT PAINT SHOP | 6. QUARTERS ASSIGNMENT FA. 1018 |
|---|---|

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Mr. Granlund,

On 9-6-99, I sent you a request slip expressing my situation in this Institution and my need for a transfer. At this point in time I am seriously considering filing a Law Suit against this Institution for the treatment that I have been receiving since my arrival. Again Sir, I am not suppose to be in this Institution and I am constantly under threat of misconduct and bodily harm from Officer Hoover.

Thank you,

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                                              DATE

E  X  H  I  B  I  T (F).

DC-135A

## COMMONWEALTH OF PENNSYLVANIA

### DEPARTMENT OF CORRECTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| | |
|---|---|
| 1. TO: (NAME AND TITLE OF OFFICER) <br> UNIT MANAGER, TIM LAUNTZ | 2. DATE <br> 1-3-2000 |

| | |
|---|---|
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) <br> RONALD A. RILEY, AK-8743 | 4. COUNSELOR'S NAME <br> HALDEMAN |

| | |
|---|---|
| 5. WORK ASSIGNMENT <br> PAINT SHOP | 6. QUARTERS ASSIGNMENT <br> FA. 1018 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

Mr. Launtz,

As the new Unit Manager of FA. Block and one of the Board Members of the PRC that reviewed that bogus misconduct against me on May 29, 1999. You have a good idea of my situation in this Institution and my need for a transfer. Sir, if you will look into my file you will see that I am not suppose to be in this Institution. Again Sir, I am requesting a transfer out of this Institutionfor fear of my well being. Attached hereto is copies of all of the request slips that I have put in for said transfer to my Counselor, Unit Manager before you, and Superintendent.

Thank you,

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY                        ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                                              DATE

E  X  H  I  B  I  T  (G).

DC-ADM 804

5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

**NOTE:** At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

All other appeals will be submitted as follows.

2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.



DC-ADM 804

D. Final Review

1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review. Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3. Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee **(CORC)** for further reviews.

The address of the **CORC/COMRC** is:

> **PA DEPARTMENT OF CORRECTIONS**
> **CENTRAL OFFICE REVIEW COMMITTEE**
> **PO BOX 598/2520 LISBURN ROAD**
> **CAMP HILL, PA  17001-0598**

4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7. For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal. The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision. The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8. The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E. Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1. DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.
2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I
3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1,2. Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.

E X H I B I T (H).



**POLICY STATEMENT**
Commonwealth of Pennsylvania ● Department of Corrections

| Policy Subject: | Policy Number: |
|---|---|
| **INMATE DISCIPLINARY AND RESTRICTED HOUSING PROCEDURES (DC-ADM 801)** | **DC-ADM 801** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| May 20, 1994 | | Sept. 20, 1994 |

## I.  Authority

The authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901 (b) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 175, as amended.

## II.  Purpose

A consistently applied system of sanctions in response to inmate violations of Department of Corrections rules and regulations is established to ensure the safe and orderly operation of institutions and Community Corrections Facilities.

## III.  Applicability

This policy shall be applicable to all inmates and staff in all Department of Corrections' facilities and Community Corrections Centers.

## IV.  Definitions

For the purpose of this policy, the following definitions shall apply:

A. Central Office Review Committee (CORC) - A panel of at least three (3) Central Office staff members appointed by the Commissioner, including an attorney from the Office of Chief Counsel, which conducts final reviews of institution grievance and misconduct appeals.

B. Disciplinary Custody - The maximum restrictive status of confinement to which inmates guilty of Class I misconducts may be committed. Inmates shall be placed in disciplinary custody status for periods no longer than ninety (90) days per misconduct report.

C. Hearing Examiner - An employe of the Department of Corrections Central Office who conducts inmate misconducts hearings. The hearing examiner reviews evidence, determines relevance of witnesses, interviews witnesses, determines guilt or innocence, and imposes sanctions consistent with this policy.

D. Misconduct - Any violation of Department of Corrections Rules, Regulations or Policies as outlined in Section VI of this policy.

E. Pre-Hearing Confinement - A temporary administrative status of confinement in the inmate's general population cell or the RHU pending the outcome of a misconduct hearing.



E  X  H  I  B  I  T (I).

DC-ADM 801

poisons, intoxicants, materials used for fermentation, property of another, weapons or other items which in the hands of an inmate present a threat to self, others or to the security of the institution. When an inmate is charged under this section with possession of an item of contraband which is a weapon or item which in his hands presents a threat to others or to the security of the institution, and the item also has a legitimate use in the area discovered, credible evidence that the item has been used only for the legitimate purpose shall be considered to mitigate the misconduct to a Class II.

9. Possession, or use of a dangerous or controlled substance.
10. Possession, or use, of intoxicating beverages.
11. Extortion, or blackmail.
12. Any violation of the Pennsylvania Crimes Code not in Category I (must be specified).

Class I Charges Category C

13. Tattooing, or other forms of self mutilation.
14. Destroying, altering, tampering with, or damaging property.
15. Indecent exposure.
16. Engaging in, or encouraging unauthorized group activity.
17. Refusing to work, or encouraging others to refuse to work.
18. Breaking restriction or quarantine.
19. Gambling or conducting a gambling operation.
20. Unauthorized use of the mail or telephone.
21. Possession or circulation of a petition, which is a document signed by two or more persons requesting or demanding that something happen or not happen, without the authorization of the Superintendent.
22. Using abusive or obscene language to an employe.

Class I Charges Category D

23. Failure to stand count or interference with count.
24. Violating a condition of a pre-release program (must be specified).
25. Violation of visiting regulations (must be specified).
26. Lying to an employe.
27. Presence in an unauthorized area.
28. Loaning or borrowing property.
29. Failure to report the presence of contraband.

Class II Charges

30. Body punching, or horse play.
31. Taking unauthorized food from the dining room or kitchen.
32. Failure to report to work, or unexcused absence from work.
33. Smoking where prohibited.
34. Possession of any item not authorized for retention or receipt by the inmate not specifically enumerated as Class I contraband.
35. Any violation of a rule or regulation in the Inmate Handbook not specified as a Class I misconduct charge.

B. Any attempt to commit any of the above listed charges shall constitute a misconduct of the same classification as the completed act would be.

C. **Misconduct Sanctions**

1. Misconduct sanctions shall be imposed by the hearing examiner.

2. Inmates found guilty of Class I misconduct charges may be subject to any one or more of the following sanctions:

   a. Assignment to disciplinary custody status for a period not to exceed _ninety_ (90) _days_ per misconduct report.