IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743
in his own behalf,

           PLAINTIFF:

                           NO. 1:00-CV-00485
                            (JUDGE RAMBO)

   -VS-

                                FILED
                              HARRISBURG, PA

                              SEP 1 3 2000

MARTIN HORN, et al.,              MARY E. D'ANDREA, CLERK
                             Per

         DEFENDANT'S:

MOTION FOR AN ORDER
COMPELLING DISCOVERY

TO THE HONORABLE SYLVIA H. RAMBO, JUDGE:

    Plaintiff in the above action, **RONALD A. RILEY, AK-8743,** **"pro se"**, move this Honorable Court for an Order pursuant to Rule 37 (a) of the Federal Rules of Civil Procedure compelling Defendant's (Horn, Frank, Myers, Grace, Levy, Launtz, Keller, Director of Inmate Bureau Services, Stidd, Hoover, and Ward) to answer fully Interrogatories Set (1) 5, 6, 7, 8, 9, 10, 12, 13, 18, 19, 20, 21, and Third Set of Interrogatories 13, copies of which are attached hereto as Exhibit A. And to produce for inspection the following Documentation to be copied number 1-21, copies of which are attached hereto as Exhibit C. Plaintiff submitted these Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure, and Production and Inspection of Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure July 3, 2000. As of this date Defendant's failed to make a disclosure required by Rule 26(a).

        Plaintiff also move this Honorable Court for an Order pursuant
to Rule 37(a)(4) requesting the aforesaid Defendant's to pay Plaint-
iff the sum of $400.00 as resonable expenses in obtaining this order
on the ground that the Defendant's refusal to amswer the Interrogat-
ories and Production and Inspection of Document has no substantial
justification.
        This Motion is based upon the papers and files in this matter.


DATED: *9-11-2000*



                              Respectfully Submitted,

                              RONALD A. RILEY, AK-8743
                              PLAINTIFF pro se
                              1100 PIKE STREET
                              HUNTINGDON, PA 16654

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RONALD A. RILEY, AK-8743, in　　　:
his own behalf,　　　　　　　　　:

　　　　　　　PLAINTIFF:　　　:

　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　:　　NO. 1:00-CV-00485
　　　　　　　　　　　　　　　:　　　(JUDGE RAMBO)

　　　-VS-　　　　　　　　　:

　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　:

MARTIN HORN, et al.,　　　　　:
　　　　　　　　　　　　　　　:
　　　　　　DEFENDANT'S:

_MEMORANDUM IN SUPPORT OF PLAINTIFF'S_
_MOTION TO COMPEL DISCOVERY_


TO THE HONORABLE SYLVIA H. RAMBO, JUDGE:


　　　Named Plaintiff in the above action, **RONALD A. RILEY,**
**AK-8743, "pro se",** now submits his Memorandum In Support of Plaint-
iff's Motion To Compel Discovery.

　　　1. The following documents are attached in support of the Mot-
ion To Compel Discovery for the convenience of this Honorable Court:

　　　Exhibit A. Plaintiff's First, and Third Set of Interrogatori-
es to Defendant's.

　　　Exhibit B. Defendant's Answers and Objections to Plaintiff's
First, and Third Set of Interrogatories.

　　　Exhibit C. Plaintiff's First Request For Production of Docu-

ments To Defendant's.

    Exhibit D. Defendant's Response To Plaintiff's First Request For Production of Documents.

    Exhibit E. Letter from Plaintiff dated August 14, 2000, trying in Good Faith to resolve this matter.

    Exhibit F. Defendant's Response to Plaintiff's letter in Good Faith to resolve this matter.

    Exhibit G. Plaintiff's Second letter dated August 23, 2000, trying to resolve this matter.

    Exhibit H. Defendant's Response to Plaintiff's second letter in Good Faith to resolve this matter.

## SUMMARY OF THE CASE

    2. On March 7, 2000, Plaintiff filed a Complaint against Defendant's alleging that (1) Defendant's ordered Plaintiff transferred back to SCI-Huntingdon where there is a active separation on Plaintiff and said institution for allegedly assaulting a correctional officer; (2) Defendant's put Plaintiff's Life in Danger by excepting Plaintiff bach into SCI-Huntingdon having full knowledge of the active separation on Plaintiff and said institution; (3) Defendant's subjected Plaintiff to racial comments and actions upon his arrival back to SCI-Huntingdon due to their racial beliefs; (4) Defendant's conspired through a retaliatory transfer and misconduct to deny Plaintiff parole; (5) Defendant's with deliberate indifference through their actions violated Plaintiff's Constitutional Rights.

    On June 12, 2000, Defendant's filed Answer to Plaintiff's Complaint.

On June 19, 2000, Plaintiff filed his Rebuttal To Defendant's Answers filed June 12, 2000.

On July 3, 2000, Plaintiff served upon Defendant's a First, Second, and Third Set of Interrogatories and First Request for Production of Documents.

Defendant's initial response to these discovery requests was received by Plaintiff on August 10, 2000, and August 21, 2000. In response to several of Plaintiff's Interrogatories (See Defendant's Answers to First Set of Interrogatories 5, 6, 7, 8, 9, 10, 12, 13, 18, 19, 20, 21, and Third Set of Interrogatories 13, and in response to Plaintiff's Request for Production of Documents) Defendant's Objected on the grounds that it is privileged, would compromise the orderly and secure operation of the institution, the rehabilitation of the inmate, vague, or changed the interrogatory all together.

After review of the answers and objections to Interrogatories and objections to production of documents, Plaintiff determined: (1) Defendant's refused to answer pertinent questions that pertain directly to this case; (2) Defendant's withheld numerous highly relevant documents which relate to his Complaint; and (3) Defendant's objections/answers to Plaintiff's First, and Third Set of Interrogatories and request for Production of Documents obstruct discovery and fail to respond to legitimate written discovery requests as required by Rule 33 and 34 of the Federal Rules of Civil Procedure.

After an exchange of correspondence requesting opposing counsel's voluntary cooperation in resolving this discovery dispute, Plaintiff and counsel for Defendant's exchanged letter's. The purpose of Plaintiff's letter's was to try to convince opposing counsel that Defendant's had failed to give responsive answers to Interrogatories and produce relevant documents. Plaintiff also addressed the numerous objections to discovery interposed by Plaintiff. Defendant's counsel did nothing to try an help Plaintiff to resolve this matter and refused to provide Plaintiff access to documents withheld by Defendant's. Plaintiff concluded that Defendant's has no intention of satisfying the obligations imposed by Rules 26, 33, and 34 of

4

the Federal Rules of Civil Procedure, and must now request that the
Court issue an Order Compelling Discovery.

3. Plaintiff is entitled to Further Answers to Interrogatori-
es, Access to Relevant Documents, and Imposition of Appropriate San-
ctions Upon Defendant's:

A. Plaintiff's First Set of Interrogatories to Defendant's.
This section sets forth the remaining deficiencies in Defendant's
response to Plaintiff's First Set of Interrogatories.

**Interrogatory # (5).** Defendant intentionally avoided answering
Plaintiff's question as it is a fact that the transferring of lower
custody level prisoners is different then higher level prisoners due
to security reasons. Plaintiff is referring to the transferring of
prisoners who custody level is (2), not transferring of inmates from
one custody level to another or prerelease transfers of custody lev-
el (2) inmates. Plaintiff has the right to inspect this policy bec-
ause it is what the Defendant's were suppose to follow in the tran-
sferring of Plaintiff May 12, 1999, as he is a custody level (2)
prisoner six years over his minimum sentence making him ineligible
for pre-release.

**Interrogatories # (6), (7), (8), (9), (10), (12), (13).** Defend-
ant intentionally avoided answering Plaintiff's question, on a rout-
ine bases Counselor's, Unit Manager's, and other Department of Corr-
ections staff classify prisoners as problematic or non-problematic
cases who do not qualify for pre-release because they are past their
minimum sentence.

**Interrogatories # (18), (19), (20), (21).** Plaintiff contends
that he is entitled to this information because (1) Plaintiff in
his Complaint ¶ (49), (55), (57), (58), alleges that the Defendant-
's recklessly and with gross negligence and deliberate indifference
to Plaintiff's well being, put Plaintiff's Life In Danger by excep-
ting him back into SCI-Huntingdon, and (2) if said Defendant's was
demoted, transferred or forced to retire due to negligent behavior,

that relates to a critical contention made by Plaintiff in his Complaint.

B. Plaintiff's Third Set of Interrogatories to Defendant's. This section discloses similar deficiencies in Defendant's Answer to Plaintiff's Third Set of Interrogatories.

**Interrogatory # (13).** Plaintiff contends that he is Entitled to this information because it goes to prove a critical contention made by Plaintiff in his Complaint that this Defendant recklessly and with gross negligence and deliberate indifference to the needs/rights of the prisoners on his unit, (EA. Block) routinely violate their Constitutional Rights as he has done to Plaintiff.

C. Plaintiff's First Request for Production of Documents to Defendant's. This section sets forth the deficiencies in Defendant's failure to produce documents in response to Plaintiff's First Request for Production of Documents.

**Document Request # (1), (2), (3), (4).** Defendant intentionally failed to produce the request for all rules, regulations, and policy directives of the Department of Corrections that pertain to transferring of custody level (2) prisoner's from one institution to another institution. Plaintiff contends that he has a legal right to anything which is in any way "relevant to the subject matter involved in the pending action". Plaintiff has a right to know "what the rules, regulations, and policy directives say about the transferring of custody level (2) prisoner's as Plaintiff who is a custody level (2) prisoner contends in his Complaint that the Defendant's with deliberate indifference for Plaintiff's well being, reclassified and transferred him into a Hostile and Life Threatening Environment ¶ 45, 46, 48, 49 Id. Prison Officials should not be able to avoid discovery of relevant information merely by claiming it is "Confidential", The party which asserts a legal privilege against disclosing information, such as the privilege of "confidentiality", has the burden of proving that the particular information is in fact privileged. ROGERS V. TRI-

STATE MATERIALS CORP., 51 F.R.D. 234, 247 (N.D.W. Va. 1970); VIA V.-
CLIFF, 470 F.2d 271, 276 (3rd. Cir. 1972).

   **Document Request # (5).** In Plaintiff's Second Set of Interrog-
atories to Defendant Ward # (8), Plaintiff asked "Is it standard pol-
icy and/or practice to give a (12) month hit or setback for a Class
(2) misconduct"? Defendant Ward responded by saying "no". Then went
on to say "Review dates are scheduled based upon the inmates entire
criminal and institutional history". Plaintiff contends that since he
received a (12) month hit or setback (review date) based upon his
entire criminal and institutional history which is contained in his
prison file, Plaintiff have a legal right to this relevant informat-
ion as it is the bases of the Defendant's actions towards Plaintiff.
Defendant's must give all of the information which is available to
them to Plaintiff, including facts known to their attorney. WYCOFF V.-
NICHOLS, 32 F.R.D. 370 (W.D. Pa. 1970) and 52 F.R.D. 235 (1972).

   **Document Request # (6), (7).** Plaintiff contends that he is ent-
itled to this information as it deals directly with why Plaintiff was
transferred. Plaintiff has a right to know the identity of lay witn-
esses/documents prior to the submission of the final pretrial state-
ment/documents. It is the duties of the Defendant's pursuant to Rule
26 and 34 of the Federal Rules. Again, Prison Officials should not
be able to avoid discovery of relevant information merely by claiming
it is "Confidential". The party which asserts a legal privilege aga-
inst disclosing information, such as the privilege of "Confidential-
ity", has the burden of proving that the particular information is
in fact privileged. **ROGERS supra Id.**

   **Document Request # (8).** Plaintiff contends that he has a legal
right to this information as it will prove Plaintiff's assertions in
¶ 27, 28, 29, 49, of his Complaint Id. Again, Prison Officials should
not be able to avoid discovery of relevant information merely by cla-
iming it is "Confidential". The party which asserts a legal privilege
against disclosing information, such as the privilege of "Confident-
iality", has the burden of proving that the Particular information is
in fact privileged. **ROGERS supra Id.**

**Document Request # 9.** Plaintiff asserts that the Superintendent Frank, Deputy Superintendent Myers, Major Grace, Intelligence Captain Levy, Unit Manager Launtz, and Keller, hold positions in the SCI-Huntingdon Administration that would be concerned with a prisoner being transferred back to their institution who was removed for assaulting one of their Correctional Officer's as it would be a security issue. Defendant's Horn and Ward contend that it would seriously compromise the Department, SCI-Huntingdon and their staff's ability to carry out a significant penological goal-- the rehabilitation of the Plaintiff, and a security risk to provide for inspection and copying the documents that Plaintiff request pursuant to Rule 34 of the Federal Rules, but are unable to locate follow up documents on a prisoner who posed a serious enough security concern that he was kept in the hole (confinement) for five months, transferred and a Active Separation placed on him and said institution. Plaintiff contends that he is entitled to documents which directly relate to a critical contention made by Plaintiff in his Complaint.

**Document Request # (10), (11).** plaintiff contends that he has a legal right to inspect these documents as they go to prove ¶ 30, 31, 32, 50, 51, 52, of Plaintiff's Complaint Id. Plaintiff contends that this information will prove that other prisoner's have filed complaints/request slips against this Defendant for the same retaliatory and racist behavior complained of by Plaintiff.

**Document Request # (12).** Plaintiff contends that on a routine bases the Officer's at SCI-Huntingdon use Video Tape from the Cameras in the visiting room as the bases of their misconducts. Additionally, Plaintiff contends that this document will prove his contentions in ¶ 34, of his Complaint Id.

**Document Request # (13).** Plaintiff contends that this information will prove that in numerious cases Defendant Stidd utilized the Video Tape from the cameras in the visiting room as the bases of his evidence in misconducts written up off of the visiting room cameras.

**Document Request # (14), (16), (17).** This information pertain

directly to Plaintiff's contention that the Defendant's used the
retaliatory misconduct of Defendant Hoover May 29, 1999, to deny Pla-
intiff parole recomendation August 6, 1999, and parole September 28,
1999. Prison Officials should not be able to avoid discovery of rel-
evant information merely by claiming it is "confidential". The party
which asserts a legal privilege against disclosing information, such
as the privilege of "confidentiality", has the burden of proving that
the particular information is in fact privileged.

Document Request # (15). Plaintiff has a legal right to insp-
ect this Memo generated by the Parole Agent at SCH-Huntingdon as it
pertain directly to the retaliatory misconduct given to Plaintiff
May 29, 1999, by Defendant Hoover.

Document Request # (18). Plaintiff contends in ¶ 45, and 46 of
his Complaint that his custody level (2) is the lowest level attain-
able by a prisoner in a correctional institution in Pennsylvania.
And at that level he could have been transferred to any of the (24)
male institutions in this State. In addition to having a legal right
to this information, Plaintiff contends that this information will
prove his allegations in his Complaint. Adittionally, prison offici-
als should not be able to avoid discovery of relevant information
merely by claiming it is "confidential". The party which asserts a
legal privilege against disclosing information, such as the priv-
ilege of "confidentiality", has the burden of proving that the part-
icular information is in fact privileged.

Document Request # (19), (21). Plaintiff contends that this
information is very relevant to his Complaint as Plaintiff received
a retaliatory misconduct approximately six months before his release
date. Plaintiff contends that this information will prove that the
Defendant's do/have released prisoners who received misconducts six
months before their release date, but applied another standard to
Plaintiff. The Defendant's know who they released on parole and who
they did not, and only need to review the files of those released
with misconducts prior to their release date.

Document Request # 20. Plaintiff contends that this informa-

tion contains the reasons why the staff members voted the way that they did. It is the contention of Plaintiff That the retaliatory misconduct by Defendant Hoover, and the Hostile Environment at SCI-Huntingdon influenced this vote thereby Plaintiff was denied parole. Plaintiff asserts that he has a legal right to this information as it goes to prove a critical contention in his Complaint. Prison Officials should not be able to avoid discovery of relevant information merely by claiming it is "Confidential". The party which asserts a legal privilege against disclosing information, such as the privilege of "Confidentiality", has the burden of proving that the particular information is in fact privileged.

## CONCLUSION AND REQUEST FOR SANTIONS

4. For the foregoing reasons, Plaintiff respectfully request that this Honorable Court issue an Order: (1) compelling Defendant's to answer fully Plaintiff's First, and Third Set of Interrogatories; (2) compelling Defendant's to make all relevant documents available for inspection and copying; and (3) imposing sactions against Defendant's pursuant to Rule 37, including Plaintiff reasonable fees occasioned by Defendant's failure to engage in discovery.

DATED *9-11-2000*

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

## CERTIFICATE OF SERVICE

This is to certify that on *9-11-2000* , a true and correct copy of Plaintiff's Montion And Memorandum In Support Of Plaintiff's Motion To Compel Discovery was served First Class Mail, and by placing said Motion in his prison mail box for service upon the following:

OFFICE OF THE ATTORNEY GENERAL
MARYANNE M. LEWIS
15th Flr., STRAWBERRY SQUARE
HARRISBURG, PA 17120

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

E   X   H   I   B   I   T (A).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743, in
his own behalf,                    :

                PLAINTIFF:         :

                                   :

    -VS-                           :        No. 1:00-CV-00485
                                   :           (JUDGE RAMBO)

MARTIN HORN, et al.,               :

                DEFENDANT'S:       :

                                   :

                                   :


                PLAINTIFF'S FIRST SET OF INTERROGATORIES.


        In accordance with Rule 33 of the Federal Rules Of Civil Pro-
cedure, Plaintiff request that Defendant MARTIN F. HORN answer the
following interrogatories separately and fully in writing under oath
and that the answers be signed by the person making them and be ser-
ved on Plaintiff within 45 days of service hereof.

        In response to these interrogatories, furnish all information
which is available to you, including information in the possession
of your Attorneys or investigator's for your Attorney's, and not
merely information known of your own personal knowledge.

        If you cannot answer the following interrogatories in full,
after exercising due diligence to secure the information, so state,
and answer to the extent possible, specifying your inability to ans-
wer the remainder, and stating whatever information or knowledge
you have concerning the unanswered portions.

        These interrogatories shall be deemed continuing, so as to
require sopplemental answers as new and different information mat-
erializes.

1. What is your name and address ?

2. Where are you employed and for how long ?

3. What are your duties and responsibilities of your office ?

4. Is it standart policy to transfer a prinsoner back to the same Institution that he was removed from for assaulting a Correctional Officer, and who has an Active Separation in his file as a result of said assault ?

5. What is the policy for transfering custody level two (2) prisoner's ?

6. What is a problematic case, pertaining to incarcerated person's ?

7. Is the status of being a problematic case a result of the charge in which a prisoner was convicted of ?

8. At anytime can a prisoner's problematic case status be changed, and if so what are the conduction's ?

9. What kind of charges constitute a problematic case, pertaining to a prisoner ?

10. Are prodlematic cases prohibited from being transferred to certain Institutions in Pennsylvania ?

11. If the answer to question (10) is yes, what are the names of these Institutions ?

12. Have any custody level (2) prisoner's clasified as problematic cases been transferred to SCI-Greens Outside Unit in the past

3

five (5) years ?

    13. If the answer to question (12) above is yes, give the amount of prisoner's, time of transfer, name, and charges.

    14. Who initiated the transfer of Plaintiff from SCI-Pittsburgh to SCI-Huntingdon ?

    15. Was Plaintiff's prison file reviewed before it was decided to transfer him to SCI-Huntingdon ?

    16. What are all of the names of the persons involved in the decision to transfer Plaintiff back to SCI-Huntingdon ?

    17. Did you or your Office review and/or give final approval of the transfer of Plaintiff from SCI-Pittsburgh to SCI-Huntingdon ?

    18. What is the reason Superintendent Frederick K. Frank was transferred from SCI-Huntingdon ?

    19. What is the reason Deputy Superintendent Clinton R. Myers employment at SCI-Huntingdon was terminated ?

    20. What is the reason Unit Manager Tim Launtz employment at SCI-Huntingdon was terminated ?

    21. What is the reason Office McFadden employment at SCI-Huntingdon was terminated ?

    22. What is the name and duties of the Director Of Inmate Bureau Services ?

    23. What is the name of the person responsible for transfers of prisoner's in Pennsylvania ?

4

DATED: _7-3-2000_

Respectfully Submitted,

RONALD A. RILEY  AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA. 16654

## CERTIFICATE OF SERVICE

This is to certify that on the above date, service of a true and correct copy of the enclosed discovery request was served on Counsel for Defendant's First Class Mail, and, by placing said document in my prison mail for service at the below address:

OFFICE OF ATTORNEY GENERAL
15th FLr., STRAWBERRY SQUARE
HARRISBURG, PA 17120

DATED: *7-3-2000*

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743, in :
his own behalf, :

   PLAINTIFF: :

       : NO. 1:00-CV-00485
       :  (JUDGE RAMBO)

  -VS- :

      :
MARTIN HORN, et al., :

   DEFENDANT'S: :
       :

<u>PLAINTIFF'S THIRD SET OF INTERROGATORIES</u>

   In accordance with Rule 33 of the Federal Rules Of Civil Procedure, Plaintiff request that Defendant Keller answer the following interrogatories separately and fully in writing under oath and that the answers be signed by the person making them and be served on Plaintiff within 45 days of service hereof.

   In response to these interrogatories, furnish all information which is available to you, including information in the possession of your Attorneys or investigator's for your Attorney's, and not merely information known of your own personal knowledge.

   If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

   These interrogatories shall be deemed continuing, so as to require sopplemental answers as new and different information materializes.

2

1. What is your name and address ?


2. Where are you employed and for how long ?


3. What are your duties and responsibilities of your office ?


4. Did you at anytime in 1999, review Plaintiff's prison file ?


5. If the answer is yes to question (4) did you observe the separation documentation on Plaintiff's and a Correctional Officer at SCI-Huntingdon in Plaintiff's file ?


6. What did you do if anything upon observing the separation documentation in Plaintiff's file on a Correctional Officer at SCI-Huntingdon ?


7. Were you aware of the alleged assault by Plaintiff November 2, 1993, on Correctional Officer McFadden before you reviewed Plaintiff's prison file ?


8. Did Counselor Buzminsky notify you of the separation documentation in Plaintiff's file on a Correctional Officer ?


9. Upon discovering separation documentation on a prisoner for assaulting a staff/officer, what course of action as the Unit Manager of the block in which the prisoner is housed are you supposed to take ?

3

10. Have you meet with Plaintiff since his arrival back to SCI-Huntingdon May 12, 1999, and discussed with him about any retaliatory action against him as a result of the alleged assault November 2, 1993 ?

11. Did you talk with Unit Manager Tim Launtz about the misconduct Plaintiff received May 29, 1999 ?

12. Are you presently under investigation for any unlawful activity ?

13. How many grievances/complaints have been filed against you in the past five (5) years ?

14. What Order's did you receive from Central Office to do with Plaintiff upon his arrival back to SCI-Huntingdon ?

15. Did you writ an offical report on Plaintiff's situation upon his arrival to your block (EA. Block) May 12, 1999 ?

16. Did anyone speak with you about the separation documentation in Plaintiff's file ?

17. What was the reason you did not support Plaintiff for parole in the staffing held August 6, 1999, at SCI-Huntingdon ?

4

DATED: _7-3-2000_

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

E  X  H  I  B  I  T (B).

E   X   H   I   B   I   T (B).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                          :
                                          :
            Plaintiff                     :
                                          :
    v.                                    :      No. 1:00-CV-00485
                                          :      (Judge Rambo)
MARTIN HORN, et al.,                      :

**DEFENDANT HORN'S RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**

Defendant Horn hereby responds to plaintiff's first set of interrogatories as follows:

1.      What is your name and address?

**RESPONSE:**

        Martin F. Horn
        250 Lisburn Road
        Camp Hill, Pa  17105

2.      Where are you employed and for how long?

**RESPONSE:**

        Secretary to the Pennsylvania Department of Corrections.
        5 years.

3.      What are your duties and responsibilities of your office?

**RESPONSE:**

        The duties and responsibilities of the Secretary of the Department of Corrections are

found in §§201, 206, 506 and 901 of the Administrative Code of 1929, Act of April 9, 1929, PL No.

177, 175 as amended.

4. Is it standart (sic) policy to transfer a prinsoner (sic) back to the same Institution that he was removed from for assaulting a Correctional Officer, and who has an Active Separation in his file as a result of said assault?

**RESPONSE:**

The transfer of inmates is determined on a case by case basis, and therefore standard policy exists. A number of Department of Corrections ("DOC") policies govern.

5.    What is the policy for transferring custody level two (2) prisoner's?

**RESPONSE:**

**OBJECTION.**    Defendant Horn objects to this interrogatory as vague, as it is uncertain what plaintiff is referring to by "transferring custody level (2) prisoners. If plaintiff is referring to the transfer of inmates from one custody level to another or the transfer of inmates within custody level (3) from one institution to another, defendant Horn objects to this interrogatory as privileged. If plaintiff is referring to the pre-release transfers of custody level 2 inmates, DOC Policy Number 11.2.1-4 governs this transfer.    Defendant Horn objects to producing policy as privileged and containing information that if released could compromise the orderly and secure operation of the institution and the rehabilitation of the inmate. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A" to Defendants Response to Plaintiff's Request for Production of Documents.

6.    What is the problematic case, pertaining to incarcerated persons?

**RESPONSE:**

Assuming plaintiff is referring to problematic pre-release case(s) the policy and procedures for obtaining pre-release transfer, which includes potential problematic pre-release cases are described in DC-ADM 805, which is found in the Inmate Handbook issued to all inmates.

7.    Is the status of being a problematic case a result of the charge in which a prisoner was convicted of?

**RESPONSE:**

Assuming plaintiff is referring to problematic pre-release case(s) the policy and procedures for obtaining pre-release transfer, which includes potential problematic pre-release case(s), are defined in DC-ADM 805, which is found in the Inmate Handbook issued to all inmates.

8.    At any time can a prisoner's problematic case status be changed, and if so what are the conduction's?

**RESPONSE:**

**OBJECTION.**  Assuming plaintiff is referring to problematic pre-release case(s) the policy and procedures for obtaining pre-release transfer, which includes potential problematic pre-release case(s), is found in DC-ADM 805, which is found in the Inmate Handbook issued to all inmates.

9.    What kind of charges constitute a problematic case, pertaining to a prisoner?

**RESPONSE:**

**OBJECTION.**  Assuming plaintiff is referring to problematic pre-release case(s) the pre-release transfer, which includes potential problematic pre-release case(s), is found in DC-ADM 805, which is found in the Inmate Handbook issued to all inmates.

10.    Are problematic (sic) cases prohibited from being transferred to certain Institutions in Pennsylvania?

**RESPONSE:**

**OBJECTION.**   Pre-release problematic cases do not effect an inmate's inter-institutional transfer.

11.    If the answer to question (10) is yes, what are the names of these institutions?

**RESPONSE:**

N/A.

12.    Have any custody level (2) prisoner's clasified (sic) as problematic cases been transferred to SCI-Greene Outside Unit in the Past five (5) years?

**RESPONSE:**

**OBJECTION.**   Defendant Horn objects to this interrogatory as overbroad, burdensome, irrelevant to plaintiff's claim and unlikely to lead to admissible evidence.

13.    If the answer to question (12) above is yes, give the amount of prisoner's, time of transfer, name, and charges.

**RESPONSE:**

**OBJECTION.** Defendant Horn objects to this interrogatory as overbroad, burdensome, irrelevant to plaintiff's claim and unlikely to lead to admissible evidence.

14.    Who initiated the transfer of Plaintiff from SCI-Pittsburgh to SCI-Huntingdon?

**RESPONSE:**

Plaintiffs transfer was initiated by the staff at SCI-Pittsburgh. Upon review of the documents requested in this litigation, I have reviewed plaintiff's transfer petition and learned that Norris Curtis initiated the transfer.

15.    Was plaintiff's prison file reviewed before it was decided to transfer him to SCI-Huntingdon?

**RESPONSE:**

I did not personally review plaintiff's file before it was decided to transfer him to SCI-Huntingdon.

16.    What are all of the names of the persons involved in the decision to transfer Plaintiff back to SCI-Huntingdon?

**RESPONSE:**

I did not know the names of the person(s) involved in the decision to transfer plaintiff to SCI-Huntingdon at the time of his transfer. After a review of plaintiff's transfer petition I learned that Donald Williamson was also involved in this decision.

17.    Did you or your Office review and/or give final approval to the transfer of Plaintiff from SCI-Pittsburgh to SCI-Huntingdon?

**RESPONSE:**

No.

18.    What is the reason Superintendent Frederick K. Frank was transferred from SCI-Huntingdon?

**RESPONSE:**

**OBJECTION.**    Defendant Horn objects to this interrogatory as overbroad and irrelevant to the claims in plaintiff's complaint, and unlikely to lead to admissible evidence.

19.    What is the reason Deputy Superintendent Clinton R. Myers employment at SCI-Huntingdon was terminated?

**RESPONSE:**

**OBJECTION.**    Defendant Horn objects to this interrogatory as overbroad and irrelevant to the claims in plaintiff's complaint.  Without waiving this objection, Myers retired from employment at SCI-Huntingdon.

20.    What is the reason Unit Manager Tim Launtz employment at SCI-Huntingdon was terminated?

**RESPONSE:**

**OBJECTION.**    Defendant Horn objects to this interrogatory as overbroad and irrelevant to the claims in plaintiff's complaint.  Without waiving this objection, Launtz retired from his employment, at SCI-Huntingdon.

21.    What is the reason Office (sic) McFadden employment at SCi-Huntingdon was terminated?

**RESPONSE:**

**OBJECTION.**  Defendant Horn objects to this interrogatory as overbroad and irrelevant to the claims in plaintiff's complaint, and unlikely to lead to admissible evidence.

22.    What is the name and duties of the Director of Inmate Bureau  Services?

**RESPONSE:**

Dave Roberts

See Exhibit "B" attached, which is the job specification of the Director of Inmate Bureau Services.

23.    What is the name of the person responsible for transfers of prisoner's in Pennsylvania?

**RESPONSE:**

William L. Donaldson
Diagnostic & Classification Coordinator
Bureau of Inmate Services

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
      Plaintiff                     :
                                    :
v.                                  :        No. 1:00-CV-00485
                                    :        (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
      Defendants                   :

## VERIFICATION

    I, Martin Horn, hereby state that the foregoing answers to interrogatories are true and

correct and based upon my personal knowledge.

_____

MARTIN HORN

Objections interposed on
behalf of defendants by:

By: _____
    MARYANNE M. LEWIS
    Deputy Attorney General

    SUSAN J. FORNEY
    Chief Deputy Attorney General
    Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA  17120
FAX:  (717) 772-4526
Direct Dial:  (717) 787-9719

DATE:  August 17, 2000

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
        Plaintiff                   :
                                    :
    v.                              :    No. 1:00-CV-00485
                                    :    (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
        Defendants                  :

## UNSWORN DECLARATION OF MARTIN F. HORN

I, **MARTIN F. HORN,** hereby declare under the penalty of perjury that the following is true

and correct and based upon my personal knowledge:

1. I am employed as the Secretary of the Pennsylvania Department of Corrections and have

held this position since February, 1995. I have been employed in the field of Corrections in the State

of New York and Pennsylvania since 1969.

2. As Secretary, I serve as the highest governmental official and administrative head of the

Pennsylvania Department of Corrections, ( hereinafter "Department").  I am familiar with standard

policies, procedures and documents utilized by State Correctional Institutions and the Department,

understand their reasoning and purpose, and have overseen the development and implementation

of the Department of Corrections' policy.

3. In the course of this litigation the plaintiff has requested a variety of institutional records.

Specifically, he seeks documents relied upon by defendants in support of their decisions regarding

the plaintiff, documents submitted by the Department's staff to the Board of Probation and Parole,

as well policies and regulations of the Department.

4. I have personally reviewed plaintiff's first set of interrogatories and request for production of documents, defendants' responses and objections. I am familiar with the kind of information contained in the documents, plaintiff, Ronald Riley, seeks and have reviewed portions of the specific documents he has requested to verify that they contain this information.

5. In my opinion, disclosure of these documents in their entirety would undermine the secure and orderly operation of the Department and would seriously compromise the Department, SCI-Huntingdon and their staff's ability to carry out a significant penological goal--the rehabilitation of the plaintiff.

6. In administering the Commonwealth's penal system, various operational policies exist relating to a wide variety of subjects including the identification, management, security and treatment of prisoners. In addition these policies also cover a very broad spectrum of different treatment-related activities, including, but not limited to: diagnostic testing, classification assessment, evaluations, prescription of treatment, and monitoring of institutional placement.

7. In his request for production of documents, plaintiff seeks all rules, regulations and policy directives of the Department of Corrections that pertain to transferring custody level (2) prisoners, custody level (3) and (4) prisoners, and prisoners awaiting parole into a Community Center with an acceptance date of three months into the future. In addition, plaintiff seeks a complete copy of the Pennsylvania Additive Classification Tool ("PACT"). I have reviewed the pertinent rules, regulations and policies as well as PACT and it is my opinion the release of these documents would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals.

8. These documents contain custody level provisions that explain how the Department classifies inmates. If these procedures became known to any inmate, it would become substantially easier for the inmate to manipulate the system through false statements, failure to divulge crucial information, and misleading requests. This could result in the improper placement of inmates who may have tendencies for assault, disruption, or escape, as well as an inability to accurately identify inmates requiring special care. My professional experience with inmates indicates that a substantial number are manipulative and would use the information provided to disrupt the system and prevent inaccurate classification. These rules, regulations and policies are not available to inmates.

9. Available to inmates, however, is the Inmate Handbook, which contains information regarding classifications and pre-release of inmates to Community Centers. This information found in the Handbook does not contain information that would jeopardize the security or operation of the institution or the treatment of the institution.

10. In his request, plaintiff Riley seeks all the documents pertaining to his transfer from SCI-Pittsburgh to SCI-Huntingdon in May, 1999, as well as the reclassification documentation pertaining to his transfer and the Initial Reception Committee Review dated May 12, 1999. Riley is also seeking the policies concerning the transfer of prisoners to institutions that have active separations for assaults on staff. I have reviewed theses documents and it is my opinion that release of this information would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals.

11. Transfer petitions are also maintained on each inmate. Aside from recording statical information about an inmate including his name and identification number, transfer petitions include an explanation as for the institution's reason for seeking a transfer from one facility to another.

Often this rationalization will include names, identification and other information about other inmates and Department staff with whom the subject inmate is to be separated from. The transfer petition may also specify security concerns related to the subject inmate which are not shared with the inmate.

12. Institutional reasons and concerns for the transfer of an inmate from one correctional facility to another are a confidential matter that, if released, could unjustifiably compromise the security of an institution as well as the safety of inmates and staff.

13. Inmates are transferred from one institution to another for reasons varying from separations (from other inmates or from staff at one institution), security risks, visitations accommodation, health reasons, or overcrowding. Regardless of the penological reason for transferring an inmate, it is not information that is freely available to inmates.

14. Plaintiff seeks a copy of the central file containing his complete prison record which contains the plaintiff's Transfer Petition of May, 1999, the Reception Committee Review Report of May , 1999, and the Parole Review notes of August 6, 1999. In addition to these documents, the inmates's file jacket contains copies of correspondence, commitment orders, psychological and psychiatric evaluations, corrections counselor's reports, conduct records, adjustment records, transfer petitions, work and quarters assignment records, misconduct reports and resolutions, requests to staff and responses, classification summaries, sentence status summaries, and identification documents.

15. In addition, one part of the file contains entries by numerous corrections treatment personnel, including counselors, physicians, and treatment staff. This portion of the jacket is considered a treatment document which enables the appropriate treatment staff to record their impressions, evaluations, and recommendations with respect to the inmate's treatment program.

16. It contains notations of inmate complaints and staff reaction thereto, status reports on adjustment progress, staff members opinions of the inmates attitude and behavior, narratives by counselors and information regarding the relationship of the subject inmate with his fellow staff.

17. If an inmate knows how he will be evaluated by staff, such as in the parole vote sheets plaintiff seeks, and how particular responses are likely to be interpreted, he is capable of manipulating the results. This can lead to all sorts of problems. First and foremost, the individual's situation may not be assessed accurately, and therefore, a valid course of rehabilitative treatment could not be prescribed. Second, these inaccuracies can lead to improper institutional placement, and as a result, the inmate may be placed where he is a danger to others or visa versa. Or, third, the inaccurate information may cause him to be prematurely released from custody, e.g. to be paroled, and thus would present a risk to the community at large.

18. Additionally, the respect to treatment information and related records, the treatment process would be impaired greatly if released to inmates. Much of what is contained in inmate treatment-related files, such as the psychiatric record, are frank observations and recommendations of treating professionals and institutional counseling staff. If this information or related records possibly were to be disclosed to others, including the inmate involved, it would necessarily inhibit them from performing their duties as they should. The value of their comments and observations would be lessened, and those making decisions regarding the inmate would not have the benefit of candid and honest appraisals.

19. The nature of the documents in the inmate's file makes it important from a security, administrative and sound correctional practices standpoint to maintain their confidentiality. Administrative decisions are made with the recommendation and comments contained in these

documents. The value of these comments lies in their frankness; if the documents were readily available to the inmate or the public, the staff at the institutions would tend to refrain from entering their honest opinion and evaluations. Consequently, the staff who make treatment and programming decisions based on these documents would not have the benefit of candid observations.

20. It is my considered opinion, based upon my many years of experience in the field of corrections that if the entire inmate file were routinely made available to inmates, it would be detrimental to the treatment and safety of the inmates, the safety of the staff and the security and order of the institution, and would significantly increase the difficulty of prison administration. DOC-ADM 003 addresses information that is available to inmates that is found in their institutional file. In accordance with this directive, plaintiff may review only these portions of his institutional file.

21. Based upon my review of the documents requested and available documents, I believe that disclosure of the documents plaintiff seeks would undermine the secure and orderly operation of SCI-Huntingdon and compromise the staff's ability to carry out penological goals and ultimately threaten the security of the institution and the rehabilitation of the inmate.

_____
**DATE**

_____
**MARTIN F. HORN, SECRETARY**
**Pennsylvanian Department of Corrections**

**EXHIBIT "B"**

| Class Code | Pay Range | Pay Schedule | Bargaining Unit | Civil Service or Non-Civil Service | Executive Board Change | Last Change Effective |
|---|---|---|---|---|---|---|
| 47435 | 11 | S | F3 | N | 999- | 11/1/99 |

**Click on Class Code to get expanded information.**

11/01/1990                                              47435

DIRECTOR OF INMATE SERVICES, CORRECTIONS

DEFINITION: This is administrative and supervisory work in managing the inmate services of the agency.

An employee in this class serves as Director of the Bureau of Inmates Service and plans, develops, directs, and coordinates a wide variety of services for delivery to inmates throughout all institutions.  The inmate Services to be provided include recreation and related activities, academic and vocational education, physical and mental health care, counseling, pardons case management, drug and alcohol treatment, religious services, records management, and diagnostic and classification services. The employee develops the programs, policies, and procedures to implement these services in the institutions and develops guidelines and standards to control the delivery of services to inmates.  Work is performed independently and reviewed periodically by an administrative superior through conferences and  reports.

EXAMPLES OF  WORK: Plans, develops, directs, and coordinates services for delivery to inmates in all institutions, to include recreation and related activities, academic and vocational education, physical and mental health care, counseling, pardons case management, drug and alcohol treatment, religious services, records management, and diagnostic and classification services.

Develops programs, policies and procedures to implement inmate services.

Develops guidelines and standards to control the delivery of inmate services.

Analyzes methods and practices of delivery of inmate services, consults with program administrators, and recommends changes to services in an effort to rehabilitate inmates.

Plans and organizes work, assigns work, determines work priorities, sets goals, review work performance, and evaluates work performance.

Interprets rules, regulations, policies, standards, and objectives of the corrections system to subordinates.

Prepares employee performance evaluation reports.

Takes disciplinary action avid recommends action regarding the hiring and termination of employees.

Prepares reports, and meets with officials of other agencies and the  general public, and maintains an  effective working relationship with law enforcement officials.

Performs related work as required.

REQUIRED KNOWLEDGES, SKILLS, AND ABILITIES: Knowledge of
modern correctional principles and practices.

Knowledge of individual and group behavior as related to persons
with criminal background.

Knowledge of Correctional institution management and operation.

Knowledge of laws relating to criminal procedures and
correctional institutions.

Knowledge of delivery systems and inmate services to include
recreation and related activities, academic and vocational
education, physical and mental health care, counseling, pardons
case management, drug and alcohol treatment, religious services,
records management, and diagnostic and classification services.

Ability to develop policies, procedures, guidelines, and
standards for the implementation and delivery of inmate services.

Ability to plan, organize, assign, and evaluate the work of
subordinates.

Ability to interpret rules, regulations, policies, standards, and
objectives of the corrections system to subordinates.

Ability to communicate effectively, orally and in writing.

Ability to establish and maintain working relationships with
other agencies, community leaders, and law enforcement officials.

MINIMUM EXPERIENCE AND TRAINING: Nine years of experience in
social service delivery to clients, including four years in
corrections work and four years in a supervisory capacity, and a
master's's degree in the social science field, or related
training;

                              or

Any equivalent combination of experience and training.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                         :
                                         :
    **Plaintiff**                       :
                                         :
    **v.**                              :        No. 1:00-CV-00485
                                         :        (Judge Rambo)
MARTIN HORN, et al.,                     :
                                         :
    **Defendants**                      :

### CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date

I caused to be served the foregoing Defendant Horn's Response to Plaintiff's First Set of

Interrogatories, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA  16654-1112


                                                 **MARYANNE M. LEWIS**
                                                 **DEPUTY ATTORNEY GENERAL**


**DATE:  August 17, 2000**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743, in :
his own behalf,                :

        PLAINTIFF:        :
                    :
                    :     NO. 1:00-CV-00485
                    :       (JUDGE RAMBO)

    -VS-          :
                    :

MARTIN HORN, et al.,           :

        DEFENDANT'S:        :

DEFENDANT KELLER'S RESPONSE TO
PLAINTIFF'S THIRD SET OF INTERROGATORIES

     In accordance with Rule 33 of the Federal Rules Of Pro-
cedure, Plaintiff request that Defendant Keller answer the follow-
ing interrogatories separately and fully in writing under oath and
that the answers be signed by the person making them and be served
on Plaintiff within 45 days of service hereof.

     In response to these interrogatories, furnish all information
which is available to you, including information in the possession
of your Attorneys or investigator's for your Attorney's, and not
merely information known of your own personal knowledge.

     If you cannot answer the following interrogatories in full,
after exercising due diligence to secure the information, so state,
and answer to the extent possible, specifying your inability to
answer the remainder, and stating whatever information or knowledge
you have concerning the unanswered portions.

     These interrogatories shall be deemed continuing, so as to
require sopplemental answers as new and different information mat-
erializes.

2

1. What is your name and address ?

RESPONSE:  Joel Keller
           SCI-Huntingdon
           1100 Pike St., Huntingdon, PA  16654

2. Where are you employed and for how long ?

RESPONSE:  SCI-Huntingdon
           13 years

3. What are your duties and responsibilities of your office ?

RESPONSE: See Exhibit "A" attached which is the job specification for
          Correstions Unit Manager.

4. Did you at anytime in 1999, review Plaintiff's prison file ?

RESPONSE: Yes.

5. If the answer is yes to question (4) did you observe the
   separation documentation on Plaintiff's and a Correctional Officer
   at SCI-Huntingdon in Plaintiff's file ?

RESPONSE:NO.

6. What did you do if anything upon observing the separation
   documentation in Plaintiff's file on a Correctional Officer at SCI-
   Huntingdon ?

RESPONSE:  N/A

7. Were you aware of the alleged assault by Plaintiff Novemb-
   er 2, 1993, on Correctional Officer McFadden before you reviewed
   Plaintiff's prison file ?

RESPONSE:  Yes.

8. Did Counselor Buzminsky notify you of the separation docu-
   mentation in Plaintiff's file on a Correctional Officer ?

RESPONSE:  Yes.

9. Upon discovering separation documentation on a prisoner
   for assaulting a staff/officer, what course of action as the Unit
   Manager of the block in which the prisoner is housed are you suppo-
   sed to take ?

3

10. Have you meet with Plaintiff since his arrival back to SCI-Huntingdon May 12, 1999, and discussed with him about any retaliatory action against him as a result of the alleged assault November 2, 1993 ?

RESPONSE:  I do not recall.

11. Did you talk with Unit Manager Tim Launtz about the misconduct Plaintiff received May 29, 1999 ?

RESPONSE:  No.

12. Are you presently under investigation for any unlawful activity ?

RESPONSE:  SEE SEPARATE PAGE.

13. How many grievances/complaints have been filed against you in the past five (5) years ?

RESPONSE:  SEE SEPARATE PAGE.

14. What Order's did you receive from Central Office to do with Plaintiff upon his arrival back to SCI-Huntingdon ?

RESPONSE:  To hold the plaintiff for placement at Community
           Corrections Center.

15. Did you writ an offical report on Plaintiff's situation upon his arrival to your block (EA. Block) May 12, 1999 ?

RESPONSE:  NO.

16. Did anyone speak with you about the separation documentation in Plaintiff's file ?

RESPONSE:  Yes.

17. What was the reason you did not support Plaintiff for parole in the staffing held August 6, 1999, at SCI-Huntingdon ?

RESPONSE:  Plaintiff's misconduct no.
           dated 5/29/99.

**DEFENDANT KELLER**

**RESPONSE TO INTERROGATORY NO. 12.:**

    **OBJECTION.**    Defendant Keller objects to this interrogatory as irrelevant to plaintiff's claims and unlikely to lead to admissible evidence without waiving this objection, defendant Keller is not under investigation for any unlawful activity.

**RESPONSE TO INTERROGATORY NO. 13:**

    **OBJECTION.**    Defendant Keller objects to this interrogatory as overbroad, burdensome and irrelevant to plaintiff's claim.  In addition to the grievance forms, inmate complaints are also found on request slips.  These are filed and identified by number and the complaining inmate's name.  In order to answer this interrogatory, defendants would have to search hundreds of inmate files and request slips to see if defendant Keller is named in any of the complaints.  Likewise the Inmate Grievance Tracking System identifies only the inmate who filed the grievance.  In order to respond, defendants would have to search hundreds of inmates files to see if defendant Keller is named.

Objections interposed on
behalf of defendants by:

By: MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA  17120
FAX:  (717) 772-4526
Direct Dial:  (717) 787-9719

DATE:  August 7, 2000

DATED: _7-3-2000_

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

## CERTIFICATE OF SERVICE

This is to certify that on the above date, service of a true and correct copy of the enclosed discovery request was served on Counsel for Defendant's First Class Mail, and, by placing said document in my prison mail for service at the below address:

OFFICE OF ATTORNEY GENERAL
15th Flr., STRAWBERRY SQUARE
HARRISBURG, PA 17120

DATED: 2-3-2000

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

08/03/2000  14:06    814-949-7922              SCI HUNTINGDON                    PAGE  02
AUG-02-00 WED 18:17    ATTORNEY GENERAL         FAX NO. 717 772 4529              P. 09/10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
        Plaintiff                   :
                                    :
    v.                              :       No. 1:00-CV-00485
                                    :       (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
        Defendants                  :

## VERIFICATION

I, Joel Keller, hereby state that the foregoing answers to interrogatories are true and

correct and based upon my personal knowledge.

_____
JOEL KELLER

**EXHIBIT "A"**

01/01/92                                                          47470

CORRECTIONS UNIT MANAGER

DEFINITION: This is professional work in planning, coordinating and
directing the security and treatment programs within a designated
housing unit(s) in a Commonwealth Correctional Institution or
facility.

An employe in this class is responsible for the planning, directing
and coordinating of unit security and treatment programs. Work
includes responsibility for supervising a multi-disciplinary unit
management team for the purpose of ensuring continuity of security
and treatment services on a 24 hour, seven (7) day a week basis.
Work includes responsibility for planning, developing and
implementing a unit plan which includes casework and counseling
services, psychological services and unit security. The unit
manager coordinates the provision of educational services, activity
programs, job placement, religious services, medical services and
other centralized services within the respective institutional
departments. The unit manager is responsible to chair inmate
staffings and votes on all actions relating to programming, release
and custody level changes. The employe is responsible for arranging
unit staff development and training through the institution training
coordinator. Work is performed independently within the framework
of departmental and institutional policies and procedures and is
reviewed by a deputy superintendent through conferences and
evaluations of unit operations.

EXAMPLES OF WORK: Plans, directs and coordinates unit security and
treatment programs on a 24 hour, seven (7) day a week basis.

Develops a unit plan for the provision of casework and counseling
services, psychological services and security.

Approves/disapproves leave usage; selects and/or recommends staff
for unit assignments.

Works collaboratively with appropriate custody staff to insure that
unit security practices and procedures are consistent with the
institution's overall security policy.

Coordinates the provision of all centralized services with
appropriate departmental personnel; chairs inmate staffings for the
unit and votes on program placement, release decisions and custody
level changes; coordinates staff development and training with
institution training coordinator.

Schedules non-corrections officer staff and works collaboratively
with the zone or area lieutenant to ensure adequate corrections
officer coverage is available on the unit.

CORRECTIONS UNIT MANAGER (CONTD)

Directs the maintenance of inmate and unit records in accordance with institutional and Departmental standards.

Supervises corrections counselors, corrections case workers, corrections officers and clerical employes by assigning work, evaluating performance, and recommending and administering discipline.

Selects or recommends selection of staff and approves/disapproves leave for non-corrections officers staff.

Performs related work as required.

REQUIRED KNOWLEDGES, SKILLS, AND ABILITIES:  Knowledge of the principles and methods of correctional security and treatment programs.

Knowledge of individual and group behavior of persons with criminal backgrounds.

Knowledge of correctional institution operations.

Knowledge of custody and security standards, procedures and methods.

Knowledge of pardons, commutations, parole services and laws relating to criminal procedures in a correctional setting.

Knowledge of case recordings, documentation and data retrieval.

Ability to learn the principles and methods of supervision and management.

Ability to learn and practice team building concepts to manage a multi-disciplinary staff.

Ability to learn institutional and community based treatment and rehabilitative methods such as diagnostic and classification systems, psychological and counseling services, casework services and treatment plans.

Ability to plan, organize and direct the work of subordinate employes.

Ability to evaluate employe performance.

Ability to analyze and interpret rules, regulations, policies, procedures, standards and objectives of the correctional program.

Ability to interpret contractual and administrative rights and obligations of employes.

CORRECTIONS UNIT MANAGER (CONTD)

Ability to establish and maintain effective working relationships
with subordinates and other institutional personnel,

Ability to act decisively, tactfully and with firmness in emergency
situations.

Ability to communicate effectively, orally and in writing.

MINIMUM EXPERIENCE AND TRAINING:  Three years of professional
treatment, education, health care, or activities experience in an
adult correctional institution/facility and a bachelors degree.

or

Four years of experience as a Corrections Officer 3 or two years as
a Corrections Officer 4 in a State Correctional
Institution/Facility.

or

Seven years experience in an adult correctional institution/facility
in support service in Administrative/Hearing work, facility
maintenance, correctional industries, business management, personnel
or food service.

or

Any equivalent combination of education, experience and training.

CORRECTIONS UNIT MANAGER (CONTD)

Ability to establish and maintain effective working relationships with subordinates and other institutional personnel.

Ability to act decisively, tactfully and with firmness in emergency situations.

Ability to communicate effectively, orally and in writing.

MINIMUM EXPERIENCE AND TRAINING:  Three years of professional treatment, education, health care, or activities experience in an adult correctional institution/facility and a bachelors degree.

or

Four years of experience as a Corrections Officer 3 or two years as a Corrections Officer 4 in a State Correctional Institution/Facility.

or

Seven years experience in an adult correctional institution/facility in support service in Administrative/Hearing work, facility maintenance, correctional industries, business management, personnel or food service.

or

Any equivalent combination of education, experience and training.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONALD A. RILEY,                          :
                                          :
      Plaintiff                         :
                                          :
v.                                        :        No. 1:00-CV-00485
                                          :        (Judge Rambo)
MARTIN HORN, et al.,                      :
                                          :
      Defendants                        :

**CERTIFICATE OF SERVICE**

     I,  Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date

I caused to be served the foregoing Defendant Keller's Response to Plaintiff's Third Set of

Interrogatories, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA  16654-1112

 

                                                  MARYANNE M. LEWIS
                                                  DEPUTY ATTORNEY GENERAL

**DATE: August 7, 2000**

E X H I B I T(C).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743, in            :
his own behalf,                         :
                                        :
            PLAINTIFF:                   :
                                        :
                                        :        No. 1:00-CV-00485
      -VS-                               :
                                        :        (JUDGE RAMBO)
                                        :
MARTIN HORN, et al.,                     :
                                        :
                                        :
            DEFENDANT'S:    :

REQUEST FOR PRODUCTION OF DOCUMENTS.

        Plaintiff's request, pursuant to Rule 34 of the Federal Rul-
es Of Civil Procedure, that Defendant's (Horn, Frank, Myers, Grace,
Levy, Launtz, Keller, Director Of Inmate Bureau Services, Stidd,
Hoover, and Word) produce for inspection and copying the following
documents:

        1. All Rules, Regulations and Policy Directives of the Dep-
artment Of Corrections that pertain to the transfering of custody
level (2) prisoner's.

        2. All Rules, Regulations and Policy Directives of the Dep-
artment Of Corrections that pertain to the transfering of prisoners
awaiting parole into a Community Center with an acceptance date
of more then three months into the future.

        3. All Rules, Regulations and Ploicy Directives of the Dep-
artment Of Corrections that pertain to the transfering of prisoners
to custody level (3) and (4) Instutions.

        4. All Rules, Regulations and Policy Directives of the Dep-
artment Of Corrections that pertain to the transfering of prisoners

back to the Institutions that have a active saparation on said pri-
soner for the assault on a Correctional Officer/Staff.

5. A copy of the central file containing complete prison rec-
ords of Plaintiff.

6. All documents pertaining to why Plaintiff was transferred
May 4, 1994.

7. All documents pertaining to Plaintiff's transfer from SCI-
Pittsburgh to SCI-Huntingdon, including the reclassification of Pla-
intiff to be transferred and by which employees/staff/officer's.

8. A copy of the written report of Plaintiff's Initial Recep-
tion Committee Review May 12, 1999.

9. A copy of any and all follow up reports/investigations by
the Superintendent Frank, Deputy Superintendent Myers, Major Grace,
Intelligence Captain Levy, Unit Manager Launtz, and Keller, in reg-
ards to the Initial Recption Committee Review Report May 12, 1999.

10. A copy of all of the Complaints/Grievances filed against
Officer Hoover.

11. A copy of all of the misconducts written by Officer Hoo-
ver on prisoner's and staff.

12. A copy of all of the misconduct's written up against pri-
soner's at SCI-Huntingdon using the Video Tape from all of the cam-

eras in the inside and outside visiting room in the last five (5) years.

13. A copy of all of the DC-15 Disciplinary Hearing Reports from Hearing Examiner Stidd where he refused or did not review the Video Tape from the visiting room upon request by a prisoner.

14. A complete copy of the Parole Review August 6, 1999, at SCI-Huntingdon conducted by Defendant's Keller, Buzminsky, Sgt. Cufman, and all other staff that participated in any decisions and recommendations.

15. A copy of the Memo generated 6-11-99 from SCI-Huntingdon to the Pennsylvania Board Of Probation And Parole notifying them of the misconduct that Plaintiff received May 29, 1999.

16. A complete copy of the parole review September 28, 1999, at SCI-Huntingdon conducted by the Pennsylvania Board Of Probation And Parole.

17. A copy of Defendant Words decision and recommendations pertaining to the parole review September 28, 1999 at SCI-Huntingdon by the Pennsylvania Board Of Probation And Parole.

18. A complete copy of the Pennsylvania Additive Classification Tool (PACT), and all of the Rules, Regulations and Policy Directives that pertain to it.

19. A copy of the misconduct or list of names (and why they received the misconduct) of all of the prisoner's released on parole or will be released on parole who received a misconduct prior to their release date form January 1, 1995 to July 2000. This information is to include what the misconduct was for, when they received the misconduct, and their release date.

20. A complete copy of the Vote Sheet with decisions and recommendations from all of the voting Parole Agents who rendered the decision in Plaintiff's case 12-8-1999.

21. A copy of all the misconduct's from all of the prinsoners who were released on parole to an approved home plan or community center who received a misconduct 3 to 6 months before their release date from January 1, 1996, to June 2000.

Please Take Notice that the above requested documents shall be produced for inspection and copying and served upon Plaintiff at SCI-Huntingdon, 1100 Pike Street Huntingdon, Pa. 16654.

DATED: _7-3-2001_

Respectfully Submitted;

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA. 16654

**E X H I B I T (D).**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                     :
                                     :
          Plaintiff                  :
                                     :
     v.                              :     No. 1:00-CV-00485
                                     :     (Judge Rambo)
MARTIN HORN, et al.,                 :
                                     :
          Defendants                 :


## DEFENDANTS' RESPONSE TO REQUEST
## FOR PRODUCTION OF DOCUMENTS

Defendants hereby respond to plaintiff's request for production of documents.

Plaintiff may inspect and photocopy the documents upon the written request to the Assistant to the

Superintendent at SCI-Rockview.  Plaintiff may photocopy the produced documents at his own

expense at the institution rate.

1. All Rules Regulations and Policy Directives of the Department of Corrections that pertain

to transferring of custody level (2) prisoner's.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as vague.  Defendants are not certain what

plaintiff is referring to by "transferring of custody level (2) prisoners." If plaintiff is referring to the

transfer of inmates from one custody level to another custody level, or the transfer of inmates within

custody level (2) from one institution to another institution, defendants object to this request as

privileged and containing information that if released could cause a threat to the security of the

institution and the rehabilitation of the inmate.  If plaintiff is referring to the transfer or participation

of custody level (2) prisoners in a pre-release program, defendants object in that this information is

privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 6-9. Without waiving this objection, procedures for obtaining pre-release transfer, is found in DC-ADM 805, which is in the Inmate Handbook, issued to all inmates.

2. All Rules Regulations and Policy Directives of the Department of Corrections that pertain to transferring of prisoners awaiting parole into a Community Center with an acceptance date of three months into the future.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmates. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 6-9. Without waiving this objection, information concerning community corrections center referrals is found in DC-ADM 805, which is in the Inmate Handbook, issued to all inmates.

3. All Rules Regulations and Policy Directives of the Department of Corrections that pertain to transferring of custody level (3) and (4) Institutions.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as vague. Defendants are not certain what plaintiff is referring to in transferring of custody level (3) and (4) institutions. If plaintiff is referring to the transfer of inmates from custody level (3) to custody level (4), or transferring inmates within custody level (3) and (4) from one institution to another institution, defendants object to this request as privileged and containing information that if released could cause a threat to the

security of the institution and the rehabilitation of the inmates. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 6-9.

4. All Rules Regulations and Policy Directives of the Department of Corrections that pertain to transferring of prisoners back to the Institutions that have an active separation on said prisoner for the assault on a Correctional Officer/Staff.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-13.

5. A copy of the central file containing the complete prison records of plaintiff.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security to the security of the institution, as well as compromise the staff's ability to carry out the rehabilitation of the plaintiff. Included in plaintiff's file are reports of a confidential nature, such as pre-sentence reports, classification and diagnostic information and psychological information. Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. In addition, defendants object to this request as overbroad and containing information that is irrelevant to the allegations contained in the complaint and unlikely to lead to admissible evidence. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 14-20. Without waiving this objection, plaintiff may inspect copies of the portion of his inmate file that are authorized pursuant to the guidelines under DC-ADM 003.

6. All Documents pertaining to why plaintiff was transferred May 4, 1994

**RESPONSE:**

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-13.

7. All documents pertaining to Plaintiff's transfer from SCI-Pittsburgh to SCI-Huntingdon, including the reclassification of plaintiff to be transferred and by which employee/staff/officer's.

**RESPONSE:**

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-13.

8. A copy of the written report of Plaintiff's Initial Reception Committee Review May 12, 1999.

**RESPONSE:**

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. Initial Reception Committee Review reports are of a confidential nature that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-21.

-4-

9. A copy of any and all follow up reports/investigations by Superintendent Frank, Deputy Superintendent Myers, Major Grace, Intelligence Captain Levy, Unite Manager Launtz, and Keller, in regards to the Initial Reception Committee Review Report on May 12, 1999.

**RESPONSE**:

No documents can be located.

10. A copy of all the Complaints/Grievances filed against Officer Hoover.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. Grievance and inmate complaints are tracked by the individual inmate filing the complaint, not by the individual or event complained. In addition, plaintiff has failed to give a time frame for his request. In order to respond to this request, defendants would have to search hundreds of inmate grievances and complaints.

11. A copy of all misconducts written by Officer Hoover on prisoner's and staff.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. In addition, plaintiff has failed to give a time frame to his request. Misconducts are not tracked or indexed by individual officer filing the charge. In order to respond to this request, defendants would have to search through hundreds if not thousands of misconducts.

12.  A copy of all misconduct's written up against prisoner's at SCI-Huntingdon using the Video Tape from all of the cameras in the inside and outside visiting room in the last five (5) years.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence.  In addition, in order to produce copies of these misconducts, defendants 'would have to search hundreds if not thousands of misconducts over the least five years to determine if a video camera was used.  Misconducts are not indexed by indicating the use of the video camera .

13.  A copy of all the DC-15 Disciplinary Hearing Reports from Hearting Examiner Stidd where he refused or did not review the Video tape from the visiting room upon request by a prisoner.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence.  In addition, in order to produce copies of these disciplinary hearing reports,  defendants would have to search Hearing Examiner Stidd's reports which could include the search of individual inmate files.  Moreover, plaintiff has failed to give a time frame for this request.

14.  A complete copy of the Parole Review dated August 6, 1999, at SCI-Huntingdon conducted by Defendant's Keller, Buzminsky, Sgt. Cuffman, and all other staff that participated in any decision ans recommendations.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the

inmate. This vote sheet contains recommendations and comments from the SCI-Huntingdon staff In addition this documents contains information of a confidential nature reflects the inmate's behavior and how the individual staff members voted regarding his parole recommendation. Release of this document could deter staff from writing and voting in a candid manner. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 14-21.

15. A copy of the Memo generated from SCI-Huntingdon to the Pennsylvania Board of Probation and Parole notifying them of the misconduct that plaintiff received on May 29, 1999.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 14-21. Without waiving the objection, defendant Ward's Response to the Second Set of Interrogatories, quoted the contents of the document.

16. A complete copy of the parole review September 28, 1999 at SCI-Huntingdon by the Pennsylvania Board of Probation and Parole.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution as well as compromise the Board's ability to carry out the rehabilitation of the plaintiff. Pursuant to 37 Pa. Code §61.2, '[r]ecords, reports and other written things, information, evaluation, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probation or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the

Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." This document contains information of a confidential nature, that are the frank observations and recommendations gathered by the Department of Corrections and the Board. Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. See Unsworn Declaration of William Ward, Chairman of the Board of Probation and Parole, attached as Exhibit "B", ¶¶ 7-8.

17. A copy of Defendant Words decision and recommendation pertaining to the parole review September 28, 1999 at SCI-Huntingdon by the Pennsylvania Board of Probation and Parole.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution as well as compromise the Board's ability to carry out the rehabilitation of the plaintiff. Pursuant to 37 Pa. Code §61.2, '[r]ecords, reports and other written things, information ,evaluation, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probation or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." This document contains information of a confidential nature, that are the frank observations and recommendations gathered by the Department of Corrections and the Board. Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. See Unsworn Declaration of William Ward, Chairman of the Board of Probation and Parole, attached

as Exhibit "B", ¶¶ 7-8.  Without waiving this objection, plaintiff may inspect a copy of the Notice

of the Decision of the Board, known as the 'green sheet' dated 12/8/99.

18. A complete copy of the Pennsylvania Additive Classification Tool (PACT), and all of

the Rules and Regulations and Policy Directives that pertain to it.

**RESPONSE**:

**OBJECTION**: Defendants object to this request as privileged and containing information

that if released could cause a threat to the security and orderly operation of the institution and the

staff's ability rehabilitation of the inmate.  This documents explains how the Department determines

the security classification of inmates.  If these procedures became known to any inmate, it would

become substantially easier for the inmate to manipulate their status.  This could result in the

improper placement of inmates and jeopardize the security of the staff, other inmates and the

institution.  See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 7-9.

19. A copy of the misconduct or list of names (and why they received the misconduct) of

all the prisoner's released on parole or will be released on parole who received a misconduct prior

to their release date from January 1, 1995 to July 2000.  This information is to include what the

misconduct was for, when they received the misconduct and their release date.

**RESPONSE**:

**OBJECTION**. Defendants object to this request as overbroad, burdensome, irrelevant to

plaintiff's complaint and unlikely to lead to admissible evidence.  In addition, the list the plaintiff

seeks is not routinely kept by the Department or the Board.  In order to create this list of names

defendants would have to review hundreds, if not thousands of inmate files.

20.  A complete copy of the Vote Sheet with decisions and recommendation from all voting Parole Agents who rendered the decision in Plaintiff's case 12-8-99.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. This vote sheet contains recommendations and comments from the Board's staff. In addition, this documents contains information of a confidential nature reflects the inmate's behavior and how the individual staff members voted regarding his parole recommendation. Release of this document could deter staff from writing and voting in a candid manner. See Unsworn Declaration of William Ward, Chairman of the Board of Probation and Parole, attached as Exhibit "B", ¶¶ 7-8. Without waiving this objection, plaintiff may inspect a copy of the Notice of the Decision of the Board, known as the 'green sheet" dated 12/8/99.

21.  A copy of all misconduct's from all of the prisoners who were released on parole to an approved home plan or community center who received a misconduct 3 to 6 months before their release date from January 1, 1995 to June 2000.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. In addition, the documents plaintiff seeks are not routinely kept or identified by Department or the Board. In order to locate and copy these misconducts defendants would have to review hundreds, if not thousands of inmate files.

**EXHIBIT "A"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
      Plaintiff             :
                                    :
    v.                       :        No. 1:00-CV-00485
                                    :        (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
      Defendants            :

## UNSWORN DECLARATION OF MARTIN F. HORN

I, **MARTIN F. HORN,** hereby declare under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1. I am employed as the Secretary of the Pennsylvania Department of Corrections and have held this position since February, 1995. I have been employed in the field of Corrections in the State of New York and Pennsylvania since 1969.

2. As Secretary, I serve as the highest governmental official and administrative head of the Pennsylvania Department of Corrections, ( hereinafter "Department"). I am familiar with standard policies, procedures and documents utilized by State Correctional Institutions and the Department, understand their reasoning and purpose, and have overseen the development and implementation of the Department of Corrections' policy.

3. In the course of this litigation the plaintiff has requested a variety of institutional records. Specifically, he seeks documents relied upon by defendants in support of their decisions regarding the plaintiff, documents submitted by the Department's staff to the Board of Probation and Parole, as well policies and regulations of the Department.

4. I have personally reviewed plaintiff's first set of interrogatories and request for production of documents, defendants' responses and objections. I am familiar with the kind of information contained in the documents, plaintiff, Ronald Riley, seeks and have reviewed portions of the specific documents he has requested to verify that they contain this information.

5. In my opinion, disclosure of these documents in their entirety would undermine the secure and orderly operation of the Department and would seriously compromise the Department, SCI-Huntingdon and their staff's ability to carry out a significant penological goal--the rehabilitation of the plaintiff.

6. In administering the Commonwealth's penal system, various operational policies exist relating to a wide variety of subjects including the identification, management, security and treatment of prisoners. In addition these policies also cover a very broad spectrum of different treatment-related activities, including, but not limited to: diagnostic testing, classification assessment, evaluations, prescription of treatment, and monitoring of institutional placement.

7. In his request for production of documents, plaintiff seeks all rules, regulations and policy directives of the Department of Corrections that pertain to transferring custody level (2) prisoners, custody level (3) and (4) prisoners, and prisoners awaiting parole into a Community Center with an acceptance date of three months into the future. In addition, plaintiff seeks a complete copy of the Pennsylvania Additive Classification Tool ("PACT"). I have reviewed the pertinent rules, regulations and policies as well as PACT and it is my opinion the release of these documents would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals.

8. These documents contain custody level provisions that explain how the Department classifies inmates. If these procedures became known to any inmate, it would become substantially easier for the inmate to manipulate the system through false statements, failure to divulge crucial information, and misleading requests. This could result in the improper placement of inmates who may have tendencies for assault, disruption, or escape, as well as an inability to accurately identify inmates requiring special care. My professional experience with inmates indicates that a substantial number are manipulative and would use the information provided to disrupt the system and prevent inaccurate classification. These rules, regulations and policies are not available to inmates.

9. Available to inmates, however, is the Inmate Handbook, which contains information regarding classifications and pre-release of inmates to Community Centers. This information found in the Handbook does not contain information that would jeopardize the security or operation of the institution or the treatment of the institution.

10. In his request, plaintiff Riley seeks all the documents pertaining to his transfer from SCI-Pittsburgh to SCI-Huntingdon in May, 1999, as well as the reclassification documentation pertaining to his transfer and the Initial Reception Committee Review dated May 12, 1999. Riley is also seeking the policies concerning the transfer of prisoners to institutions that have active separations for assaults on staff. I have reviewed theses documents and it is my opinion that release of this information would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals.

11. Transfer petitions are also maintained on each inmate. Aside from recording statical information about an inmate including his name and identification number, transfer petitions include an explanation as for the institution's reason for seeking a transfer from one facility to another.

Often this rationalization will include names, identification and other information about other inmates and Department staff with whom the subject inmate is to be separated from. The transfer petition may also specify security concerns related to the subject inmate which are not shared with the inmate.

12. Institutional reasons and concerns for the transfer of an inmate from one correctional facility to another are a confidential matter that, if released, could unjustifiably compromise the security of an institution as well as the safety of inmates and staff.

13. Inmates are transferred from one institution to another for reasons varying from separations (from other inmates or from staff at one institution), security risks, visitations accommodation, health reasons, or overcrowding. Regardless of the penological reason for transferring an inmate, it is not information that is freely available to inmates.

14. Plaintiff seeks a copy of the central file containing his complete prison record which contains the plaintiff's Transfer Petition of May, 1999, the Reception Committee Review Report of May, 1999, and the Parole Review notes of August 6, 1999. In addition to these documents, the inmates's file jacket contains copies of correspondence, commitment orders, psychological and psychiatric evaluations, corrections counselor's reports, conduct records, adjustment records, transfer petitions, work and quarters assignment records, misconduct reports and resolutions, requests to staff and responses, classification summaries, sentence status summaries, and identification documents.

15. In addition, one part of the file contains entries by numerous corrections treatment personnel, including counselors, physicians, and treatment staff. This portion of the jacket is considered a treatment document which enables the appropriate treatment staff to record their impressions, evaluations, and recommendations with respect to the inmate's treatment program.

16. It contains notations of inmate complaints and staff reaction thereto, status reports on adjustment progress, staff members opinions of the inmates attitude and behavior, narratives by counselors and information regarding the relationship of the subject inmate with his fellow staff.

17. If an inmate knows how he will be evaluated by staff, such as in the parole vote sheets plaintiff seeks, and how particular responses are likely to be interpreted, he is capable of manipulating the results. This can lead to all sorts of problems. First and foremost, the individual's situation may not be assessed accurately, and therefore, a valid course of rehabilitative treatment could not be prescribed. Second, these inaccuracies can lead to improper institutional placement, and as a result, the inmate may be placed where he is a danger to others or visa versa. Or, third, the inaccurate information may cause him to be prematurely released from custody, e.g. to be paroled, and thus would present a risk to the community at large.

18. Additionally, the respect to treatment information and related records, the treatment process would be impaired greatly if released to inmates. Much of what is contained in inmate treatment-related files, such as the psychiatric record, are frank observations and recommendations of treating professionals and institutional counseling staff. If this information or related records possibly were to be disclosed to others, including the inmate involved, it would necessarily inhibit them from performing their duties as they should. The value of their comments and observations would be lessened, and those making decisions regarding the inmate would not have the benefit of candid and honest appraisals.

19. The nature of the documents in the inmate's file makes it important from a security, administrative and sound correctional practices standpoint to maintain their confidentiality. Administrative decisions are made with the recommendation and comments contained in these

documents.  The value of these comments lies in their frankness; if the documents were readily available to the inmate or the public, the staff at the institutions would tend to refrain from entering their honest opinion and evaluations.  Consequently, the staff who make treatment and programming decisions based on these documents would not have the benefit of candid observations.

20.  It is my considered opinion, based upon my many years of experience in the field of corrections that if the entire inmate file were routinely made available to inmates, it would be detrimental to the treatment and safety of the inmates, the safety of the staff and the security and order of the institution, and would significantly increase the difficulty of prison administration. DOC-ADM 003 addresses information that is available to inmates that is found in their institutional file.  In accordance with this directive, plaintiff may review only these portions of his institutional file.

21.  Based upon my review of the documents requested and available documents, I believe that disclosure of the documents plaintiff seeks would undermine the secure and orderly operation of SCI-Huntingdon and compromise the staff's ability to carry out penological goals and ultimately threaten the security of the institution and the rehabilitation of the inmate.

_____
**DATE**

_____
**MARTIN F. HORN, SECRETARY**
**Pennsylvanian Department of Corrections**

**EXHIBIT "B"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,           :
                                   :

         Plaintiff          :

                                   :

      v.               :     No. 1:00-CV-00485

                                   :     (Judge Rambo)

MARTIN HORN, et al.,        :

                                   :

         Defendants     :

## UNSWORN DECLARATION OF WILLIAM F. WARD

I, William F. Ward, hereby state under the penalty of perjury that the following is true and correct based upon my personal knowledge:

1.      I am employed by Commonwealth of Pennsylvania, Board of Probation and Parole ("Board"). I am the Chairman of the Board and have held this position since March 31, 1997.

2.      As chairman, I am the chief executive and responsible for the overall administration of the Board. I am familiar with the standard policies, procedures and documents utilized by the Board and understand their reasoning and purpose. I am also familiar with the Board's record keeping practices and the policies concerning dissemination of the various records and information we maintain concerning inmates .

3.      In the course of this litigation the plaintiff has requested a variety of institutional records. Specifically, he seeks documents relied upon by defendants in support of their decisions, documents submitted to the Board by the Department of Corrections, and other sources, as well as psychological profiles, counselor and therapy records.

4.      I have personally reviewed plaintiff's request for production of documents and defendants responses and objections. I am familiar with the kind of information contained in the

documents plaintiff, Ronald Riley seeks and I have reviewed portions of the specific documents he has requested to verify that they contain this information.

5.    In my opinion disclosure of these documents in their entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and their staff's ability to carry out a significant penological goal — the rehabilitation of the plaintiff.

6.    Much of what is contained in parole files are documents such as Board and counselor's notes, parole reviews, vote sheets and psychological files contain frank observations and recommendations of the Board and the Department of Corrections.  This information is kept confidential and is not made available to inmates.  If this information or the related documents were disclosed it would inhibit the candor of those professionals in making their observation and remarks and, as a result impair rehabilitation efforts.  In addition, if plaintiff knows how he is likely to be evaluated by staff and how his responses are likely to be interpreted, he is capable of formulating his response to manipulate the results.  This could lead to inappropriate decisions regarding his eligibility to be released into the community through parole which might present a risk to the community at large.

7.    In addition, pursuant to  37 Pa.Code §61.2, "[r]ecords, reports and other written things, information, evaluation, opinions and voice recordings in the Board's custody or possession or touching on matters concerning probation or parole are private, confidential, and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing  parole will at all reasonable times be open to public inspection in the offices of the Board."  Other than the

Notices of the Board's Decision or "green sheets" information contained in parole files is not available to inmates.

       8.     In his request, Riley is seeking his parole review dated September 28, 1999 and the Vote Sheets dated December 8, 1999. I have reviewed these documents and it is my opinion that release of this information could compromise the Board's and staff's ability to rehabilitate the plaintiff. The information contained in these documents contain the same sort of remarks and observations described in paragraph 6 of this declaration and it is this type of information that is kept confidential and privileged pursuant to 37 Pa. Code §61.2.

       9.     For these reasons, I conclude that disclosure of the information plaintiff seeks in document request 14, 16, 17 and 20 would undermine the legitimate penological goals of rehabilitating and paroling the plaintiff and other inmates, as well as create internal security concerns for the Department of Corrections.

August 14, 2000
_____
**DATE**

~~William F. Ward~~
_____
**WILLIAM F. WARD**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                          :
                                          :
            Plaintiff                     :
                                          :
      v.                                  :        No. 1:00-CV-00485
                                          :        (Judge Rambo)
MARTIN HORN, et al.,                      :
                                          :
            Defendants                    :

### CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I

caused to be served the foregoing Defendants' Response to Request for Production of

Documents, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA  16654-1112

MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL

DATE:  August 17, 2000

**E  X  H  I  B  I  T  (E).**

RONALD A. RILEY
AK-8743
1100 PIKE STREET
HUNTINGDON, PA 16654


MARYANNE M. LEWIS                              August 14, 2000
DEPUTY ATTORNEY GENERAL
OFFICE OF ATTORNEY GENERAL
15th Flr., STRAWBERRY SQUARE
HARRISBURG, PA 17120


RE: CIVIL ACTION NO. 1:00-CV-00485


Dear Deputy Attorney General;


    Pursuant to your objections to Plaintiff's Interrogatory No. 13,
Plaintiff would like to try an resolve this matter without filing for a
Motion For An Order Compelling Discovery from the Court. As of this date
your forthright and timely responses to Plaintiff's Interrogatories is
appreciated.

    Deputy Attorney General, the information that Plaintiff seek in
Interrogatory No. 13, goes to the core of Plaintiff's assertion's that
Defendant Keller is negligent and indifferent to the needs of alot of
prisoners housed on his block (EA. Block) and the grievances/complaints
filed against this Defendant will attest to this fact.

    Deputy Attorney General, in Plaintiff's complaint filed March 7,
2000, Id. at ¶ 29. Plaintiff apprised Defendant Keller of his situation
and Defendant did nothing to assist Plaintiff as he has done many times
to other prisoners housed on his block. The information that Plaintiff
seek is subject to discovery under Rule 33 and 34 Federal Rule of Civil
Procedure., as it goes to prove a fact in Plaintiffs complaint.

    Finally, all inmate grievances (DC-804) filed against staff or
officer's are placed in that persons file in Central Office in Camp Hill.

2

If you will look at Defendant Keller's file in Central Office you will
find the information Plaintiff seek. I will disregard any complaints
filed by a prisoner on a request slip to minimize burdensome search thr-
ough hundreds of prisoner's files to see if Defendant Keller is named.

Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

cc:file

**E  X  H  I  B  I  T (F).**



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

**August 17, 2000**

MIKE FISHER
ATTORNEY GENERAL

15th Floor, Strawberry Sq.
Harrisburg, PA 17120
DIRECT DIAL:  (717) 787-9719
FAX:  (717) 772-4526

Ronald A. Riley, #AK-8743
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA  16654-1112

      Re:    <u>Riley v. Horn, et al.,</u>
              No. 1:00-CV-00485

Dear Mr. Riley:

      Enclosed please find defendant Horn's Response to Plaintiff's First Set of Interrogatories and Defendant's Responses to Request for Production of Documents.

      In response to your letter of August 14, 2000, please be advised that inmate grievances filed against staff or officers are **not** placed in that individual's personnel file in the Central Office at Camp Hill, nor are they kept in the individual personnel file at the institution where the individual is employed.

                              Sincerely yours,

                              Maryanne M. Lewis
                              Deputy Attorney General

MML/ld
enclosures

E  X  H  I  B  I  T  (G).

RONALD A. RILEY
AK-8743
1100 PIKE STREET
HUNTINGDON, PA 16654


MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL
15th FLOOR, STRAWBERRY Sq.
HARRISBURG, PA 17120

August 23, 2000


RE: RILEY -V- HORN, et al., NO. 1:00-CV-00485


Dear Attorney General;

Pursuant to Defendant's Objection's to Plaintiff's Request
For Inteerogatories 5, 6, 7, 8, 9, 10, 12, 13, 18, 19, 20, 21, and
Production Of Documents 1-21 I again must trouble you with my lett-
er. I have given considerable consideration to the concerns of the
Defendant's pertaining to securty and penological goal's for it's
perspective Institutions.
However, Plaintiff has no other means of proving that the Defendants
violated their own rules, regulations, and policies by reclasifying
Plaintiff and transfering him back to a Institution that has a act-
ive separation on him for assaulting a officer, in violation of Pla-
intiff's Constitutional Rights.

Deputy Attorney General, it is not the intention of the Plai-
ntiff to use the documentation that he request to disrupt the Depa-
rtment Of Corrections and the Pennsylvania Board Of Probation And
Parole ability to provide securty and it's penological goals. It is
che intent of the Plaintiff to use said discovery information to
prove that these two agencies violated their own rules, regulations,
and policies by doing what they did to Plaintiff which precipitated
this action.

Deputy Attorney General, enlight of the Defendant's personal knowledge and actions (or lack their of) pertaining directly to the events leading up to his Constitutional Rights being violated by all Defendant's involved. This information/actions/lack their of on the part of Defendant's is discoverable under Rule 33 and 34 F.R.C.P., and Plaintiff is entitled to a Order Compelling Discovery pursuant to Rule 37 F.R.C.P.

Finally, Plaintiff is open to a discussion as to how this matter can be resolved whereby both parties are satisfied without involvement of the Court.

Respectfully Submitted,

cc:file

E  X  H  I  B  I  T  (H).



COMMONWEALTH OF PENNSYLVANIA
### OFFICE OF ATTORNEY GENERAL

**September 1, 2000**

MIKE FISHER
ATTORNEY GENERAL

15th Floor, Strawberry Sq.
Harrisburg, PA 17120
DIRECT DIAL: (717) 787-9719
FAX: (717) 772-4526

Ronald A. Riley, #AK-8743
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

Re:     Riley v. Horn, et al.,
        No. 1:00-CV-00485

Dear Mr. Riley:

I received your letter dated August 23, 2000, regarding defendants' responses to your discovery requests. As I recall, you submitted three sets of interrogatories. The first set, directed to defendant Horn contained 23 interrogatories, the second set was directed to defendant Ward and contained 22 interrogatories and the third set, directed to defendant Keller contained 13 interrogatories. In your letter you reference Defendant's Objections to Plaintiff's Request for Interrogatories 5, 6, 7, 8, 9, 10, 12, 13, 18, 19, 20, and 21; however, it is not clear which set of interrogatories you are referring to. Furthermore, in both Secretary Horn's and Chairman Ward's response, declarations were attached explaining the rationale outlining why the documents were withheld. Defendants therefore continue their objections regarding all three sets of interrogatories.

In response to your request for production of documents, defendants referred you to various sections of the Inmate Handbook that could assist you in gathering the documentation you seek. In addition, defendants informed you that you may inspect the portions of your central file that are authorized under DC-ADM 003. According to the records office at SCI-Huntingdon, to date, you have not requested to review any documents contained in your institutional file. Perhaps a review

Ronald A. Riley, #AK-8743
September 1, 2000
Page 2

of those documents will assist you. Finally, both Secretary Horn's and Chairman Ward's declarations clearly state the rationale why the remaining documents were not produced. In light of these declarations, defendants continue to object to producing those documents.

Sincerely yours,

Maryanne M. Lewis
Deputy Attorney General

MML/ld