JUDGE'S COPY



## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD RILEY,                    :
                                 :
    Plaintiff                :
                                 :
    v.                       :       No. 1:00-CV-00485
                                 :       (Judge Rambo)
MARTIN HORN, et al.,             :
                                 :
    Defendants                :

**FILED**
HARRISBURG, PA

SEP 2 9 2000

MARY E. D'ANDREA, CLERK
Per _____
           Deputy Clerk

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
### TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

### STATEMENT OF THE CASE

This is a <u>pro se</u> prisoner civil rights action filed pursuant to 42 U.S.C. § 1983 alleging claims under the First, Eighth and Fourteenth Amendments to the United States Constitution. The allegations in the complaint stem from alleged "bogus" misconducts that affected plaintiff's parole status, and an alleged unlawful transfer to the State Correctional Institution at Huntingdon. (SCI-Huntingdon). Plaintiff further alleges that defendants were "deliberately indifferent to a pattern of racial discrimination, harassment and reign of terror."

Plaintiff, Ronald Riley, is a prisoner currently incarcerated at SCI-Huntingdon and defendants are numerous employees, or former employees, of the Pennsylvania Department of Corrections, ("DOC") or employees of the Pennsylvania Board of Probation and Parole ("Board").

Riley filed a complaint in the United States District Court for the Middle District of Pennsylvania on March 14, 2000, and defendants answered the complaint on June 12, 2000. Riley served the defendants with four sets of interrogatories and a request for production of documents on July 3, 2000. The defendants responded to the discovery on August 7, 2000 and August 17, 2000.

Defendants objected to portions of the interrogatories and document requests as seeking information and documents that contain privileged or confidential information. Primarily, the information and documents that defendants object to concern DOC policies regarding the transfer and classification of inmates which contain confidential security related information. In addition, defendants objected to producing information and documentation found in Riley's prison and parole files that contain mental impressions, notes and decisions of the DOC, the Board staff and security related information. Finally, defendants objected to producing information concerning staff who are no longer employed at SCI-Huntingdon as irrelevant to plaintiff's complaint.

Riley filed a motion to compel discovery and a supporting memorandum. This memorandum is filed in opposition to Riley's motion to compel discovery.

## QUESTION PRESENTED

**SHOULD THE COURT DENY RILEY'S MOTION TO COMPEL DISCOVERY AS THE DEFENDANTS HAVE INTERPOSED VALID AND LEGITIMATE OBJECTIONS TO INFORMATION WHICH IS PRIVILEGED AND CONFIDENTIAL?**

## ARGUMENT

**THE COURT SHOULD DENY RILEY'S MOTION TO COMPEL DISCOVERY AS THE DEFENDANTS HAVE INTERPOSED VALID AND LEGITIMATE OBJECTIONS TO INFORMATION WHICH IS PRIVILEGED AND CONFIDENTIAL.**

In general, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. See F.R.C.P. 26(b)(1) When a valid claim of privilege is invoked, the party who seeks the information must show a need for it so the

court can "balance on one hand the policies which give rise to the privilege and the facts at hand against the need for the evidence sought to be obtained." O'Neill, 619 F.2d at 227 quoting Riley v. City of Chester, 612 F.2d 208 ( 3d Cir.1979). In making such a determination, a court normally considers the importance of the documents to the government and the availability of the information elsewhere. U.S. v. Legett v. Platt, Inc., 542 F.2d 655 (6th Cir. 1976) cert denied, 430 U.S. 945 (1976). This deliberative process privilege is designed to protect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. Resident Advisory Board v. Rizzo, 97 F.R.D. 749, 751 (E.D.Pa. 1983).

The government documents privilege also protects from disclosure certain government documents and "information whose disclosure would be contrary to the public interest." Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D.Pa. 1973). See also Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336 (D.C. Cir. 1984); Black v. Sheraton Corp. of America, 564 F.2d 531 (D.C. Cir. 1977). This privilege has been extended to cover inter and intra-agency memoranda and prison files. See Note, Discovery of Government Documents and the Official Information Privilege, 76 Col. L.R. 142 (1976) and cases cited therein.

Riley, as the moving party, bears the burden of demonstrating that he is entitled to the relief he now seeks. Compagnie des Bauxites de Guinee v. Insurance Company of North America, 551 F. Supp. 1239, 1243 (W.D. Pa. 1982). In this situation, Riley must show that he has made permissible discovery requests and that defendants have unjustifiably declined to provide him with what he seeks. He has done neither in his motion or supporting memorandum, and cannot otherwise do so. Plaintiff seeks to compel the defendants to respond to his first set of interrogatories directed to defendant Horn. Specifically, Riley seeks responses to Interrogatories Nos. 5- 10, 12, 13, and

18- 21.  A review the interrogatories directed to defendant Horn justifies his objections that the
information sought is confidential and privileged.

In Interrogatory No. 5, Riley seeks the policy for transferring custody level two (2) prisoners.
While noting the vagueness of the request in his response, Horn objected to providing policy
information concerning the transfer of inmates within custody level (2) from one institution to
another as privileged.  (See Horn's Response to Plaintiff's First Set of Interrogatories, ¶ 5).

In his memorandum in support of his motion to compel, plaintiff argues that the defendant
intentionally avoided answering his questions as it is a fact that the transferring of lower custody
level prisoners is different than higher level prisoners due to security reasons.  In addition, Riley
explained that he is referring to the transferring of prisoners custody level (2), and that he "has the
right to inspect this policy because it is what the Defendant's were suppose to follow in the
transferring of Plaintiff May 12, 1999, as he is a custody level (2) prisoner...."  (See Mem. in Sup,
pg. 4)  In both his response to interrogatories and the request for production of documents, a
declaration was provided from Martin F. Horn, the Secretary [Commissioner] of the DOC.  In his
declaration, attached as Exhibit "A" to his responses to the interrogatories, Horn explained that after
a review of the pertinent rules, regulations and policies, it is his opinion that "[t]hese documents
contain custody level provision that explain how the Department classifies inmates.  If these
procedures became known to any inmate, it would be substantially easier for the inmate to
manipulate the system through false statements, failure to divulge critical information and
misleading statements."  (See Horn Declaration,  ¶¶7, 8)

In Interrogatories Nos. 6 -10, and 12-13, plaintiff seeks information concerning "problematic
cases."  Plaintiff argues that "defendant intentionally avoided answering Plaintiff's question, on a

routine bases [sic] Counselor's, Unit Manager's, and other Department of Corrections staff classify prisoners as problematic or non- problematic cases who do not qualify for pre-release because they are past their minimum sentence." ( See Pl. Mem.in Supp., pg.3)  Defendant Horn responded to these interrogatories by directing plaintiff to the DC-ADM 805, found in the Inmate Handbook, which contains the policy and procedures for obtaining pre-release transfer, which includes potential problematic cases. (See Horn's Response, ¶¶6-13)  As noted in Horn's declaration, information concerning the policies and regulations regarding pre-release and problematic cases is found in the inmate handbook and does not contain information that would jeopardize the security of the institution. (See Horn Declaration, ¶9).  Plaintiff fails to mention whether he reviewed any of the information contained in the Inmate Handbook.

Finally, plaintiff seeks to compel defendant Horn to respond to Interrogatories Nos.18 - 21, which seeks information concerning the transfer or termination of defendants Frank, Myers, Launtz and McFadden. In his memorandum, Riley argues that "he is entitled to this information because he alleges in his complaint that defendants recklessly and with gross negligence and deliberate indifference to Plaintiff's well being,  put Plaintiff's Life in Danger by excepting him back into SCI-Huntingdon, and (2) if said Defendant's was demoted, transferred or forced to retire due to negligent behavior, that relates to a critical contention made by Plaintiff in his complaint." (See  Mem. in Sup., pgs. 3-4)  Defendant Horn objected to these interrogatories as overbroad and irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. Horn further responded that defendant Myers and Launtz were not terminated, rather retired from their employment at SCI-Huntingdon. (See Horn's Resp., ¶¶ 18-19)  The personal reasons why these defendants chose to retire from their employment has no bearing on the allegations contained in this complaint.

Likewise, Frank's transfer from one correctional to another has no relevance to the facts of this case. In addition, defendants now provide a declaration from the Personnel Director at SCI-Huntingdon, Stephen Dougherty, attesting that Officer McFadden's resignation from the institution was because of an injury. (See Declaration Stephen Dougherty, ¶4 attached as Exhibit "A")

Riley also seeks to compel defendant Keller to respond to Interrogatory No.13, in his third set of interrogatories. Here, plaintiff seeks the number of grievances/complaints that were filed against Keller in the past five years. Riley argues in his memorandum that "he is entitled to this information because it goes to prove a critical contention made by plaintiff in his complaint that this defendant recklessly and with gross negligence and deliberate indifference to the needs/rights of the prisoners on his unit, (EA.Block) routinely violate their Constitutional Rights as he has done to Plaintiff." (See Mem. in Sup., pg. 3-4) Defendant Keller objected to this interrogatory as overbroad, burdensome and irrelevant to plaintiff's claim. Moreover, Keller's explained that inmates complaints, grievance forms and request slips, are filed and identified by number and the complaining inmate, and that in order to answer the interrogatory, defendants would have to search hundreds of inmate files to see if defendant Keller is named in any of the complaints. Likewise, it was explained that the Inmate Grievance Tracking System identifies only the inmate who filed the grievance, and not the substance of the grievance. Hence, this system would again require the defendants to search hundreds of inmates files to see if defendant Keller is named. (See Keller's Resp. ¶13).

Plaintiff also seeks to compel the production of documents concerning request numbers 1 - 21. Defendants objected to producing the majority of the documents sought by plaintiff as containing information that is privileged and based upon security concerns. Requests 1- 4 seek

documents that pertain to the transfer of custody level (2) prisoners; rules, regulations and policy

directives that pertain to the transfer of prisoner awaiting parole to a Community Center with an

acceptance date of three months in the future; rules, regulations and policy directives that pertain to

transferring of custody level (3) and (4) institutions; and all rules, regulations and policy directives

that pertain to transferring of prisoners back to the institution that have an active separation on

prisoner for the assault on a correctional officer/staff.   In addition, Request 18, seeks a complete

copy of the Pennsylvania Additive Classification Tool (PACT) and the all of the rules and

regulations and policies that pertain to it. (See Pl. Reqs. 1-4; 18)

Plaintiff argues that "[h]e has a legal right to anything which is in anyway 'relevant to the

subject matter involved in the pending action.' [and that] Plaintiff has a right to know 'what rules,

regulations, and policy directives say about the transferring of level (2) prisoners as Plaintiff who

is a custody level  (2) prisoner contends in his Complaint that the Defendant's with deliberate

indifference for Plaintiff's well being, reclassified and transferred him to a Hostile and Life

Threatening Environment." (See Mem. in Sup., pg. 5)  In respect to the PACT documentation,

plaintiff argues that "his custody level (2) is the lowest level attainable by a prisoner in a correctional

institution in Pennsylvania and at that level he could have been transferred to any of the (24) male

institutions in the State." In addition, he argues "he has a legal right to this information," [and] "that

this information will prove the allegations in his complaint."  (See Mem. in Sup., pg. 8)

Defendants objected to producing these policies as privileged.  As noted, pursuant to

F.R.C.P. 26(b)(1), discovery is allowed in any matter that is relevant to the subject matter involved

in the pending action and is not privileged.  In both his response to interrogatories and the request

for production of documents, a declaration was provided from Martin F. Horn, the Secretary

[Commissioner] of the DOC. After reviewing the rules, regulations and policies pertaining to transferring level (2), (3) and (4) prisoners and PACT, Horn determined that the release of these documents would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals. In addition, Horn explained that these documents contain custody level provisions that explain how the Department classifies inmates, and how the release of this type of information would allow inmates to manipulate the system, divulge critical information and disrupt the system. (See Horn Declaration, ¶9) In short, these rules regulations and policies are not available to inmates or the general public.

In Requests, 5- 8, Riley seeks his complete prison file; documents concerning his transfer on May 4, 1994,[1] all documents pertaining to his transfer form SCI-Pittsburgh to SCI-Huntingdon; and a copy of his Initial Reception Review Committee Report dated May 12, 1999. Defendants objected to these requests as confidential and privileged, and clearly stated the security concerns of the DOC in releasing all of the information found in his file as well as those documents that concern his transfer. In addition, Horn's declaration explained that that production of Riley's entire inmate file and the documents therein contain frank observations and staff recommendations, and that "[i]f the entire inmate file were routinely made available to inmates, it would be detrimental to the treatment and safety of the inmates, the safety of our staff and the security and order of our institution, and would significantly increase the difficulty of prison administration." (See Horn Declaration, ¶20) In his declaration, Horn explained that transfer petitions contain the institutions reasons for seeking a transfer from one facility to another, which includes, "names identification and

---

[1]In his complaint, plaintiff alleges he was transferred to SCI-Huntingdon on May 12, 1999. Defendants' are not certain the relevance of a May 4, 1994 transfer.

other information about inmates and Department staff with whom the subject inmate is to be separated." (Id. at ¶11) Horn further explained that " inmates are transferred from one institution to another for reasons varying from separations, (from other inmates or from staff at one institution), security risks, visitations, accommodations, health reason, or overcrowding. Regardless of the penological reason for transferring an inmate, it is not information that is freely available to inmates." (Id. at ¶13) Simply put, this information should not be released.

In Request 9, plaintiff seeks "a copy of any and all follow up report/investigations by Superintendent Frank, Deputy Superintendent Myers, Major Grace, Intelligence Captain Levy, Unit Manager Launtz and Keller in regards to the Initial Reception Review Report on May 12, 1999. Defendants responded to plaintiff that "no documents can be located." In his motion to compel, Riley argues that these documents exist because he "posed a serious enough security concern that he was kept in the hole for five months, transferred and a Active Separation placed on him and said institution." (See Pl. Mem. In Sup., pg. 7) Defendants now provide a declaration from Heather Haldeman Weidel, plaintiff's counselor at SCI-Huntingdon, who reviewed Riley's prison treatment file, known as DC-14, for these documents. If any reports or investigations were initiated after the May 12, 1999 review, they would be in Riley's DC-14. Ms. Weidel could not locate any follow up reports/investigations concerning the May 12, 1999 Initial Reception Committee Review Report. In addition, Ms. Weidel searched Riley's institutional file, known as the DC-15, and could not locate any follow up reports or investigation concerning the May 12, 1999 review. (See Declaration of Weidel, ¶¶5-6, attached as Exhibit "B") While plaintiff may believe that an investigation or report exists following the committee's review, none can be located.

Requests 10 and 11 seek information concerning complaints filed against officer Hoover and all misconducts written by him. Riley argues that these documents prove that other prisoner's have filed complaints/request slips against this defendant for the same retaliatory and racist behavior. (See Pl. Mem. in Supp., pg. 7) Defendants objected to these requests as overbroad, burdensome, and irrelevant to plaintiff's complaint. In addition defendants explained that grievances and inmates complaints are tracked by the individual filing the complaint, not by the individual or event complained. Likewise, it was explained that misconducts are not tracked by the individual officer filling the charge. Defendants explained to that in order to comply with these requests, they would have to search hundreds if not thousands of inmate complaints, grievances and misconducts. (See Def. Resp. to Req. No.10) Irrespective of plaintiff argument, these requests are overbroad, burdensome and irrelevant to plaintiff's complaint.

Requests 12-13, seek copies of all misconducts using the video tape from the cameras inside and outside video room in the last five years and a copy of all disciplinary hearing reports from Hearing Examiner Stidd where he refused or did not review the video tape upon a request by a prisoner. Defendants objected to these requests as overbroad, burdensome, and irrelevant to plaintiff's complaint. Defendants explained that misconducts are not indexed by indicating the use of the video camera, and that in order to comply with these requests defendants would have to search hundreds, if not thousands of misconduct to determine if a video camera was used. Furthermore, defendants explained that Hearing Examiner Stidd's reports would have to be searched to determine if a video tape was reviewed or refused. In his memorandum, "plaintiff contends that these

documents will prove his contentions in ¶34 of his complaint."[2]  (See Pl. Mem. In Sup., pg. 7)
Once again, this request is nothing more than a fishing expedition which is overbroad, burdensome
and irrelevant to plaintiff's complaint.

In the remaining requests, plaintiff seeks documentation from the Board of Probation and
Parole or from his parole file.  Requests 19 thru 21 seek "copies of all misconducts or list of names
(and why they received a misconducts) of all prisoners released on parole or will be released who
received a misconduct prior to their release date from January 1, 1995 to July, 2000."  (See Req. No.
19).  This information is to include what the misconduct was for, when it was received, and the
release date.  Request 21 seeks "copies of all misconducts from all prisoner who were released on
parole to an approved home plan or community center who received a misconduct 3 to 6 months
before their release date from January 1, 1995 to June 25, 2000."  Defendants objected to both of
these requests as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to
admissible evidence.  In addition, it was explained  that the Board does not routinely keep this type
of information or list(s), and that in order to create this information defendants would have to review
hundreds if not thousand of inmate files.  Plaintiff argues that " this information is very relevant to
his complaint, and that the defendants know who they released on parole and who they did not, and
only need to review  the files of those released with misconducts prior to the release date. (See Pl.
Mem.in Sup., pg. 7)

---

[2] ¶34 of the complaint alleges that "After refusing to review the only evidence that could
prove Plaintiff's innocents [sic] (the video tape from camera (1)), Hearing Examiner Stidd
dismissed the class (1) category B-4 (engaging in sexual acts with others or sodomy) charge
because he believed it was not a sexual act. But found Plaintiff guilty of the class (1) category
D-25 (violation of visiting regulations 2 D unacceptable personal contact)"

As attested to in Defendant Ward's responses to Interrogatory No. 11,[3] this type of information is not recorded by the Board, other than in an individual's file. In order to respond to these request(s), defendants would have to review thousands of parole files. "In the last five fiscal years the Board has paroled over 34,000 inmates and considered over 76,000 inmates for parole." (See Ward's Resp. No. 11) Based upon the information proved by the Board and defendant Ward's response, this request also is overbroad, burdensome and irrelevant to plaintiff's complaint.

Finally, Request Nos. 14, 16, 17 and 20, seeks documents contained in his parole file which includes copies of parole reviews, internal memorandums, parole recommendations and vote sheets. A declaration from Chairman Ward was included with defendants' response to the request for documents. Ward objects to the production of these documents because, "[i]n my opinion, disclosure of these documents in their entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and its staff's ability to carry out a significant penological goal the rehabilitation of the inmate." (See Ward Declaration, ¶ 6)

In this case, both Martin F. Horn, Secretary [Commissioner] of the DOC and William F. Ward, Chairman of the Board provided declarations outlining the basis of the privileges asserted. These declarations comply with the requirements of United States v. O'Neill, 619 F.2d 222 (3d Cir. 1980).[4] Here, Secretary Horn personally reviewed Riley's interrogatories and requests for

---

[3]Interrogatory 11 question whether "in the past five (5) years have the Parole Board granted parole to any prisoners who received class (2) misconducts within 6 to 9 moths of their release date."

[4]In O'Neill, the Third Circuit set forth the three criteria required of the government when asserting a government documents privilege: 1) the custodian personally reviewed the material subject to the claim of privilege; 2) a designation and description of the document subject to the privilege; and 3) a statement of the reasons for preserving confidentiality of the communications.

production of documents. (See Horn Declaration)  In his declaration, Horn concluded that disclosure of the information and documents would sought "undermine the secure and orderly operation of SCI-Huntingdon, compromise the staff's ability to carry out penological goals, could ultimately threaten the security of the institution, and have a deleterious effect on the rehabilitation of Mr. Riley himself." (Id. at ¶ 15)   Chairman Ward,  also reviewed Riley's interrogatories and document requests and objected to the release of the information and documents sought  based upon security his concerns and  that the Board's ability to rehabilitate the inmate would be compromised.  (See Ward Declaration,  ¶6)  The disclosure of security related information or documentation contained in Riley's prison and parole files, as well as the DOC policies, rules, and regulations concerning transfers and classification of inmates could make future deliberations more difficult because individuals (civilians, probation and parole staff, correctional staff and inmates), who otherwise would provide information to officials reasonably believing that their identities will remain confidential, would be discouraged from doing so.  (See Horn Declaration, ¶¶ 12, 14)  Prison staff and inmates are a closed population.  Information and documentation distributed to one inmate within the prison system is quickly disseminated throughout the inmate population.  Simply put, two experts in the corrections field have reviewed Riley's requests, and it is their mutual belief the disclosure of this information and documents will threaten security.

Furthermore, the Court should not be mislead to believe defendants have not provided plaintiff with information, not security sensitive that is  responsive to  his requests.  In their response to interrogatories, defendants provided Riley with the name of the individual who wrote the June 11,

---

619 F.2d at 226.

1999 memorandum and the contents of the memorandum. He was provided with information regarding his request as to the names of the individuals involved in his May, 1999 transfer to SCI-Huntingdon. In addition, he was provided non security related information regarding his transfer and his parole status. Defendants also directed plaintiff to review various portions of the DOC handbook regarding problematic cases, and custody level transfer. Riley has been provided with an opportunity under DOC-ADM 003 to view portions of his prison file, that does not contain confidential or security related information. Riley has not made any indication in his motion to compel whether he sought review of his institutional file or whether he attempted to review the pertinent sections of the inmate handbook.

Finally, Riley's motion should also be denied because Riley has no constitutional right to be transferred to an institution of his choice. Under federal law, a prisoner generally has no right to be or not to be transferred or to be or not to be confined in any particular institution. Olin v. Wakinekona, 461 U.S. 238 (1983), Meachum v. Fano, 4278 U.S. 251 (1976), *rehearing denied*, 429 U.S. 873(1976). A prison official may transfer an inmate for whatever reason or for no reason at all, even if life in one prison is more disagreeable than another. Meachum, supra. at 228. Likewise, Riley never had an entitlement to pre-release or parole. Riley has no constitutionally-based right to parole under the United States Constitution. See, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979); McCrery v. Mark, 823 F. Supp. 288, 293 (E.D. Pa. 1993). Nor has Pennsylvania created a liberty interest in the possibility of parole. "[U]nder both this court's precedent and the precedent of the United States Supreme Court, the Parole Board's decision to grant or deny parole does not affect an existing enjoyment of liberty." Rogers v. Pennsylvania Board of Probation and Parole, supra.24 A.2d 319, 321, n. 2 (Pa. 1999). Insofar as his parole information and

documentation is concerned, because Riley never had an entitlement to pre-release or parole, the motion to compel should be denied.

In this case, Riley received all the relevant non-privileged information he was entitled to receive. He also received a rationale outlining why information and documents were withheld. Therefore, the Court should conclude that plaintiff's motion to compel as it is framed has no merit.

## CONCLUSION

For these reasons, the plaintiff's motion to compel discovery should be denied.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

By: _____

**MARYANNE M. LEWIS**
**Deputy Attorney General**
**Attorney ID# 83812**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg PA 17120**
**(717) 787-1194**
**(717) 772-4526 FAX**
**mlewis@attorneygeneral.gov**

**DATE:    September 29, 2000**

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD L RILEY,           :

      Plaintiff        :

                       :

  v.                :    No. 1:00-CV-0485
                       :    (Judge Rambo)

MARTIN HORN, et al.,    :

      Defendants   :

## UNSWORN DECLARATION OF
## STEPHEN DOUGHERTY

I, STEPHEN DOUGHERTY, hereby state under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.    I am presently employed by the Commonwealth of Pennsylvania, Department of Correction ("DOC") as the Personnel Director of the Huntingdon State Correctional Institution, ("SCI-Huntingdon") and have held that position since 1994. I have been employed by the DOC since 1986.

2.    As Personnel Director, I am familiar with the rules and regulations regarding SCI-Huntingdon employees including civil service employees, non-civil service employees, workers compensation, employee benefits and labor relations.

3.    I am familiar with former corrections officer Julia McFadden's personnel record. Officer McFadden was considered to have resigned her position as a corrections officer at SCI-Huntingdon because of an injury which caused her to be unable to return to her pre-injury employment duties.

4.     According to her personnel record, the last day Officer McFadden worked at SCI-Huntingdon was November 17, 1996.

_9/19/00_
**DATE**

_[signature]_
**STEPHEN DOUGHERTY**

-2-

**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
        Plaintiff                   :
                                    :
    v.                              :        No. 1:00-CV-0485
                                    :        (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
        Defendants                  :

## UNSWORN DECLARATION OF
## HEATHER HALDEMAN WEIDEL

I, HEATHER HALDEMAN WEIDEL, hereby declare under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.      I am employed by the Pennsylvania Department of Corrections as a Corrections Counselor at the State Correction Institution at Huntingdon ("SCI-Huntingdon"). I have held this position since 1998.

2.      As a corrections counselor, my duties and responsibilities include but are not limited to, institutional reports, processing inmates for outside clearance, preparing inmate parole reports, and annual inmate reviews. In addition, I am responsible for maintaining custody of an inmate's treatment file, which is known as the DC-14.

3.      Documents contained in the DC-14 include, but are not limited to, documents that are treatment in nature, such as psychological evaluation, counselors notes, classification assessments, evaluations and Initial Reception Committee Review Reports.

4.      I am familiar with plaintiff, Ronald Riley and his DC-14, as I am his assigned counselor at SCI-Huntingdon.

5.    I personally received Riley's DC-14 for any follow-up report/investigations concerning his May 12, 1999, Initial Reception Review Report. If any reports or investigations were initiated after the May 12, 1999 review, they would be in Riley's DC-14. I could not locate any follow-up reports or investigations concerning the May 12, 1999 review.

6.    In addition, I personally searched Riley's institutional file, which is known as the DC-15, for any follow-up reports or investigations that may have been initiated after the May 12, 1999 review. I could not locate any reports or investigations concerning the review in his DC-15.

9-29-00
DATE

HEATHER HALDEMAN WEIDEL

-3-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD RILEY,                          :
                                       :
      Plaintiff                  :
                                       :
    v.                                :       No. 1:00-CV-00485
                                       :       (Judge Rambo)
MARTIN HORN, <u>et al.</u>,        :   :
                                       :
      Defendants              :

## CERTIFICATE OF SERVICE

    I, Maryanne M. Lewis,  Deputy Attorney General, hereby certify that on this date I caused

to be served the foregoing, Defendants' Memorandum of Law in Opposition To Plaintiff's Motion

to Compel Discovery, by depositing a copy of the same in the United States mail, postage prepaid,

in Harrisburg, PA., addressed to the following:

        Ronald Riley, #AK-8743
        SCI- Huntingdon
        Drawer R
        1100 Pike Street
        Huntingdon, PA   17866-1020


                            **MARYANNE M. LEWIS**
                            **DEPUTY ATTORNEY GENERAL**

**DATE: September 29, 2000**