IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743,
in his own behalf,

        PLAINTIFF:

        NO. 1:00-CV-00485
          (JUDGE RAMBO)

    -VS-

MARTIN HORN, et al.,

        DEFENDANT'S:

**FILED**
**HARRISBURG**

DEC 1 1 2000

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

AMENDED SUPPLEMENTAL PLEADING

TO THE HONORABLE SYLVIA H. RAMBO, JUDGE:

Named Plaintiff **RONALD A. RILEY, AK-8743, "pro se"**, files this herein Amended Supplemental Pleading to Complaint filed before this Honorable Court March 14, 2000.

1. Correctional Counselor Mrs. Heather Wiedel at the State Correctional Institutions Huntingdon (SCI-HUNTINGDON) should be added as a Defendant for falsifying documents and assisting the Defendant's in their contenued retalitory actions against Plaintiff by denying him the Pre-Release Transfer that he was approved for

March 24, 1999, and altering Prison Documentation.

2. Correctional Unit Manager Mr. J.J. Ogershok, Jr., at SCI-Huntingdon should be added as a Defendant for assisting the Defendants in their contenued retalitory actions against the Plaintiff by refusing to correct the error(s) that led to the revocation of Plaintiff's Pre-Release Privilege, and intentionally trying to mislead the Plaintiff with a false interpretation of DC-ADM 805.

3. Deputy D.R. Erhart of the Department of Corrections should be added as a Defendant for also assisting the Defendant's in their contenued retalitory actions against the Plaintiff by giving Plaintiff false information pertaining to the revocation of his Pre-Release Transfer November 22, 1999.

4. The following documents are attached in support of Plaintiff's Amended Supplemental Pleading for the convenience of this Honorable Court:

EXHIBIT A. Transfer Order from Department of Corrections 3-24-1999.

EXHIBIT B. Plaintiff's request slip to Unit Manager 11-15-2000.

EXHIBIT C. Plaintiff's request slip to Superintendent 11-20-2000.

EXHIBIT D. Plaintiff's Letter to Defendant Horn 11-20-2000.

3

EXHIBIT E. Plaintiff's request slip to Counselor 11-22-2000.

EXHIBIT F. Response to Plaintiff's request slip to Superintendent 11-20-2000.

EXHIBIT G. DC-ADM 805 and Title 61 P.S. §1052-1053.

EXHIBIT H. Prescriptive Program Plan 11-17-1999.

EXHIBIT I. Prescriptive Program Plan 11-21-2000.

EXHIBIT J. Altered Prescriptive Program Plan 11-17-1999.

EXHIBIT K. Plaintiff's Grievance/Complaint 11-21-2000.

DATED: *12-7-2000*

Respectfully Submitted

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743,      :
in his own behalf,             :
                               :
            PLAINTIFF:         :
                               :
                               :   NO. 1:00-CV-00485
                               :      (JUDGE RAMBO)
                               :
      -VS-                     :
                               :
                               :
                               :
MARTIN HORN, et al.,           :
                               :
                               :
            DEFENDANT'S:       :

MEMORANDUM IN SUPPORT OF
AMENDED SUPPLEMENTAL PLEADING.

TO THE HONORABLE SYLVIA H. RAMBO, JUDGE:

     Named Plaintiff **RONALD A. RILEY, AK-8743, "pro se"**, now
submits his Memorandum In Support Of Amende Supplemental Pleading.

SUMMARY OF THE CASE

     1. On March 14, 2000, Plaintiff filed his Complaint against
the Defendant's in Civil Action No. 1:00-CV-00485 before this Hono-
rable Court.

On June 12, 2000, Defendant's filed an answer to Plaintiff's Complaint.

On August 16, 2000, the Honorable SYLVIA H. RAMBO, JUDGE, issued an Order that all discovery shall be completed within sixty (60) days of the Court Order.

On November 22, 2000, the Honorable SYLVIA H. RAMBO, JUDGE, issued an Order granting Defendant's Motion requesting leave of Court to take deposition of Plaintiff.

## SUPPLEMENTAL ISSUES

2. On March 24, 1999, a Pre-Release Transfer Order was issued by the Department of Corrections (DOC) transferring Plaintiff to the Harrisburg Community Corrections Center November 22, 1999. (Exhibit - A.).

On November 15, 2000, Plaintiff sent a request slip to the Unit Manager (J.J. Ogershok, Jr.) of FA. Block which Plaintiff is housed, asking him who and why was Plaintiff's Pre-Release Status revoked. Additionally, on November 23, 2000, Plaintiff sent an additional request slip to the Unit Manager following up on his response to Plaintiff's November 15, 2000, request. (Exhibit B.).

On November 20, 2000, Plaintiff sent a request slip to the Superintendent (Kenneth D. Kyler) of the institution (SCI-Huntingdon) that Plaintiff is incarcerated at, asking him who and why was Plaintiff's Pre-Release Status revoked. (Exhibit C.).

On November 20, 2000, Plaintiff sent a Letter to Defendant Horn (by way of the Attorney General) asking him why was Plaintiff's Pre-Release Status (Transfer to Community Corrections Center) revoked (Exhibit D.).

On November 22, 2000, Plaintiff sent a request slip to his Counselor (Heather Wiedel) which was answered by the Unit Manager (J.J. Ogershok, Jr.) asking her did she contact the Regional Office about the **termenation** of Plaintiff's Pre-Release Status. (Exhibit - E.).

On November 28, 2000, Plaintiff confronted Deputy D.R. Erhart while he was touring SCI-Huntingdon and informed him of the on going situation with Plaintiff's Pre-Release Transfer and asked for his assistance. (Exhibit F.).

Plaintiff contends that the answers given by these Officer's/- Employees is in total violation of the policies and directives (DC-ADM 805) of the Department of Corrections, and the Legislatively Mandated Authority (Title 61 P.S. §1051-1053), and is nothing more then retaliation against Plaintiff for the Civil Action now before this Honorable Court in violation of Plaintiff's First and Fourteenth Amendment to the U.S. Constitution. (Exhibit G.).

3. On November 17, 2000, met with his Counselor (whose name at the time was Ms. Halderman, now married, and named Mrs. Wiedel) and discussed his Prescriptive Program Plan for the year 2000. (Exhibit H.).

On November 21, 2000, in Plaintiff's absence Counselor Wiedel form-
ulated a Prescriptive Program Plan for the year 2001. (Exhibit I.).
Attached to this November 21, 2000, Prescriptive Program Plan was
a copy of the old Prescriptive Program Plan of November 17, 1999,
which had been changed from it's original state at the time Plaint-
iff signed it. (Exhibit J.).

On November 21, 2000, Plaintiff filed an official inmate gri-
evance (complaint) to the Grievance Coordinator Diana G. Baney infor-
ming the of the altering of Plaintiff's Prescriptive Program Plain
by Counselor Wiedel and requesting an investigation of this matter.
(Exhibit K.).

Plaintiff contends that by changing the November 17, 1999, Pre-
scriptive Program plan it gives the appearance that the Counselor
instructed Plaintiff to do something that he did not, making it look
like Plaintiff did not follow the Prescriptive Program Plan given
to him November 17, 1999. This action on the part of Plaintiff's
Counselor can only be construed as retalitory as a direct result of
the on going Civil Action and calls into question all of the docum-
entation in Plaintiff's Prison File that said Counselor was privil-
eged to.

FRCP 15(d) provides upon motion of a party the Court may, upon
resonable notice and upon such terms as are just, permit the party
to serve a supplemental pleading setting forth transactions or occ-
urrences or events which have happened since the date of the plead-
ing sought to be supplemented. See FARMER V. BRENAN, cite as 114 S.-

5

ct 1970 (1994), and U.S. V. LOCAL 560 (I.B.T.), cite as 974 F.2d
329 (3rd Cir. 1992).


### C O N C L U S I O N


WHEREFORE, plaintiff RONALD A. RILEY, AK-8743, "pro se",
respectfully request this Honorable Court to grant Plaintiff's Amen-
ded Supplemental Pleading.


DATED: 12-7-2000


Respectfully Submitted,

RONALD A. RILEY, AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

<u>C E R T I F I C A T E   O F   S E R V I C E</u>

This is to certify that on _December 7_ , 2000, a true and correct copy of Plaintiff's Amended Supplemental Pleading, was served First Class Mail, and ·by placing said in his prison mail box for service upon the following:

OFFICE OF THE ATTORNEY GENERAL
MARYANNE M. LEWIS
15th Flr., STRAWBERRY SQUARE
HARRISBURG, PA 17120

Respectfully Submitted,

RONALD A. RILEY  AK-8743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

**E X H I B I T  (A).**

COMMONWEALTH OF PENNSYLVANIA
**Department of Corrections**
March 24, 1999

EXHIBIT (B)

SUBJECT:    AK8743  Ronald Riley
            PBPP # 7297-S

TO:         Bonita Dripps
            Institutional Parole Agent
            SCI-Pittsburgh

FROM:       *(signature)*
            Paul M. O'Connor
            Director, Region 2
            Bureau of Community Corrections

Please be advised that a parole release date for the above noted inmate has been established for Monday, November 22, 1999.

Please instruct the inmate to report directly to the facility between 8:30 am and 4:30 pm, and see that he has the following facility's address and phone number prior to release:

> Harrisburg Community Corrections Center
> 27 North Cameron Street
> Harrisburg, PA   17101
> Phone (717) 787-4427

Please notify the facility by phone of the time the inmate leaves the institution, the method of transportation and approximate time of arrival.

Please ensure that the institution's Corrections Health Care Administrator is advised of the acceptance of this individual into Community Corrections. It is essential that Community Corrections receives a medical update in order to provide a continuity of services from your facility to Community Corrections. In addition, please ensure that the appropriate PPD test is completed and negative before transfer.

This inmate has been accepted as a parolee into a Community Corrections Center with an acceptance date of more than three months into the future. If he is not a problematic pre-release case and if institution staff recommended parole, arrangements should be made, in accord with established procedures, for transfer to SCI-Greene for placement in Outside Units. Staff at SCI-Greene should make adequate transportation arrangements in order to assure that this individual will arrive at the Community Corrections Center on the acceptance date.

Parolee must abide by all rules and regulations of the housing facility.

If you have any questions or anticipate a delay in this parole, please notify the Regional Office staff at (717) 787-8127.

cc:   Philip L. Johnson, Supt., PIT
      Jeffrey A. Troutman, Center Director
      Harrisburg Dist. Parole Office
      Regional File

**<u>E X H I B I T</u> (B).**

| DC-135A | | COMMONWEALTH OF PENNSYLVANIA |
|---|---|---|
| | | DEPARTMENT OF CORRECTIONS |
| **INMATE'S REQUEST TO STAFF MEMBER** | | INSTRUCTIONS |
| | | *Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.* |

| 1. TO: (NAME AND TITLE OF OFFICER) | | 2. DATE |
|---|---|---|
| MR. J.J. OGERSHOK, JR. UNIT   MANAGER (FA.BLOCK) | | 11-15-2000 |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| RONALD A. RILEY, AK-8743 | MRS. WIDEL |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
|---|---|
| PAINT SHOP | FA 3028 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

MR. OGERSHOK, JR.,

Pre-Release is a program of the Department Of Corrections (DOC) and not the
Pennsylvania Board Of Probation And Prole. Pursuant to DC-ADM 801-4 (4)
a Class (2) misconduct does not effect Pre-Release Status. §94.2 Pre-Lease
Programs consist of Work Release, Temporary Home Furlough, and Community Corr-
ections. (See DC-ADM 805-1 and 2). Enlight of the fact that I was approved for
Community Correction Center (which is a Pre-Release Program) pursuant to
§94.3 DC-ADM 805-2 and 3, my question is who and why was my Pre-Release Stat-
us revoked considering the fact that I only received a Class (2) misconduct?
Keeping in mind the fact that the Parole Board does not have a Pre-Release Pro-
gram, and cannot Parole a Prisoner to a Pre-Release Program without the Pre-
Release Status being granted by the Department Of Corrections. (Also see DC-
ADM 805-3 section (6).

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Back in 1999 you were given a Nov 22,1999
bed date due to a PBPP-15 dated 2-12-99.
On 5/29/99 you received a Class I (category)
misconduct at the PBPP on 7/6/99 suspended
the paroling action and on 12-8-99 they rescinded
that action. I understand the PRC reduced the
misconduct to a Class II but the PBPP told
you no misconducts. Without the PBPP placing
these marginal cases in a CCC these people would still be

| ☑ TO DC-14 CAR ONLY | ☐ TO DC-14 CAR AND DC-15 IRS |
|---|---|

STAFF MEMBER

DC-135A

# FA 3028

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) | 2. DATE |
|---|---|
| MR. J.J. OGERSHOK, JR., UNIT MANAGER (FA. BLOCK) | 11-23-2000 |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| RONALD A. RILEY, AK-8743 | MRS. WIEDEL |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
|---|---|
| PAINTSHOP | FA 3028 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

MR. OGERSHOK, JR.,

In your response to my 11-15-2000, request slip pertaining to my Pre-Release Status, you stated "Wrong assumption Pre-Release Codes are not saaigned". After further investigation of the Inmate Handbook on page (9) it states "Custody Level 2 inmates are not permitted outside of the institutional perimeter without additional approval and assignment of Program Codes by Staff". This clearly points out the fact that Pre-Release Codes are assigned ! Additionally, I am still awaiting your response to my second request slip that I sent to you on this matter 11-16-2000.

*TO BE*

*YOU WERE PLACED BY PAROLE AT THE*                    Thank you

cc:file    *CCC, not by the Dept of Corr.*

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

*Take a look at that list and you will notice that Program codes does not equal prerelease codes. Custody level 1 is required for pre release and Program codes of C, E, F, G, V, etc can be assigned to designate a "PROGRAM." Please read the entire ** NOTE: which says M & R codes can only be used with Custody Level 2. It is these codes that allow an inmate with*

☐ TO DC-14 CAR ONLY          ☐ TO DC-14 CAR AND DC-15 IRS

*Custody Level 2 "to work or participate in programs outside the*

STAFF MEMBER

**E X H I B I T (C).**

| DC-135A | **COMMONWEALTH OF PENNSYLVANIA** |
|---|---|
| | **DEPARTMENT OF CORRECTIONS** |
| **INMATE'S REQUEST TO STAFF MEMBER** | INSTRUCTIONS |
| | *Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.* |

| 1. TO: (NAME AND TITLE OF OFFICER) SUPERINTENDENT KYLER | 2. DATE 11-20-2000 |
|---|---|

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) RONALD A. RILEY, AK-8743 | 4. COUNSELOR'S NAME MRS. WIEDEL |
|---|---|

| 5. WORK ASSIGNMENT PAINTSHOP | 6. QUARTERS ASSIGNMENT FA. 3028 |
|---|---|

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

    SUPERINTENDENT KYLEY,

On two occation's I have communited with my Unit Manager Mr. Ogerskok, about my Pre-Release Status to no avail. (EXHIBIT A.). The purpose of this request is to seek your assistance in clearing up who and why was my Pre-Release Status revoked due to a Class (2) misconduct. Pursuant to DC-ADM 805-1 and 2 (§94.2) Pre-Release Programs consist of Work Release, Temporary Home Furlough, and Community Corrections. On or about March 1999, I was approved for Pre-Release Status (Transfer to Community Corrections Placement November 22, 1999) pursuant to DC-ADM 805-3 section (6) and 805-4 section 10. Attached as EXHIBIT B.- is a copy of the Pre-Release Transfer Order of March 24, 1999. Superintendent, Pre-Release is a program of the Department of Corrections (DOC) and not the Pennsylvania Board Of Probation And Parole (PBPP). Without the DOC's approval-

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)        (See next page)

☐ TO DC-14 CAR ONLY                     ☐ TO DC-14 CAR AND DC-15 IRS

2

| DC-135A | COMMONWEALTH OF PENNSYLVANIA |
| --- | --- |
| | DEPARTMENT OF CORRECTIONS |
| **INMATE'S REQUEST TO STAFF MEMBER** | INSTRUCTIONS |
| | *Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.* |

| 1. TO: (NAME AND TITLE OF OFFICER) | | 2. DATE |
| --- | --- | --- |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
| --- | --- |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
| --- | --- |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

for Community Corrections Transfer the PBPP cannot parole a person to the CCC
Pursuant to DC-ADM 801-4 section (4) a Class (2) misconduct does not effect
Pre-Release Status. Enlight of the fact that I was approved for CCC placement
my question is who and why was my Pre-Release Status revoked considering the
fact that I only received a Class (2) misconduct ?

    Lastly, keeping in mind that the PBPP cannot approve anyone for CCC pla-
cement, despite the fact that they recinded their parole, I was still suppose
to be sent to the CCC because I only received a Class (2) misconduct, and wou-
ld have had to make parole again from the CCC ! There are prisoner's in the
CCC right now who the PBPP has refused parole and remain there until they
are approved by the PBPP !

Thank you for your assistence,

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

**E X H I B I T  (D).**

RONALD A. RILEY
AK-8743
1100 PIKER STREET
HUNTINGDON, PA 16654

November 20, 2000

MARYANNE M. LEWIS
OFFICE OF THE ATTORNEY GENERAL
15th Floor, STRAWBERRY SQUARE
HARRISBURG, PA 17120

RE: RILEY -V- HORN, et al., No. 1:00-CV-00485

Dear Deputy Attorney General,

Pursuant to Defendant's Memorandum Of Law In Opposition to Plaint-
iff's Motion To Compel Discovery Id. at page (5) line (9) you stat-
ed "Plaintiff fails to mention whether he reviewed any of the infor-
mation contained in the Inmate Handbook", pertaining to qualifing
for pre-release transfer. (EXHIBIT A.). Upon examination of the In-
mate Handbook I have come to understand that pursuant to DC-ADM 805-
1 and 2 (§94.2) pre-release programs consist of Work Release, Temp-
orary Home Furloughs, and Community Corrections. On or about March
1999, I was approved for pre-release status (Transfer to Community
Corrections Placement November 22, 1999) pursuant to DC-ADM 805-3
section (6) and 805-4 section (10). (EXHIBIT B.).

Deputy Attorney General, since pre-release is a program of
the Department of Corrections (DOC) and not the Pennsylvania Board
of Probation and Parole (PBPP), why was my pre-release status revok-
ed considering the fact that I only received a Class (2) misconduct ?

And if my pre-release status was not revoked why was'nt I released
to the CCC on my release date ? Pursuant to DC-ADM 801-4 section (4)
a Class (2) misconduct does not effect pre-release status.
Keeping in mind that the PBPP cannot approve anyone for CCC place-
ment, and despite the fact that they (PBPP) recinded my parole due
to a Class (2) misconduct, I was still suppose to be sent to the CCC
because the misconduct is not sufficient to revoke the status, and
I would have had to make parole again in the CCC.

    Deputy Attorney General, I have inclosed a copy of a request
slip I sent to the Unit Manager of FA Block which I am housed on
marked as EXHIBIT C., asking him about this matter before you now. As
you can see from his response either he does not understand what I
am asking him, or this is another situation of retaliatory action
against me on the part of this administration at SCI-Huntingdon.

    Enclosing, it would be greatly appreciated if you would pre-
sent this matter to the Commissioner Martin Horn so that we can cle-
ar this situation up. I am approximately twelve (12) months past my
release date to the CCC and no at SCI-Huntingdon is willing to look
into tnis for me.

                                        Respectfully Submitted,

cc:file

E X H I B I T (E).

**DC-135A**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) MRS. WIEDEL, COUNSELOR, FA. BLOCK | 2. DATE 11-22-2000 |
|---|---|

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) RONALD A. RILEY, AK-8743 | 4. COUNSELOR'S NAME MRS. WIEDEL |
|---|---|

| 5. WORK ASSIGNMENT PAINTSHOP | 6. QUARTERS ASSIGNMENT FA 3028 |
|---|---|

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

MRS. WIEDEL,

When it became clear to you that I was not going to be paroled or anticipated delay in my parole November 22, 1999, did you contact the Regional Office pursuant to my Pre-Release Transfer Order of March 24, 1999 ? And if so what did you say ? And if not, why not ? Additionally, did the Superintendent notify the CCC pursuant to DC-ADM 805-8 section (g) if you did not ?

Thank you,

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

You were to be paroled to a CCC according to the PBPP-15 dated 2-12-99.

You were never processed for pre-release under DC-ADM 805, therefore your counselor had no responsibility under that policy. Parole was placing you in a CCC under their policies. By the way you did not show up for your annual Review when you could have

☐ TO DC-14 CAR ONLY          ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                    DATE

E  X  H  I  B  I  T  (F).

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Huntingdon**
814-643-2400
November 28, 2000

SUBJECT:    YOUR REQUEST TO STAFF

TO:         Ronald A. Riley
            AK-8743

FROM:    J.L. Grace                    THROUGH:    J.J. Ogershok, Jr.
         Major                                     Corrections Unit Manager

You were never placed on pre-release status by the Pennsylvania Department of Corrections as
you believe. In order to be placed into pre-release programming you would have been
processed by your counselor for pre-release consideration. You were never staffed and or
approved for pre-release programming.

The Pennsylvania Board of Probation and Parole paroled you to a Community Corrections
Center. As you discussed with Mr. Ogershok, had you paroled to the Harrisburg CCC and
violated any of their rules, you would have been treated as a parole case and if returned to
prison, it would have been as a Technical Parole Violator not as a pre-release return.

Because your placement was by the PBPP, DC-ADMIN 805 does not apply to you. You cannot
use those procedures to support your position.

You received a Class I misconduct, which was reduced to a Class II infraction by the PRC.
When the PBPP gave you a paroling action they also informed you that you must remain free of
misconducts. They did not say you could incur minor misconducts but no misconducts. The
PBPP then withdrew the paroling action because of your misconduct.

You also asked Deputy Secretary Erhard on November 28, 2000, about this very subject and he
told you that DC Admin 805 does not apply.

You have asked for an expert opinion from Mr. Ogershok, myself, and Deputy Secretary Erhard,
and you have received similar answers from these persons. The DOC never granted you pre-
release status, you were to be placed in a Community Corrections Center as a condition of
parole. Just as the PBPP has the power to give you that placement they can take it away from
you. That was the action taken by the PBPP not the DOC.

JLG:JJO:lm

cc:    Superintendent Kyler
       DC-14
       DC-15

**E X H I B I T (G).**



| | POLICY STATEMENT |
| --- | --- |
| | **Commonwealth of Pennsylvania ● Department of Corrections** |

| Policy Subject: | Policy Number: |
| --- | --- |
| **POLICY AND PROCEDURES FOR OBTAINING PRE-RELEASE TRANSFER** | **DC-ADM 805** |

| Date of Issue: | Authority: | Effective Date: |
| --- | --- | --- |
| June 12, 1996 | *Martin F. Ho* | July 15, 1996 |

## I. AUTHORITY:

The authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE:

This directive describes policy and procedures pertaining to pre-release programs which are offered as the result of the act of July 16, 1968, (P.L. 351, No. 173) (61 P.S. § § 1051-1054.)

## III. APPLICABILITY:

This policy is applicable to all persons who are employed by, contracted by or who have been committed to the Department of Corrections.

## IV. DEFINITIONS:

Detainer refers to a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release is imminent. Detainers are usually based on outstanding criminal charges, outstanding parole or probation violations, or additional sentences already imposed against the prisoner. (Carchman v. Nash, 105 S.Ct. 3401, 3403 (1985)

Potential Problematic Pre-Release Case refers to an inmate who falls into any of the following categories: objections from the District Attorney; objections from the victim (victim's family); offense generated community sensitivity; offense was a violent offense; offense was a sexual offense.

§94.2 PRE-RELEASE PROGRAMS

(a) Work/Educational Vocational Training Release:

1. Work Release: This is a program which enables an inmate to leave the institution and work in the community. The inmate is required to return to the institution at a designated time after the work day.

DC-ADM 805

    2.   Educational/Vocational Training Release: This is a program which enables an inmate to leave the institution and participate in educational or vocational-technical training. The inmate is required to return to the institution at a designated time after completion of training for the day.

(b)  Temporary Home Furlough: This is the authorized leave for an inmate from an institution for a period not to exceed seven (7) consecutive days for the purpose of furthering an inmate's rehabilitative programs. The inmate is required to return to the institution at a designated time after the furlough.

(c)  Community Corrections:

    1.   Community Corrections Center Residency: This is a program operated as a continuum of the rehabilitative services provided in the institutions. Community Corrections Centers are residences in the community with custodial structure and strong emphasis on guidance and counseling. These Centers serve those inmates who qualify and who should benefit from a gradual reintegration into society.

    2.   Contract Facility Residency: This is a program which complements Community Corrections Center residency and consists of publicly or privately owned agencies approved by the Bureau for use by its residents. These residences provide specialized residential treatment, for example, drug and alcohol treatment, and include 24 hour supervision, living quarters and special services for selected residents, and provisions for continued jurisdiction by Community Corrections. Any exception to this paragraph must have prior approval by the Director, Bureau of Community Corrections, and final approval by the Executive Deputy Commissioner of Corrections.

    3.   Community Corrections Furlough Program: This is a program which complements Community Corrections Center and Contract Facility residency and is permitted with the approval of Community Corrections staff. It is the authorized leave of an inmate from a Community Corrections Center or Contract Facility for a period not to exceed seven (7) consecutive days for the purpose of furthering the inmate's reintegration into the community. The inmate is required to return to the Center or Contract Facility at a designated time.

## V. POLICY:

§94.1 It is the goal of the Department of Corrections to administer its institutions and design programs so as to provide protection to society through the control and rehabilitation of offenders. In furtherance of that objective and the authority granted to the Department of Corrections by act of July 16, 1968, (P.L. 351, No. 173) (61 P.S. § § 1051-1054), a pre-release programs have been established. These programs are designed to provide opportunities for qualified inmates to have access to community resources, to demonstrate self-control and individual responsibility and to begin reintegration into the community. Criteria for participation in pre-release programs are designed to insure that the inmates who are selected to participate are those who will present the least risk to the community, and benefit the most from the program, and to offer the opportunities to as many inmates as possible.

## VI. PROCEDURES:

§94.3 PROCEDURES FOR PARTICIPATION IN PRE-RELEASE PROGRAMS

(a) The criteria for eligibility for Pre-Release Programs are as follows:



DC-ADM 805

1.  Inmates who have been sentenced to death or life imprisonment are not eligible.

2.  Time-served requirements are as follows:

    i.  To be time-eligible for placement in a Community Corrections Center or Contract Facility, the inmate must have completed at least one-half (1/2) of his/her minimum sentence, be within one year of completing his/her minimum sentence, have no outstanding detainers, and have served at least 9 months in a state institution.

    Exceptions may be made with written approval of the Regional Deputy Commissioner when early transfer is necessary to assist in the inmate's access to medical or mental health care or to provide longer period of participation for an inmate who has been confined for an unusually long period of time. No contact shall be made with the court until such approval is obtained.

    ii.  For all other pre-release programs, the inmate is time-eligible after he/she has completed one-half (1/2) of his/her minimum sentence or one-half (1/2) of the period ending with anticipated release date of an indeterminate sentence and has served at least 9 months in a state institution. The inmate must have no detainers lodged against him/her for an untried offense or for a sentence with a maximum term equal to or in excess of two years. [For purpose of definition, the Department takes the position that such detainers as fines and costs, non-support, motor vehicle violations, contempt of court, etc. do not fall into the category of "an untried offense" and therefore, while they do remain as detainers, they do not preclude the inmate's participation in pre-release programming. When referring such a case to Community Corrections, CCC staff shall be advised of the nature of the detainers in order that they may take steps to require payment of court costs, fines, restitution and support as a mandatory stipulation of participation in the community corrections program.] Inmates who are otherwise time-eligible who have detainers [other than those described in brackets above] lodged against them for less than two years can be time-eligible for any pre-release program except Community Corrections Center or Contract Facility upon written approval of the Regional Deputy Commissioner of Corrections. No contact shall be made with the court until such approval is obtained.

3.  The inmate must have a favorable recommendation of the majority of correctional facility staff. (Appropriate staff such as the Counselor, Drug & Alcohol Treatment Specialist, Work Supervisor, Housing Officer, Unit Manager, Education/Vocational Supervisor and Inmate Program Manager will vote on the proposed action. The recommendations of these staff will be forwarded to the Deputy Superintendents who will make their recommendations to the Superintendent.)

4.  The inmate must have had no Class I misconducts and no more than one Class II misconduct during the nine (9) months prior to application, and have sustained no Class I misconducts and no more than one Class II misconduct from the time of application to the time of transfer.

5.  Custody Level 4 and 5 inmates are ineligible.

6.  If the inmate's case meets the definition of "Potential Problematic Pre-Release Case," he/she must be processed as follows:

DC-ADM 805

Any inmate who falls in one of the categories noted below, who is being considered for pre-release status, furloughs, CCC's and work-release, must be reviewed and given final approval for this status by the Regional Deputy Commissioner. Inmates who fall under 4a, 4b, and any category of 5, require the Commissioner's approval for pre-release status.

1a. For cases serving drug mandatory minimum sentences - any objection from the District Attorney

1b. For cases other than those serving mandatory drug sentences - objections Containing new information from the District Attorney

2. Objections from the victim
3. Inmates whose offense generated community sensitivity
4. Inmates committed for a violent offense or escape
   a. Murder
   b. Voluntary Manslaughter
   c. Aggravated Assault
   d. Kidnapping
   e. Arson - endangering persons
   f. Robbery which constitutes a First Degree Felony
   g. Attempted Murder
   h. Escape or Attempted Escape
5. Inmates committed for any sexual offense, including but not limited to:
   a. Rape
   b. Statutory Rape
   c. Involuntary Deviate Sexual Intercourse
   d. Aggravated Indecent Assault
   e. Incest

In these cases, a referral package consisting of the following information, at a minimum will be forwarded to the Regional Deputy Commissioner:

1. Cover letter with update of incarceration including misconduct history and program involvement as well as rationale/purpose for pre-release status
2. Official version of crime including a detailed description of the criminal act
3. Classification Summary
4. PSI - if available
5. DC-16
6. DC -17 (misconduct history)
7. Rap Sheet
8. Pre-release package
9. All psychological reports

7. The inmate must obtain a medical clearance by the institution medical officer.

8. The inmate's application must be approved by the institution Superintendent.

9. If the inmate has not completed his/her minimum sentence, the notice process in §94.5 (relating to notification process) shall be followed.

10. Applications for transfer to Community Corrections require evaluation and concurrence by the staff of the appropriate Region of Community Corrections and approval by the Director of Community Corrections.

805-4

DC-ADM 805

11.  The inmate must execute a written agreement (DC-400) which requires him/her to abide by all the Rules and Regulations of the Pre-Release Program. In the case of Community Corrections placement, the written agreement must be signed prior to transfer.

12.  After transfer into a pre-release program, the inmate may continue to participate in the program only while adequate resources are available to provide care, custody and control for the inmate within the program to which he/she has been admitted. The inmate's privilege to participate in pre-release programs may be suspended or revoked for administrative or disciplinary reasons. The Department of Corrections will establish procedures to govern the revocation of pre-release privileges.

13.  Inmates who are approved for pre-release status and the temporary home furlough program should not generally receive a furlough more than nine (9) months prior to the minimum sentence expiration date. Where rationale exists for a furlough prior to 9 months, the case must be approved by the Regional Deputy Commissioner. In such cases the pre-release package, along with a cover memo stating the reasons for the request should be forwarded to the Regional Deputy Commissioner for review. This paragraph does not affect or relate to the Community Corrections Center furlough program or furloughs to a Community Corrections Center. Inmates who were being processed for furlough status prior to November 15, 1994, or who have been previously approved for furlough status are not affected by the nine (9) month limit, and may be furloughed in accordance with the existing furlough plan for that inmate.

(b)  The process of obtaining Pre-Release Transfer is initiated when an inmate submits an application to his/her counselor for participation in Work/Educational/Vocational Release, or for a Temporary Home Furlough, or for transfer to a Community Corrections placement. No inmate may be granted Pre-Release Transfer for any purpose unless the inmate satisfies all of the criteria in this section. Satisfying the eligibility criteria for Pre-Release Transfer does not mean the inmate will automatically be permitted to participate in Pre-Release Programs. Other considerations such as the staffs evaluation of the inmate's progress, the relevancy of the particular Pre-Release Program to the inmate's reintegration, the safety of the community and the victim of the inmate's crime, and the availability of space will be taken into consideration. Approval for participation in one Pre-Release Program does not imply clearance for, or preclude application for participation in any other program. The application shall specify a particular Pre-Release Program.

(c)  Special exception to subsections (a) or (b), other than paragraphs (a)( 1), (2)(ii), (6), (8) through (11) may be recommended in writing by the Superintendent of a correctional facility to the Regional Deputy Commissioner.

(d)  Inmates serving Federal Sentences in State Correctional Institutions or Regional Correctional Facilities shall be eligible for Pre-Release Transfer under rules and regulations established by the United States Department of Justice, Federal Bureau of Prisons, and subject to subsections (a) and (b), and the subsequent approval of Federal and State authorities.

(e)  Inmates serving sentences from other jurisdictions under the Interstate Corrections Compact (61 P.S. § § 1061-1063) are eligible subject to the subsections (a) and (b) and the sending state's written approval.

## §94.4 APPLICATION PROCESS

Application for Pre-Release programming shall be initiated by the inmate to his/her



DC-ADM 805

counselor, or if necessary, on the inmate's behalf by the counselor. Criteria in §94.3 (a)( 1), (3), (4), (5), (6), (7), (10) and (11) (relating to procedures for participation in pre-release programs) must be met prior to submission to the Superintendent for his/her approval. The process may begin a reasonable time prior to the time the inmate becomes time eligible. For Community Corrections placement the process may begin at 18 months prior and for temporary home furloughs it may begin at 15 months prior to the minimum sentence date unless there are exceptional reasons to initiate the process earlier.

§94.5 NOTIFICATION PROCESS

(a)  If the Superintendent approves an inmate's application for Pre-Release Transfer, the Superintendent shall notify the sentencing judge or if he/she is unavailable, the sentencing court, and the prosecuting district attorney's office by certified mail, of the inmate's proposed Pre-Release Program.(See sample pre-release letters in **Appendix A-1, A-2**) All comments will be considered. The pre-release letter to prosecutors and sentencing judges as it relates to the Pennsylvania Crime Victims Bill of Rights, Act 155, 1992, will include the notification paragraph, including the contact telephone number, as specified in the sample pre-release letter.

(b)  If the inmate has not finished his/her minimum sentence and an objection is received from the judge or court, if the judge is unavailable, within thirty (30) days of his/her receipt of the proposed Pre-Release plan, representatives of the Department of Corrections will contact the judge or court and if necessary arrange for a meeting to attempt to resolve the disagreement. If, within twenty (20) days of the Department of Correction's receipt of the objections, the judge or court does not withdraw the objection and the Department of Corrections does not withdraw its proposal for transfer, or the judge and the Department of Corrections do not agree on an alternate proposal for transfer, the Department of Corrections will refer the matter to the Board of Pardons for arbitration.

(c)  If the inmate is past his/her minimum sentence, notification of the sentencing judge or if he/she is unavailable, the sentencing court, and the prosecuting attorney's office for prior comment is not required. However, if the inmate has completed his/her minimum sentence the judge must receive prior notification by the Department that the privilege of pre-release is being granted. (See sample letter in **Appendix B**) The local police will receive notification that the inmate is being released into the community on pre-release status via a copy of the judge's notification letter. This last step of notification to the court and local police will occur no less than two (2) weeks prior to the release. Crime victims still have the right to comment according to the Pennsylvania Crime Victims Bill of Rights, Act 155, 1992 and DOC policy.

§94.6 STAFF RESPONSIBILITIES

(a)  It is the primary responsibility of the inmate's counselor to process the inmate's application for participation in Pre-Release Programs.

    1.  The inmate's counselor is responsible for obtaining, integrating, and coordinating all the information necessary to determine the inmate's eligibility or non-eligibility for participation in any Pre-Release Program.

    2.  The inmate's counselor will accept and review the inmate's application. If necessary, the counselor may help the inmate initiate this process. The inmate's counselor will also be responsible for having the Housing Officer, Work Supervisor and other appropriate staff complete relevant portions of the application and make recommendations concerning Pre-Release Programming.



DC-ADM 805



3.  The inmate's counselor will verify, with the Record Officer, all the necessary information with respect to the inmate's sentence and detainer status.

4.  The inmate's counselor will review and verify information relevant to eligibility-for example, presentence investigation report, judge's sentencing notes, classification and reclassification summary records, cumulative adjustment record. At a minimum the information reviewed will include the following:

 i. The official facts of the crime and, PSI, if available;

 ii. Updated criminal history information reports via the CLEAN terminal – this will be done in any case where either it has not been done since classification or where it has been more than 12 months since the last update;
  (1) Pennsylvania Master Name Index Inquiry with subsequent rap sheet
  (2) III Index Inquiry with subsequent rap sheet
  (3) Query CLEAN/NCIC wanted and missing person file;

 iii. Contact the Security Office for counterindicators such as gang involvement, escape indicators or other security concerns.

5. The inmate's counselor will request proper psychological and psychiatric evaluations (utilizing the DC-97, Psychological Referral Form), for those applicants who have a history of mental or emotional disorders, violent crimes, or other situations where deemed advisable. He/she may contact other persons and agencies to acquire additional information.



6. When all of the necessary information has been obtained, the inmate's counselor will refer the application to his/her supervisors for review.

(b) The Inmate Program Manager will be responsible for tracking the status of all pre-releasecases throughout the facility. It shall be the primary responsibility of the Inmate Program Manager to coordinate the staff evaluations and recommendation process.

 1. The Inmate Program Manager will chair a meeting of designated institutional staff who will make recommendations regarding Pre-Release Programs. The inmate shall be present at this staff meeting for input.

 2. The staff's findings, recommendations and rationale will be forwarded to the Superintendent through the office of the Inmate Program Manager, the Office of the Deputy Superintendent for Centralized Services and the Deputy Superintendent for Facility Management, with comments by all.

(c) It is the responsibility of the Superintendent to give final approval or disapproval of recommendations regarding Pre-Release Programs. The inmate will be advised by the Unit Manager, in the presence of the inmate's counselor, of the final decision and its rationale. The decision and rationale will be documented in the Cumulative Adjustment Record.

(d) All letters to judges and district attorneys shall be signed by the Superintendent.

(e) The inmate's counselor will discuss with the inmate prior to the commencement of the program, the objectives, rules and regulations of the program and obtain written agreement as provided for in § 94.3(a)(11). The Counselor will review the program objectives on the inmate's Cumulative Adjustment Record.

DC-ADM 805

(f)    Inmates approved for pre-release will be processed for home investigation reports according to the requirements enumerated in Vol. 8.2.2.

(g)    Community Corrections Center referrals will be completed in accordance with Vol. 11.4.1 and Vol. 8.3.1 for inmates approved for Community Corrections Center and Contract Facility residence. There is usually a period of several months between referral to a CCC and actual transfer to the facility. If, during this time significant events occur in the inmate's case or if new information becomes available which may affect an inmate's placement or functioning in a CCC, the Superintendent or designee of the referring institution is responsible for notifying the CCC via a written report of the changes. An example of significant changes would include problems with an approved home furlough residence.

## VII. SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX. SUPERSEDED POLICY AND CROSS REFERENCE

A.    Superseded:
       This policy supersedes all previous versions of DC-ADM - 805. It also incorporates or rescinds all existing policy bulletins dated prior to the effective date of this policy.

B.    Cross-Reference:

   1.    Administrative Manuals:
   a.    Volume 8.3.1, Community Corrections Referrals
   b.    Volume 8.2.2,Furlough Investigations
   c.    Volume 8.5.1, Administrative Returns (from CCC's)
   d.    Volume 11.4.1, Case Summary Policy and Manual
   e.    Volume 13.4.3, Medication for Pre-Release Transfer, Parole and
         Maximum Sentence Released Inmates
   f.    Volume 17.2.1, Victim Input and Notification System
   g.    Volume 17.2.2, Inmate Release and Scheduling System
   h.    DC-ADM-801, Institutional Disciplinary and Restricted Housing Procedures

Martin F. Horn
Commissioner



Case 1:00-cv-00485-SHR-KH    Document 31    Filed 12/11/2000    Page 34 of 47

Notice of the release of each person shall be given to the State Police, the probation officer and the sheriff or chief of police of the county, and the chief of police of the municipality or township of the locality to which the individual is assigned or of his authorized destination.

1968, July 16, P.L. 351, No. 173, § 2. Amended 1970, Dec. 2, P.L. 832, No. 274, § 1; 1974, Dec. 27, P.L. 1052, No. 325, § 1, ind. effective.

**Transfer of Powers and Duties**

Section 732–502 of Title 71 provides that the powers and duties of the Attorney General and/or the Department of Justice contained in this section are transferred to the Office of General Counsel.

**Historical and Statutory Notes**

1974 Amendment. At end of subsec. (b), added "subject to compliance with subsection (c) of this section," and added

subsec. (c) and three paragraphs following.

**Library References**

Convicts ⟨key⟩7(2).
Principal and Surety ⟨key⟩3104.
WESTLAW Topic Nos. 98, 309.

C.J.S. Convicts §§ 16 to 18.
C.J.S. Prisons and Rights of Prisoners §§ 7, 122.

**Notes of Decisions**

In general    1
Duties owed to public    2
Review    4
Trial courts    3

**1. In general**

Pennsylvania statutes governing prerelease programs vest broad discretion in the board of correction with regard to the location of prerelease centers, the types of programs available, and the administrative criteria for prerelease. Jamieson v. Robinson, C.A.3 (Pa.)1981, 641 F.2d 138.

Fact that at least two maximum security prisons in Pennsylvania had each established a functioning work release plaintiff was confined had established no such program did not constitute an invidious discrimination in violation of the Fourteenth Amendment's guarantee of equal protection of the laws absent evidence that there was no reasonable basis for the discretionary standard in the laws or that the laws were arbitrarily or

capriciously applied. Jamieson v. Robinson, C.A.3 (Pa.)1981, 641 F.2d 138.

Other than cursory reference to rehabilitation as one purpose of prerelease program, there was nothing in Pennsylvania's regulations governing prerelease program serving as implicit limitation on discretion of prison officials sufficient to create protectible liberty interest on part of prospective participants in program and thus prison inmate did not have reasonable expectation of participation in program permitting invocation of due process. Wright v. Cuyler, E.D.Pa.1981, 517 F.Supp. 637.

Section 1051 et seq. of this title and regulations permitting release of state prisoners prior to expiration of their minimum sentences impose broad discretion upon prison officials and only in event of arbitrary abuse of such discretion of such severity as to amount to lack of due pro-

Because rehabilitation programs involve "subjective" and "predictive" decisions, administrators of such programs must necessarily be allowed broad discretion in discharging their duties. Wright v. Cuyler, E.D.Pa.1981, 517 F.Supp. 637.

403

**§ 1052.    Release plan for prison inmates**

(a) The Commissioner of Correction may transfer any person incarcerated in any pre-release center or in any pre-release center located in any State or Regional Penal or Correctional Institution under the supervision of the Bureau of Correction who has not been sentenced to death or life imprisonment, to any pre-release center under the supervision of the Department of Justice.

(b) Any person transferred to and confined in a pre-release center may be released therefrom temporarily with or without direct supervision at the discretion of the Bureau of Correction in accordance with rules and regulations as provided in section 3 of this act, for the purposes of gainful employment, vocational or technical training, academic education and such other lawful purposes as the bureau shall consider necessary and appropriate for the furtherance of the inmate's individual pre-release program subject to compliance with subsection (c) of this section.

(c) A person who has not served his minimum sentence shall not be released to a pre-release center unless (i) more than twenty days have elapsed after written notice of the proposed transfer, describing the person's individual pre-release program, has been received by the sentencing judge or in the event he is unavailable, the sentencing court and the prosecuting district attorney's office and no written objection by the judge containing the reason therefor has been received by the bureau; or (ii) the judge withdraws his objection after consultation with representatives of the bureau; or (iii) approval of the proposed transfer is given by the Board of Pardons.

In the event of a timely objection by the judge, representatives of the bureau shall meet with the judge and attempt to resolve the disagreement. If, within twenty days of the bureau's receipt of the objection, the judge does not withdraw his objection, or the bureau does not withdraw its proposal for transfer, or the judge and the bureau do not agree on an alternate proposal for transfer, the matter shall be listed for hearing at the next session of the Board of Pardons to be held in the hearing district in which the judge is located. During the hearing before the Board of Pardons, representatives of the judge, the bureau, the district attorney of the county where the individual was prosecuted and any victim involved shall have the opportunity to be heard.

A person who has served his minimum sentence may be released by the Bureau of Correction only after notice to the judge that the privilege is being granted.

# PRE-RELEASE CENTERS

**61 P.S. § 1053**
**Note 3**

## Law Review and Journal Commentaries

Home furlough program in Pennsylvania correctional institutions. (1974) 47 Temp.L.Q. 288.

## Library References

Convicts ⚖️7(2).
Principal and Surety ⚖️3104.
WESTLAW Topic Nos. 98, 309.

C.J.S. Convicts §§ 16 to 18.
C.J.S. Prisons and Rights of Prisoners §§ 7, 122.

## Notes of Decisions

In general 1
Community treatment programs 4
Denial of prerelease 2
Furloughs 3

### 1. In general

Because rehabilitation programs involve "subjective" and "predictive" decisions, administrators of such programs must necessarily be allowed broad discretion in discharging their duties. Wright v. Cuyler, E.D.Pa.1981, 517 F.Supp. 637.

Prisoner who had satisfied all minimum objective eligibility requirements for participation in prerelease program had no protected liberty interest in prerelease status and could not state cause of action upon which relief could be granted for denial of prerelease status. Reider v. Com., Bureau of Correction, 502 A.2d 272, 93 Pa.Cmwlth. 326, Cmwlth.1985.

Complaint, which alleged, inter alia, that request by prison inmate for hearing on denial of his applications for participation in community treatment services program and temporary home furlough programs was denied and that defendants, acting in bad faith and under color of state law, were administering such programs in discriminatory manner and were conspiring to deny inmate participation in the programs in violation of his rights to equal protection and due process, imperfectly pled facts which, if properly pled and proved, might entitle inmate to relief; thus, sustaining of demurrer was error. Com. ex rel. Saunders v. Creamer, 345 A.2d 702, 464 Pa. 2, Sup.1975.

The crime of prison breach was complete when defendant failed to return at the stipulated time, the locus was the county in which the institution was located, and the courts of that county had jurisdiction and venue to process the complaint. Com. v. Scates, 63 Pa. & C.2d 132 (1972).

### 2. Denial of prerelease

Denial of prerelease status to prisoner who had met all minimum objective criteria for participation on basis of prisoner's offense, time remaining on minimum sentence and conclusion that informal structure of prerelease status would be inappropriate for prisoner was due exercise of professional judgment, rather than unconstitutional discrimination against prisoner among other prisoners, allegedly alike background and similarly situated, who had obtained prerelease status. Reider v. Com., Bureau of Correction, 502 A.2d 272, 93 Pa.Cmwlth. 326, Cmwlth.1985.

Prisoner denied prerelease status had no cause of action for reimbursement of funds he would have earned had his prerelease application been granted, where prisoner had no protected liberty interest in prerelease status and denial of such status was not a denial of equal protection. Reider v. Com., Bureau of Correction, 502 A.2d 272, 93 Pa.Cmwlth. 326, Cmwlth.1985.

### 3. Furloughs

Eligibility or lack of eligibility for temporary home furloughs in Pennsylvania is a "condition of confinement" which may be challenged directly in an action under Civil Rights Act of 1871 without resort to habeas corpus and its attendant requirement for exhaustion of state remedies, notwithstanding that total number of days spent behind bars can technically be reduced by number of days of furlough, declining to follow decisions to the contrary. Wright v. Cuyler, C.A.3 (Pa.)1980, 624 F.2d 455, on remand 517 F.Supp. 637.

---

tection) to attend his grandson's Bar Mitzvah, contrary to statute empowering only Bureau of Corrections with discretion to grant release or temporary home furlough prior to expiration of minimum sentence. U.S. ex rel Williams v. Cuyler, E.D.Pa.1977, 447 F.Supp. 540.

### 2. Duties owed to public

As general rule, correction personnel who participate in statutorily authorized furlough of inmate owe no duty to specific members of public at large; however, where personnel know that inmate possesses dangerous propensities and is likely to cause particular harm to specific person, they are bound to exercise reasonable care in making furlough decision. Moore v. Com., Dept. of Justice, 538 A.2d 111, 114 Pa.Cmwlth. 56, Cmwlth.1988, appeal granted 553 A.2d 971, 520 Pa. 610, appeal dismissed 567 A.2d 1040, 523 Pa. 418.

Prison officials owed no duty to eyewitness to attend robbery who was prepared to testify as prosecution witness when they treated and furloughed perpetrator, who later shot witness; officials did not know of or have reason to know of witness' existence and were not in special relationship with witness. Moore v. Com., Dept. of Justice, 538 A.2d 111, 114 Pa.Cmwlth. 56, Cmwlth.1988, appeal granted 553 A.2d 971, 520 Pa. 610, appeal dismissed 567 A.2d 1040, 523 Pa. 418.

### 3. Trial courts

Trial court overstepped its jurisdiction and usurped legislatively mandated authority of Bureau of Corrections in ordering prisoner's furlough from state peni-

tentiary to attend his grandson's Bar Mitzvah, contrary to statute empowering only Bureau of Corrections with discretion to grant release prior to completion of state prisoner's sentence; statutes at issue tried to afford judge opportunity to object only after Bureau determined that prerelease would be appropriate, and gave Board of Pardons ultimate authority to accept or reject judge's objection. Com. v. Benn, 680 A.2d 896, 451 Pa.Super. 538, Super.1996.

Judge, who in response to request of superintendent of prison that the commissioned on propriety of inmate being released on a prerelease program, replied, it was in his considered judgment petitioner was a dangerous, vicious, professional criminal and that prerelease would not be in best interests of society, was not thereafter precluded from hearing requests for collateral relief. Com. v. Campas, 331 A.2d 670, 232 Pa.Super. 347, Super.1974.

### 4. Review

Function of District Court on prison inmate's constitutional challenge to denial of his application for prerelease was not to review prison officials' professional opinion on matter involving rehabilitation, i.e., whether their rejection of inmate's application for prerelease was penologically sound, but to ensure that in denying inmate's application officials were in fact exercising their professional judgment, and not discrimination against inmate for reasons unrelated to rehabilitative process. Wright v. Cuyler, E.D.Pa.1981, 517 F.Supp. 637.

## § 1053. Establishment of rules and regulations; penalties

The Bureau of Correction shall establish rules and regulations for granting and administering release plans and shall determine those rules or regulations prescribed by the bureau, his release privileges may be withdrawn. Failure of any inmate violates the from the assigned place of employment, training, education or other authorized destination shall be deemed an escape under the provisions of section 309 of the act of June 24, 1939 (P.L. 872), known as "The Penal Code."

1968, July 16, P.L. 351, No. 173, § 3. Amended 1970, Dec. 2, P.L. 832, No. 274, § 1.

Note 3

The Praiser rule, i.e., that sole federal remedy to challenge to duration of physical confinement is writ of habeas corpus, was inapplicable in Pennsylvania prisoner's claim raised in Civil Rights Act suit, seeking fair application of eligibility criteria for admission to home furlough program, which challenge related to manner by which prison authorities reached the decision and not to outcome of that decision. Wright v. Cuyler, C.A.3 (Pa.)1980, 624 F.2d 455, on remand 517 F.Supp. 637.

Challenge made by plaintiff in his status as a prisoner of the Commonwealth of Pennsylvania to the standards applied by the defendant in denying plaintiff's request for a temporary home furlough under the prerelease furlough program of the bureau of corrections was a challenge to the fact or duration of plaintiff's confinement and, hence, was cognizable, not by a complaint to redress deprivation of civil rights secured to plaintiff by due process and equal protection clauses, but by means of a petition for writ of habeas corpus for which plaintiff was required to exhaust available state remedies. Bullock v. Cuyler, E.D.Pa.1978, 463 F.Supp. 40.

Section 1051 et seq. of this title and regulations permitting release of state prisoners prior to expiration of their minimum sentences impose broad discretion upon prison officials and only in event of arbitrary abuse of such discretion of such severity as to amount to lack of due process or equal protection could there arise valid claim of civil rights deprivation for failure to grant release on temporary home furlough prior to expiration of minimum sentence. U.S. ex rel. Williams v. Cuyler, E.D.Pa.1977, 447 F.Supp. 540.

§ 1054. Salaries and wages of inmates

(a) The salaries or wages of inmates gainfully employed under any plan established by this act shall be collected by the Bureau of Correction or its designated agents or employes. Such wages shall not be subject to garnishment or attachment for any purpose either in the hands of the employer or the Bureau of Correction during the inmate's term of imprisonment and shall be disbursed only as provided in this section, but for tax purposes they shall be income of the inmate.

(b) The salaries or wages of any inmate participating in any such plan shall be disbursed by the Bureau of Correction in the following order:

The inmate of a state correctional institution who was given a furlough, one of the conditions of which was that he did not leave the state, who was picked up in another state within the time his furlough was in effect while en route to his parents' home in a third state, was not guilty of 'escape' in violation of 18 Pa.C.S.A. § 5121 but was subject to discipline, including revocation of future furlough privileges, under this section. Com. v. Muscati, 2 Pa. D. & C.3d 171 (1977).

Where a prisoner was granted a six-day furlough under the Pre-Release Act of 1968 (61 P.S. § 1051 et seq.) after signing a specific statement of his understanding that failure to return would constitute escape under the provisions of 18 Pa.C.S.A. § 5121, his failure to return upon expiration of the furlough rendered him guilty of the crime of prison breach. Com. v. Scates, 63 Pa. D. & C.2d 132 (1972).

4. Community treatment programs

Even though state prisoner's right to be admitted to community treatment program was not a right guaranteed by Federal Constitution, where program was created by state and Bureau of Prisons was statutorily required to establish procedures for screening, selecting and referring inmates to community treatment centers, prisoner's interest in program was sufficiently embraced within Fourteenth Amendment "liberty" (U.S.C.A. Const. Amend. 14), to entitle him to minimum procedures appropriate under the circumstances and required by due process clause to insure that state-created right was not arbitrarily abrogated. U.S. ex rel. Myers v. Sielaff, E.D.Pa.1974, 381 F.Supp. 840.

PRE-RELEASE CENTERS

(1) The board of the inmate including food and clothing;

(2) Necessary travel expense to and from work and other incidental expenses of the inmate;

(3) Support of the inmate's dependents, if any;

(4) Payment, either in full or ratably, of the prisoner's obligations acknowledged by him in writing or which have been reduced to judgment;

(5) The balance, if any, to the prisoner upon his discharge. 1968, July 16, P.L. 351, No. 173, § 4.

Library References

Convicts ⚷7(2).
WESTLAW Topic No. 98.
C.J.S. Convicts §§ 16 to 18.

## 61 P.S. § 331.16 — PENAL INSTITUTIONS

movements, or to influence[1] the action of any other officer, clerk or employe of said board. No member of the board, officer, clerk or employe thereof, or any person officially connected therewith, shall in any way or manner interfere with or participate in the conduct of any election or the preparation therefor at the polling place, or with the election officers while counting the votes or returning the ballot boxes, books, papers, election paraphernalia and machinery to the place provided by law, or be within any polling place, save only for the purpose of voting as speedily as it reasonably can be done, or be otherwise within fifty feet thereof, except for purposes of ordinary travel or residence during the period of time beginning with one hour preceding the opening of the polls for holding the election and ending with the time when the election officers shall have finished counting the votes and have left the polling place. No member of the board, officer, clerk or employe thereof, or any person officially connected therewith, shall directly or indirectly make or give, demand or solicit, or be in any manner concerned in making, giving, demanding, soliciting or receiving any assessments, subscriptions or contributions, whether voluntary or involuntary, to any political party or for any political purpose whatsoever. Any person or persons who shall violate any of the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, be punished by a fine not exceeding five hundred dollars ($500) and imprisonment not exceeding one year, either or both, in the discretion of the court, and in addition thereto, shall forfeit his office or employment, as the case may be, and shall not thereafter be appointed or employed by the board in any position or capacity whatsoever. It shall be the duty of the board to dismiss from his office or employment any officer, clerk or employe thereof who shall violate this section.

1941, Aug. 6, P.L. 861, § 16.

[1] Enrolled bill reads "infiuence".

**Library References**

Pardon and Parole ⟨key⟩55.
WESTLAW Topic No. 284.
C.J.S. Pardon and Parole §§ 42 to 44.

### § 331.16a.  Advisory committee

(a) An Advisory Committee on probation is hereby created to assist the board. It shall consist of nine members, seven of whom shall be appointed by the Governor, with the consent of a majority of all the members of the Senate. At least two shall be judges of courts of record of this Commonwealth, at least one shall be a county commissioner, and the remaining members shall be qualified in the field of probation and parole either by training or experience. The President pro tempore of the Senate and the Speaker of the House of Representatives shall each appoint a member of their respective houses to serve as members of the committee. The term of a member hereafter appointed, except to fill a vacancy shall be for four years and until their successors have been appointed and qualified, but in no event more than ninety days beyond the expiration of their appointed term: Provided, however, That the terms of members of the committee who are appointed by virtue of holding an office as a member of the General Assembly, as a judge, or as a county commissioner shall continue only so long as he remains in that office. Vacancies occurring in an office of a member of the Advisory Committee by expiration of term, death, resignation, removal or for any other reason shall be filled in the manner provided by section 8 of Article IV of the Constitution of Pennsylvania for the remainder of the term. Whenever the term of an Advisory Committee member, other than one who is a member of the General Assembly, expires, that member's position shall be immediately deemed a vacancy and the Governor shall nominate a person to fill that membership position on the committee within ninety days of the date of expiration, even if the member continues to remain on the committee. The Governor shall designate one of the members of the committee as its chairman.

(b) Each member of the Advisory Committee shall be paid all reasonable and necessary travel and other expenses incurred by him in the performance of his duties.

(c) The Advisory Committee shall aid the chairman and the board in formulating and reviewing standards for probation personnel and probation services in the counties.

1941, Aug. 6, P.L. 861, § 16.1, added 1965, Dec. 27, P.L. 1230, § 7. Amended 1986, Oct. 9, P.L. 1424, No. 134, § 4, ind. effective.

**Library References**

Pardon and Parole ⟨key⟩55.
WESTLAW Topic No. 284.
C.J.S. Pardon and Parole §§ 42 to 44.

### § 331.16b.  Powers and duties of board

(a) The board shall have the power and its duty shall be:

(1) To supervise and make pre-sentence investigations and reports as provided by law;

(2) To collect and maintain copies of all pre-sentence investigations and reports;

(3) To collect and maintain a record of all persons who are placed on probation and parole after the effective date of this amendment;

(4) To collect, compile and publish statistical and other information relating to probation and parole work in all courts and such other information the board may deem of value in probation service;

(5) To establish, by regulation, uniform statewide standards for: (i) pre-sentence investigations; (ii) the supervision of probationers; (iii) the qualifications for probation personnel; (iv) minimum salaries; and (v) quality of probation service. The standards for the qualifications of probation personnel shall only apply to probation personnel appointed after the date the standards are established. Should any probation personnel appointed prior to the date the standards were established fail to meet the standards, the court having jurisdiction for such personnel may request the board to establish in-service training for such personnel in accordance with the standards;

(6) To adopt regulations establishing specific composition, functions and responsibilities for the Citizens Advisory Committees, and to receive reports, recommendations or other input concerning parole policies and parole-related concerns from these committees on a regular basis;

(7) To adopt regulations establishing criteria for board acceptance of cases for supervision and pre-sentence investigations from counties that on December 31, 1985, maintained adult probation offices and parole systems;

(8) To enter into contracts for purchasing community services to assist parolees and to supplement existing programs;

(9) To pay the cost of pre-parole drug screening tests for inmates within the parole release jurisdiction of the board, who are confined in a State or local correctional facility, as required under section 21;[1]

(10) To enter into contracts which provide for the continuous electronic monitoring of parolees.

(11) To establish and provide for intensive supervision units and day reporting centers for the supervision of parolees.

1941, Aug. 6, P.L. 861, § 16.2, added 1965, Dec. 27, P.L. 1230, § 7. Amended 1986, Oct. 9, P.L. 1424, No. 134, § 4, imd. effective; 1990, July 11, P.L. 470, No. 114, § 1, imd. effective; 1995, Nov. 17, P.L. 1145, No. 37 (Spec. Sess. No. 1), § 1, effective in 60 days.

[1] 61 P.S. § 331.21.

### Historical and Statutory Notes

Sections 4 and 5 of Act 1990, July 11, P.L. 470, No. 114, provide that the amendment to this section shall take effect immediately and shall be retroactive to Feb. 28, 1990.

The 1995 amendment added chs. (10) and (11).

### Library References

Pardon and Parole ⟨—⟩55.
WESTLAW Topic No. 284.
C.J.S. Pardon and Parole §§ 42 to 44.

### Notes of Decisions

In general    1
Orders    2
Sentencing    3

#### 1. In general

Doctrine of sovereign immunity insulated the Commonwealth and the board of probation and parole from liability to minor victim who sued during a rehabbery committed by alleged parolee. Reiff v. City of Philadelphia, 1985, 31 Pa.Cmwlth. 1357, 27 Pa.Cmwlth. 504, Cmwlth.1976.

#### 2. Orders

Practice of Board of Probation and Parole whereby Board coins its own terms

of art, such as "detainer sentence," without properly defining them and using those terms in its official orders and pronouncements is strongly disapproved of. Counts v. Com., Pennsylvania Bd. of Probation and Parole, 487 A.2d 450, 87 Pa. Cmwlth.1985.

#### 3. Sentencing

The Board of Probation and Parole is without power to alter a judicially imposed sentence. Hawkins v. Com., Pennsylvania Bd. of Probation and Parole, 490 A.2d 942, 88 Pa.Cmwlth. 547, Cmwlth. 1985.

### § 331.17. Powers of board respecting parolees; supervision of persons placed on probation; sentences for less than two years excepted

The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided. It is further provided that the board shall have exclusive power to supervise any person hereafter placed on probation or parole (when sentenced to a maximum period of less than two years) by any judge of a court having criminal jurisdiction, when the court may by special order direct supervision by the board, in which case the probation or such parole case shall be known as a special case and the authority of the board with regard thereto shall be the same as herein provided with regard to parole cases within one of the classifications above set forth: Provided, however, That the powers and duties herein conferred shall not extend to persons sentenced for a maximum period of less than two years, and nothing herein contained shall prevent any court of this Commonwealth from paroling any person sentenced by it for a maximum period of less than two years: And provided further, That the period of two years herein referred to shall mean the entire continuous term of sentence to which a person is subject, whether the same be by one or more sentences, either to simple imprisonment or to an indeterminate imprisonment at hard labor, as

E X H I B I T (H).

**DC-43**
**PRESCRIPTIVE PROGRAM PLAN**

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**

| DC NUMBER | NAME | INSTITUTION | DATE INITIATED |
|---|---|---|---|
| AK8743 | | Huin | VI-19 |

**AREAS OF CONCERN**
( ) Mental Health   ( ) Physical   ( ) Assaultiveness
( ) Vocational   ( ) Drugs   ( ) Sexual
( ) Academic   ( ✓ ) Alcohol   ( ) Escape
( ) Other

**RECOMMENDED ACTIONS**
(The following is a list of suggested programs and/or kinds of behavior which may help you with the weakness and/or problem areas):

1. Remain misconduct free
2. Receive satisfactory housing and work report
3. Exercise regularly
4. Maintain adequate hygiene, keep cell clean
5. Maintain employment
6.

_____
Signature of Staff Member

_____
Signature of Inmate

Tentative Progress Review (date) 11/2000

**RESULTS ACHIEVED** or reasons for lack of results

_____
Signature of Staff Member

_____
Date Reviewed

_____
Signature of Inmate

The two lists are not all inclusive and may change over time. Additional weaknesses and/or problem areas may be un-covered. Weaknesses and/or problem areas may be overcome or reduced in importance. Programs may be completed or additional programs may be indicated. These lists can and should be reviewed periodically to account for any pro-gress or lack of progress. You should request a review through your Counselor to discuss any changes and to keep your prescriptive program current.
While all participation in all programs is strictly voluntary, progress or lack of progress in dealing with weaknesses and/or problem areas will be one of the factors taken into consideration for all actions requiring staff support such as recom-

## E X H I B I T (I).

**DC-43**
**PRESCRIPTIVE PROGRAM PLAN**

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**

| DC NUMBER | NAME | INSTITUTION | DATE INITIATED |
|---|---|---|---|

**AREAS OF CONCERN**
( ) Mental Health    ( ) Physical    (✓) Assaultiveness
( ) Vocational       ( ) Drug        (✓) Sexual
( ) Academic         ( ) Alcohol     ( ) Escape
( ) Other

**RECOMMENDED ACTIONS**
(The following is a list of suggested programs and/or kinds of behavior which may help you with the weakness and/or problem areas):

1. Remain misconduct free
2. Receive satisfactory housing and work reports
3. Exercise regularly
4. Maintain adequate hygiene; keep cell clean
5. Maintain employment
6. PARTICIPATE IN SEX OFFENDER PROGRAMMING and other programs of interest IF RECOMMENDED BY PSY STAFF

_____         _____
Signature of Staff Member                Signature of Inmate

Tentative Progress Review (date) _11-01_

**RESULTS ACHIEVED** or reasons for lack of results:




_____   _____   _____
Signature of Staff Member          Date Reviewed                      Signature of Inmate

The two lists are not all inclusive and may change over time. Additional weaknesses and/or problem areas may be uncovered. Weaknesses and/or problem areas may be overcome or reduced in importance. Programs may be completed or additional programs may be indicated. These lists can and should be reviewed periodically to account for any progress or lack of progress. You should request a review through your Counselor to discuss any changes and to keep your prescriptive program current.
While all participation in all programs is strictly voluntary, progress or lack of progress in dealing with weaknesses and/or problem areas will be one of the factors taken into consideration for all actions requiring staff support such as recom-

**E X H I B I T (J).**

**DC-43**
**PRESCRIPTIVE PROGRAM PLAN**

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**

| DC NUMBER | NAME | INSTITUTION | DATE INITIATED |
|---|---|---|---|
| AK 8743 | | Hun | 11-17-9 |

**AREAS OF CONCERN**

( ) Mental Health    ( ) Physical    ( ) Assaultiveness
( ) Vocational      ( ) Drug      ( ) Sexual
( ) Academic      ( ) Alcohol    ( ) Escape
( ) Other

**RECOMMENDED ACTIONS**
(The following is a list of suggested programs and/or kinds of behavior which may help you with the weakness and/or problem areas):

1. Remain misconduct free
2. Receive satisfactory housing and work reports
3. Exercise regularly
4. Maintain adequate hygiene; keep cell clean
5. Maintain employment
6. Sex offender evaluation

_____
Signature of Staff Member

_____
Signature of Inmate

Tentative Progress Review (date) 11/2000

**RESULTS ACHIEVED** or reasons for lack of results

1. no misconducts
2. average work reports
3. yard work
4. good
5. employed in Paint Shop
6. done / SOP

_____
Signature of Staff Member

11-31-00
Date Reviewed

_____
Signature of Inmate

The two lists are not all inclusive and may change over time. Additional weaknesses and/or problem areas may be uncovered. Weaknesses and/or problem areas may be overcome or reduced in importance. Programs may be completed or additional programs may be indicated. These lists can and should be reviewed periodically to account for any progress or lack of progress. You should request a review through your Counselor to discuss any changes and to keep your prescriptive program current.

While all participation in all programs is strictly voluntary, progress or lack of progress in dealing with weaknesses and/or problem areas will be one of the factors taken into consideration for all actions requiring staff support such as recom-

**E  X  H  I  B  I  T  (K).**

**DC-804**
PART 1

   

### COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| DIANA G. BANEY | SCI-HUNTINGDON | 11-21-2000 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| RONALD A. RILEY, AK-8743 | | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| PAINTSHOP | FA. 3028 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Ms. Baney, On 11-21-2000, Sgt. Sleaster of FA. Block handed me a copy of my Prescriptive Program Plan dated 11-21-2000, from my counselor (Mrs. Wiedel) which I was not in attendance at the time of it's formulation. Additionally, attached to this 11-21-2000, Prescriptive Program Plan was a Prescriptive Program Plan dated 11-17-~~2000~~ X 1999, which had been altered from it's original form the day I signed it. My copy of this document of 11-17-1999, does not contain a line six (6) that has been added to the copy I received from Sgt. Sleater from my counselor Mrs. Wiedel sometime after I had signed it 11-17-1999 and my copy will prove it. I showed my copy to Sgt. Sleater as soon as I noticed the ateration in the document he gave to me and asked him for a grievance so that I could report this document tampering by my counselor Mrs. Wiedel. I would like this matter investigated as soon as possible.

B. Actions taken and staff you have contacted before submitting this grievance:

As soon as I noticed That the document had been altered I got my copy and showed Sgt. Sleater and ased him for a grievance to report it. My counselor had no right changing this document after it was signed by me because I was not aware of that change nor did I agree to said change.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                              Date

4.      Other Kinds of issues for which review procedures have been previously established by administrative memorandum or policy statement.

Grievances related to the above issues shall be according to procedures specified in the directives listed and shall not be reviewed by the Inmate Grievance Coordinator.

_____    Initial reviews must be submitted within 15 calendar days after the events upon which claims are based.  (Section VI., B, 2)

__X__    Block B must be completed, as per the Instruction #3 of the Official Inmate Grievance Form (DC-ADM 804, Part I).


Comments:

Mr. Riley:

Be advised that DC-ADM 804 requires that you make an effort to resolve matters such as this through appropriate staff prior to filing a grievance.  Therefore, any complaints or concerns you have regarding a Prescriptive Program Plan dated 11/17/99 and Mrs. Weidel should be addressed through Mr. J. Ogershok, Unit Manager, via request slip.  If this matter cannot be resolved at the recommended level, you may resubmit your grievance for further consideration.  Because you fail to comply with the guidelines set forth by DC-ADM 804, your grievance is being returned unprocessed.

DGB:tll

cc:    Mr. J. Ogershok
       DC-15
       File