IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,

    Plaintiff

v.

MARTIN HORN, et al.,

    Defendants

No. 1:00-CV-00485
(Judge Rambo)

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

This is a civil rights action filed pursuant to 42 U.S.C.§ 1983 alleging claims under the First, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff, Ronald Riley, is an inmate currently incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). Defendants are numerous employees or former employees of the Pennsylvania Department of Corrections ("DOC"), or employees of the Pennsylvania Board of Probation and Parole ("Board"). The allegations in the complaint stem from an alleged unlawful transfer to SCI-Huntingdon and an alleged "bogus" misconduct that Riley asserts was issued in retaliation for a prior charge of staff assault. In addition, Riley claims that the defendants were "deliberately indifferent to a pattern of racial discrimination, harassment and reign of terror."

Riley filed a complaint in the United States District Court for the Middle District of Pennsylvania on March 14, 2000, and defendants answered the complaint on June 22, 2000. Discovery in this case closed on January 31, 2001. Defendants filed a Motion for Summary Judgment and Statement of Material Facts on March 15, 2001. This brief is filed in support of defendants' motion.

## STATEMENT OF MATERIAL FACTS

A statement of material facts was appended to defendants' motion for summary judgment and, in the interest of brevity, will not be repeated here. Defendants respectfully call the Court's attention to that statement, and will reference facts therefrom at appropriate points in this brief.

## QUESTIONS PRESENTED

I. Whether Riley's Claims Regarding the October, 1993 Misconduct are Barred by the Statute of Limitations?

II. Whether Riley has Failed to Establish a Claim of Retaliation Under the First, Eighth and Fourteenth Amendments?

III. Whether the Material Facts Establish That Defendants Were Not Deliberately Indifferent to Riley?

IV. Whether Riley has Failed to Exhaust his Administrative Remedies?

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO JUDGMENT REGARDING THE OCTOBER, 1993 CLAIMS AS THEY ARE BARRED BY THE STATUTE OF LIMITATIONS

In his complaint, Riley states that on or about October 5, 1993 he was approved for release on parole. He further states that in October, 1993 while incarcerated at SCI-Huntingdon he was issued a misconduct, charging him with assaulting Corrections Officer McFadden. He was found guilty of assaulting McFadden and sanctioned to approximately ninety days in disciplinary lockup. In addition, Riley alleges that he was stripped of his outside clearance, and lost his December 23, 1993 parole date. (Comp. ¶¶ 17-22). Should it be deemed that the complaint somehow pleads a §1983 claim against defendant McFadden or any other named defendant for the October, 1993 events, the complaint fails to comply with the applicable statute of limitations.

A two year statute of limitations applies to §1983 claims brought in Pennsylvania. Smith v.

-2-

City of Pittsburgh, 764 F.2d 188, 194 (3rd Cir. 1985), cert. denied, 474 U.S. 950 (1985). Under federal law, a §1983 claim accrues when the plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. Deary v. Three Un-named Police Officer, 746 F.2d 185, 193 (3rd Cir. 1984); Sandutch v. Muroski, 684 F.2d 252, 254 (3rd Cir. 1982) (per curiam). The date when "plaintiff becomes aware, or should have become aware of both fact and injury and its causal connection to the defendant, triggers the limitations period even if the plaintiff did not realize the defendant's conduct was tortuous or unlawful." Somers v. Bradford Area School District, 694 F. Supp. 125 (W.D. Pa. 1988).

Here, Riley states he received the misconduct and sanction in October, 1993 and as a result lost his December 23, 1993 parole date. In order to be timely, any claims against defendant McFadden or any other named defendant concerning these claims should have been filed on or before October, 1995, and no later than December 23, 1995.[1] Therefore, summary judgment should be granted in favor of the defendants regarding the October, 1993 claims.

## II. RILEY HAS FAILED TO ESTABLISH THAT HIS TRANSFER TO SCI-HUNTINGDON WAS RETALIATORY

### A. Riley Has No Constitutionally Protected Right To Be Transferred To Any Particular Prison

In his complaint, Riley alleges that he should not have been transferred back to SCI-Huntingdon because he had a separation from that institution. He further alleges that his transfer to SCI-Huntingdon was in retaliation for a prior staff assault charge, and to set him up for another misconduct in order to deny him parole. In addition, Riley alleges that this transfer constituted cruel

---

[1] In his deposition, Riley admitted that "I added McFadden to my complaint to explain how I got in the situation I'm in now or the separation documentation placed on me. I understand that in that particular misconduct or situation, that statue of limitations on that ran out." While Riley considered withdrawing McFadden as a defendant in this case, he elected not to do so. (Riley Dep. pp. 40-41).

-3-

and unusual punishment and violated his due process rights. Although Riley claims retaliation, he fails to establish that he has a protected right not to be transferred from one institution to another or that his transfer was not reasonably related to a legitimate penological interest.

Recently, the Third Circuit Court of Appeals addressed the issue of retaliation claims regarding government actions. In Allah v. Seiverling, 229 F. 3d 220, 224-25 (3rd Cir. 2000), the Court held that, "government actions, while standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right," (*quoting* Thaddeus-X v. Blanter, 175 F.3d 378, 386 (6th Cir. 1999) (*en banc*)). Accordingly, the law of this circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Allah, *supra.* at 225. In Rauser v. Horn, 2001 WL 185120 (February 26, 2001), the Third Circuit revisited government action-retaliation claims, and set forth the elements of a prisoner's cause of action and the burden of proof he must carry to succeed.

As a threshold matter, a prisoner-plaintiff must prove that the conduct which lead to the alleged retaliation was constitutionally protected. Rauser, *supra.* at *1, *citing* Drexel v. Vaughn, 1998 WL 151798 at *7 (E.D. Pa.). The prisoner must then show he suffered some "adverse action" at the hands of prison officials. Once these two threshold criteria are met, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action taken against him.

Applying the Rauser standard to the facts of this case, Riley has failed to assert a proper claim of retaliation against the defendants. It is well established that a prisoner has no constitutional right to be or not to be transferred, or to be confined or not to be confined in any particular prison. Olim v. Wakinekona, 461 U.S. 238 (1982); Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976). Here, Riley has failed to establish a fundamental element in his retaliation

-4-

claim- that he was engaged in protected activity. Transfer to or from one correctional facility is not a federally protected right. Riley cannot therefore establish a claim of retaliation based upon his transfer to SCI-Huntingdon rather than to SCI-Greene.

Should this court conclude that Riley somehow has proven a constitutionally protected right in his transfer, he fails nonetheless to prove that his transfer was made for reasons other than a legitimate penological interest. In Rauser, the Third Circuit employed the same burden shifting framework found in the public employment context to the prison context. *See* Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1997) (holding that the plaintiff bears the initial burden of proving that his constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline him and then the burden shifted to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity). According to Rauser, once a prisoner demonstrates that the exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological goal. Rauser, *supra*.

The facts of this case reveal the following. On March 2, 1999, the Pennsylvania Board of Probation and Parole ("Board") approved Riley for placement in a Community Corrections Center ("CCC"), upon the completion of certain terms and conditions. Riley's release date was established as November 22, 1999. (Comp. Ex."A"). On March 24, 1999, a memorandum was sent from the Director of Region II, Bureau of CCC to SCI-Pittsburgh advising of Riley's release date and that he was approved to be placed in the Harrisburg Community Corrections Center. The memorandum further stated that arrangements should be made in accordance with established procedure for transfer to SCI-Greene for placement in the Outside Units. (Id.). Once an inmate has been approved to be

-5-

released to a CCC by the Board, it is the duty and responsibility of the DOC to transfer the inmate to the appropriate correctional institution to await placement in the CCC. (Williamson Dec., ¶14).

In February of 1999, a unit was added at SCI-Huntingdon to begin accepting inmates paroled to CCC's located in Region II. On May 4, 1999, Executive Deputy Commissioner Beard issued a memorandum outlining the procedure for processing inmates accepted for parole to a CCC who have an acceptance date in excess of thirty days and who are not problematic cases. Inmates in Region II accepted to a CCC with an acceptance date of thirty days or more were to be transferred to SCI-Huntingdon. (Williamson, ¶14-15; Keller, ¶23). The Harrisburg Community Corrections Center to which Riley was to be paroled is located within the area known to the DOC as Region II. (Id.).

Because Riley's acceptance date into the CCC was more than three months in advance, he was processed to be transferred to the designated institution with outside units within Region II. At the time of Riley's transfer, SCI-Huntingdon was the designated Region II CCC approved institution. (Williamson,¶¶15-17; Keller,¶21-24). Donald Williamson, Diagnostic and Classification Coordinator, Bureau of Inmate Services, approved and facilitated Riley's transfer to SCI-Huntingdon on May 12, 1999. When Riley was transferred to SCI-Huntingdon, officer McFadden was no longer working at the institution and Riley thus did not have an active separation at SCI-Huntingdon. (Id.).

Here, Riley's claim that his transfer to SCI-Huntingdon was in retaliation for a prior assault-related misconduct fails to meet the standards as required Rauser. He fails to meet the threshold requirement that the conduct that lead to the alleged retaliation was constitutionally protected because he has no constitutional right not to be transferred to any particular prison. In addition, he has failed to prove that his transfer to SCI-Huntingdon was for a reason other then legitimate penological interests. Therefore, judgment should be granted in favor of the defendants regarding Riley's retaliatory transfer claim.

-6-

### B. Riley's Misconduct Was Not Issued for Retaliatory Purposes

In addition to his retaliatory transfer claim, Riley alleges that shortly after his transfer to SCI-Huntingdon he was issued a bogus misconduct, which caused his pre-release status to be revoked. He further alleges, despite his efforts to warn defendants, he was issued a misconduct in retaliation for a prior staff assault charge.

As noted in the previous argument, in order to defeat summary judgment on a claim of retaliation, a prisoner-plaintiff must prove the conduct that lead to the retaliation was constitutionally protected; that he suffered some adverse action at the hands of prison officials; and, that the exercise of that constitutional right was a substantial or motivating factor in the challenged decision. Prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological goal. See Rauser, supra.

Here again, Riley's claim is deficient because he cannot meet the threshold requirement that he was engaged in a constitutionally protected activity. While it is undisputed that Riley's parole was revoked, Riley cannot prove that the May, 1999 misconduct was issued for retaliatory reasons. If this court should conclude that Riley has indeed proved a constitutionally protected right, he fails to establish that the action taken by the defendants was not reasonably related to a penological goal- enforcing the institution's visiting regulations.

In his complaint, Riley alleges that on May 23, 1999, Officer Hoover made racial remarks and threats to retaliate against him. (Comp. ¶30; Ex. "C"). In his declaration, however, Hoover states that he never made any derogatory or racial comments to Riley on May 23, 1999 or at any other time and that he was not even working at SCI-Huntingdon on May 23, 1999. (Hoover Dec. ¶7; Dougherty Dec. ¶5). Riley alleges that Hoover issued him a misconduct on May 29, 1999 in retaliation for his previous assault on officer McFadden. In his declaration, Hoover states that prior to the May 29,

-7-

1999 incident, he did not have any contact with Riley, nor was he aware that Riley had assaulted a staff member or that he had any previous separations at SCI-Huntingdon. (Hoover, ¶8). Hoover states that on May 29, 1999, he observed that Riley's female visitor's right hand was on his genital area and Riley was covering her hand with his right hand. (Id. ¶4). Hoover then issued Riley a misconduct for Engaging in Sexual Acts with Others or Sodomy and Violations of Visiting Regulation, and Unacceptable Personal Conduct. (Id.).

Riley also alleges that hearing examiner Stidd participated in a retaliatory scheme because he refused to review the video tape of the visiting room prior to the misconduct adjudication. Prior to the June 2, 1999 hearing, Stidd cannot recall any personal contact with Riley, or that he had a prior misconduct for assaulting an officer. (Stidd Dec. ¶12). At the hearing, Stidd reviewed Hoover's written report and Riley's version of the incident. (Id. 6-7). Based upon the information presented, Stidd believed that Riley engaged in unacceptable personal contact during the Mary 29, 1999[2] visit. Stidd, however, determined that the conduct was not a sex act and dismissed the charge Engaging in Sexual Acts with Others charge but found Riley guilty of a Violation of Visiting Room Regulations. Stidd sanctioned him to 15 days cell restriction and 60 days loss of visiting privileges. (Id. ¶10). Stidd did not view the visiting room tape for May 29, 1999 because the charge(s) were not based on activity recorded on the tape. Furthermore, he did not review the tape because the camera pans the visiting room and does not cover any one area the entire time. Activity that occurs in the visiting room is not necessarily recorded by the camera. Stidd based his decision on the credibility of the eyewitness report of Officer Hoover and not because of any retaliatory motive. (Id. ¶11).

Finally, Riley alleges that he appealed the misconduct and the sanction to the prison's

---

[2]In Defendant's Statement of Material Facts, ¶¶30-31 contain a typographical error, the date of the misconduct is May 29, 1999, and not May 27, 1999.

-8-

Program Review Committee (defendants Myers and Launtz), who also refused to view the video tape. According to Riley, the PRC members also were involved in retaliating against him because of his prior charge of staff assault. On June 4, 1999, the PRC members reviewed Riley's misconduct and determined that a review of the tape was not warranted because this was not an incident caught on the tape; rather, the incident was a personal observation by an officer. Riley's misconduct was reduced from a Class I to a Class II misconduct and cell restriction was dismissed. The PRC upheld the hearing examiner's sixty day visiting room restriction. (Launtz Dec. ¶ 7-10).

In short, the actions of defendants Hoover, Myers, Launtz and Stidd, were based upon legitimate penological interests in enforcing the regulations of SCI-Huntingdon and not based upon any retaliatory motive. Therefore, summary judgment should be granted in favor of the defendants.

### III.    DEFENDANTS BANEY, BELL, BUZMINISKY, GRACE, HORN FRANK, KELLER, LEVY, LAUNTZ, MYERS AND WARD WERE NOT DELIBERATELY INDIFFERENT TO RILEY

Riley alleges that each of these defendants violated his constitutional rights because they were deliberately indifferent to a pattern of racial discrimination, failed to adequately supervise and train their employees, and maliciously and intentionally failed to alleviate his endangered and vulnerable condition. In addition, he alleges that the Pennsylvania Board of Probation refused to answer his July 24, 1999 appeal.[3] To the extent that Riley is asserting a claim of deliberate indifference against these defendants, it is apparent that they are entitled to judgment as a matter of law.

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court held that a prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a "substantial risk of serious harm" and disregards

---

[3]The Pennsylvania Board of Probation and Parole is not a named defendant in this action. Defendants submit that any claim against the Board must be dismissed under the Eleventh Amendment.

-9-

that risk by failing to take reasonable measures to abate it. The Court held that liability will lie only if "the official knows of and disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw from the inference." Id. at 837. The Court adopted the definition of "reckless" as defined in the criminal law which permits a finding of recklessness only when a person disregards a risk of harm of which he is aware. Id. at 837-38.

Against this background, it is apparent that Riley cannot establish a claim of deliberate indifference against the defendants. In his complaint, Riley alleges that shortly after his transfer to SCI-Huntingdon, counselor Buzminisky notified the institution concerning his separation status. He alleges that on May 12, 1999 he sent a request slip to Buzminisky and to Unit Manager Joel Keller, requesting a transfer for fear of his well being or being set up if he remains in the institution. (Comp. ¶29). Riley further alleges that on May 23, 1999 he sent request slips to Buzminisky and Frank, a letter to Horn and a grievance to Baney, reporting racial remarks by Hoover, Hoover's threats to retaliate against him and the fact that he is not to be in this institution. (Id. ¶30). In addition, Riley states that he sent another grievance to Baney and request to Buzminisky on May 29, 1999, informing them that he was setup by officer Hoover and again requesting transfer out of the institution. (Id. ¶32).

Although Riley alleges that he submitted request slips, a letter and the grievance, no record of any these documents can be found. Defendants Buzminisky, Keller, Baney and Frank and Horn's secretary have submitted unsworn declarations regarding these documents. At no time before or after Riley's May 29, 1999 misconduct report does Buzminisky, Keller or Frank recall receiving Request to Staff Member forms from Riley dated May 12, 1999, May 23, 1999 or May 29, 1999. If they had received a written request, they would have responded in writing to Riley. In addition, any request that they may have received from Riley would have been placed in his institutional file. No Request

-10-

to Staff Member forms directed to Buzminisky, Keller or Frank dated May 12, 1999, May 23, 1999, May 29, 1999 or any other date in May, 1999, or a response can be found in Riley's file. While both Keller and Buzminisky recall discussions concerning Riley's separation status, neither recalls receiving any written requests from Riley, nor do they recall preparing any written reports regarding the same. (Buzminsky, ¶¶8-10; Keller, ¶8-17; Frank, ¶5).

At no time before or after Riley's May 29, 1999 misconduct does Baney, the grievance coordinator, recall receiving Official Inmate Grievances from Riley dated May 23, 1999 and May 29, 1999. Neither a response nor the grievances are in his institutional file. If these grievances had been assigned numbers they would have been recorded on the Inmate Grievance Tracking System, which she has maintained since January, 1993. These alleged grievances do not appear on the Inmate Grievance Tracking System's database. Furthermore, there is no record in Riley's institutional record of these grievances being rejected for any reason and returned unprocessed. Baney also maintains a record of an inmate's request to the Superintendent. If an Inmate Request to Staff Member form was submitted to Superintendent Frank, she was responsible for tracking the request. No copies or record of an Inmate Request to Staff Members form dated May 12, 1999, directed to Superintendent Frank can be located. (Baney Dec. ¶¶9-12). In addition, no record can be located that former Secretary Horn received any correspondence from Ronald Riley in May or June of 1999. No information can be located on the Inmate Tracking System, the Secretary's correspondence file, the Deputy Secretary's office, or in the Inmate Record Department. (Dell Dec. ¶¶3-5).

As established by the material facts, defendants Baney, Buzminsky, Frank, Horn, Keller, Launtz, Myers and Ward[4] had no knowledge of any safety risk to Riley. The separation was placed

---

[4]As noted in the Declaration of Donald Williamson, neither the Board nor its chairman approve or facilitate the transfer of inmates within the DOC. Therefore, Ward is not liable regarding Riley's transfer claim.

-11-

against Riley for McFadden's protection from contact with Riley. Since McFadden was no longer employed at the prison, Riley no longer had a valid separation at SCI-Huntingdon. (Keller, 9-11; Williamson, ¶16). Furthermore, none of the named defendants approved or facilitated Riley's transfer to SCI-Huntingdon. (Id., ¶17). For these reasons and those discussed in Argument II, it is apparent no constitutional violation of deliberate indifference occurred in Riley's transfer to SCI-Huntingdon.

Insofar as Riley is alleging deliberate indifference to a pattern of racial discrimination and failure to adequately supervise and train employees, he fails to establish a constitutional claim against the defendants. It is well established that liability under 42 U.S.C. §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct, shown through specific allegations of personal direction or actual knowledge and acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). To be liable, a defendant must have directed, or known of and acquiesced in, the deprivation of plaintiff's constitutional rights. Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Hetzel v. Swartz, 909 F.Supp. 261, 264 (M.D. Pa. 1995).

Moreover, a defendant may not be held liable under §1983 on the principle of respondeat superior. Hetzel, supra. A complaint must instead evince the personal involvement of each named defendant in the conduct which forms the basis of the action. See generally Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Vicarious liability also is not actionable under §1983--only those who actions personally caused the plaintiff's injuries may be held liable. Shaw by Strain v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).

Other than identifying Bell, Levy and Grace as defendants in ¶¶ 6, 7 and 14 of the complaint, Riley fails to allege any specific conduct regarding these defendants.[5] In his complaint and

---

[5] In his deposition, Riley states that the only reason he named Bell was because he was under the impression that he was in charge of transfers. (Dep. pg. 41-42).

-12-

deposition, Riley merely states that Grace and Levy, as well as Myers and Horn are legally responsible for administrative action and the overall supervision and monitoring of the guards. (Dep. pp.33, 35). In support of his claim of racial discrimination, Riley points to the alleged seating arrangement in the dining hall at SCI-Huntingdon. He further alleges that SCI-Huntingdon, the DOC and the Board fail to adequately train and supervise their employees.[6] This type of conculsory evidence, respondeat superior claims and allegations devoid of specificity cannot support Riley's claims. Absent specific allegations against the individual defendants, § 1983 liability is unavailable. Therefore, judgment should be entered as a matter of law for the defendants.

### IV. DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR BECAUSE RILEY HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

In 1996, Congress enacted the Prison Litigation Reform Act, ("PLRA") which requires inmates to exhaust all applicable administrative remedies prior to filing an action in federal court. 42 U.S.C. §1997e(a) (West Supp. 1999). The Third Circuit Court of Appeals has held that §1997e (a) of the PLRA mandates exhaustion of all administrative remedies prior to seeking federal review. Nyhuis v. Reno, 204 F.3d 65 (3rd Cir. 2000); Booth v. Churner, 206 F.3d 289 (3rd Cir.2000), *cert. granted,* No._U.S. _121 S. Ct. 277 (2000). In Nyhuis, the Third Circuit held exhaustion was mandatory under §1997e(a), even though the administrative process did not provide the inmate with the relief sought in federal court. Nyhuis, at 67. In Booth, a §1983 action, the inmate alleged officers used excessive force against him. In affirming the district court's order dismissing Booth's complaint, the Circuit reiterated the Nyhuis rule that an inmate must exhaust all administrative

---

[6] Riley attempted to support his allegation by stating "it is mental from the old days when it was, you know, pushed that you sit that way." He admitted there was no written policy or directive concerning the seating arrangement. In explanation of the failure to train claim, he states employees are not trained to be able to confront the situations in which an inmate is accused of assaulting a fellow officer/staff. (Dep. pp.48-49; 55-56).

-13-

remedies under the PLRA prior to seeking federal review. Booth at 291.

Courts have recognized that the PLRA places on the prisoner the burden of demonstrating that he has exhausted all administrative remedies. In Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998), the court held that inmates who file lawsuits in federal court challenging the conditions of their confinement pursuant to §1983 "must allege and show that they have exhausted all available state administrative remedies." Id. at 1104. The Court explained that, "A prisoner should attach to his §1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint." Id. The Court suggested that where the record fails to disclose that the inmate has complied with this requirement, the case should be dismissed without prejudice. Among the many reasons Courts have held exhaustion is required is to allow prison officials an opportunity to correct problems prior to inmates' using the resources of the federal judiciary. Nyhuis at 76.

DOC Directives 801 and 804 provide administrative procedures regarding institutional grievances and misconducts. Appeals from the decision of the Grievance Coordinator, under DOC-ADM 804 may be made in writing to the prison's superintendent, and a final written appeal may be presented to the Chief Hearing Examiner. Likewise, appeals of a misconduct, under DOC-ADM 801 may be made to the prison's Program Review Committee ("PRC") for initial review, then to the superintendent, and finally to the Chief Hearing Examiner. This system was in effect in May of 1999 when Riley received the misconduct and grievances about which he complains.

In respect to the allegations contained in the complaint, Riley alleges that he filed grievances and requests to staff members in May of 1999 and did not receive any response.[7] While Riley did appeal his misconduct to the PRC, he admits he did not appeal the misconduct any further. (Dep. pg.

---

[7] For the reasons stated in Argument III, it is certainly questionable whether Riley did in fact submit the request slips or grievance forms. In his deposition, Riley admitted he did not pursue this matter any further; rather, he filed this civil rights complaint. (Dep. pp.36-37-38).

-14-

27). From the information provided in the complaint, the attached documents, and Riley's deposition, it is clear that Riley has failed to exhaust all administrative remedies pursuant to DC-ADM 801 and 804.

Inmates must allege *and show* that they have exhausted *all* applicable administrative remedies prior to filing a lawsuit in federal court. <u>Brown v. Toombs</u>, <u>supra</u>. Under the PLRA, this is a prerequisite that must be demonstrated before a lawsuit concerning prison conditions may continue, and it should not be excused. Therefore, summary judgment should be granted on these claims.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion for summary judgment should be granted.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: _____
MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA 17120
FAX: (717) 772-4526
Direct Dial: (717) 787-9719

DATE: March 29, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD A. RILEY, | : |
| Plaintiff | : |
| v. | : No. 1:00-CV-00485 |
| | : (Judge Rambo) |
| MARTIN HORN, et al., | : |
| Defendants | : |

### CERTIFICATE OF SERVICE

I, **Maryanne M. Lewis**, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on **March 29, 2001**, I served a true and correct copy of the foregoing Brief in Support of Defendants' Motion for Summary Judgment, by causing it to be deposited in the United States Mail, first-class postage prepaid to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA 16654-1112

_____
MARYANNE M. LEWIS
**Deputy Attorney General**