ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,  :
  :
    Plaintiff  :
  :
    v.  :   No. 1:00-CV-00485
  :   (Judge Rambo)
MARTIN HORN, et al.,  :
  :
    Defendants  :

FILED
HARRISBURG

APR 2 3 2001

MARY E. D'ANDREA, CLERK
Per _____
    DEPUTY CLERK

## DOCUMENTS IN SUPPORT OF DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA 17120
FAX: (717) 772-4526
Direct Dial: (717) 787-9719
DATE: April 23, 2001

**EXHIBIT "A"**



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

**January 24, 2001**

MIKE FISHER
ATTORNEY GENERAL

15th Floor, Strawberry Sq.
Harrisburg, PA 17120
DIRECT DIAL: (717) 787-9719
FAX: (717) 772-4526

Ronald A. Riley, AK-8743
State Correctional Institution at Huntingdon
100 Pike Street
Huntingdon, Pennsylvania   16654

Re: Riley v. Horn, et. al. 1:00-CV-00485

Dear Mr. Riley,

Please be advised that if you wish to receive a copy of the transcript of your deposition of January 9, 2001, you must request the transcript in writing from the court reporter. Please request the transcript from her, addressed to Beth A. Krupa, Geiger and Loria Reporting Service, 2408 Park Drive, Suite, B, Harrisburg, PA  17110.

I am returning to you the following discovery: Plaintiff's Fifth Set of Interrogatories and Request For Production of Documents directed to Defendant O.J. Ogershock, as he is NOT a defendant in this action; and, Plaintiff's Sixth Set of Interrogatories and Request For Production of Documents directed to Defendant Weidel, as she is NOT a defendant in this case.

In addition, I am also returning to you the document entitled Appeal From The Retaliatory Misconduct of May 29, 1999, as inappropriate. The appeal process concerning misconduct reports is found in DOC-ADM 801, found in the Inmate Handbook. I suggest that you review DOC-ADM 801 and follow any appropriate procedures.

Very truly yours,

Maryanne M. Lewis
Deputy Attorney General

MML/ld
enclosures

**EXHIBIT "B"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,     :
            :
   Plaintiff     :
            :
  v.         :  No. 1:00-CV-0485
            :  (Judge Rambo)
MARTIN HORN, et al.,    :
            :
   Defendants    :

## UNSWORN DECLARATION OF DIANA G. BANEY

I, **DIANA G. BANEY**, hereby declare under the penalty of perjury, that the following is true and correct, based upon my personal knowledge.

1. I am currently employed by the Pennsylvania Department of Corrections ("DOC") as the Assistant to the Superintendent at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"). I have been employed at SCI-Huntingdon since September, 1981.

2. I have been employed in the capacity of Assistant to the Superintendent at SCI-Huntingdon since January, 1993. In that capacity, I am familiar with the standard operating policies and procedures followed at SCI-Huntingdon and the DOC. I am also familiar with and have access to all records maintained by the institution in the course of regularly conducted business. As Assistant to the Superintendent, I serve as the Grievance Coordinator at SCI-Huntingdon.

3. In addition, as Assistant to the Superintendent, it is my assigned duty and responsibility to maintain a record of an Inmate's Request forms directed to the Superintendent. If

an Inmate Request to Staff Member form is submitted to the Superintendent, I am responsible for tracking the request.

4.      Inmate Request to Staff Member forms are readily available to all inmates by simply requesting a form from a block officer on the inmate's assigned block.

5.      Upon receipt of the form, I review the request, and either prepare a response for the Superintendent or refer the request to an appropriate staff member for a response.  A copy of all written responses to request slips for the Superintendent is placed in the inmate's DC-15 file.

6.      All Inmate Request forms that are received by the Superintendent's Office are responded to by either the Superintendent or an appropriate individual.

7.      I am aware that Ronald Riley, #AK-8743 alleges that he submitted an Inmate Request to Staff Member form(s) directed to Superintendent Kenneth Kyler dated December 26, 2000 and January 10, 2001.  (See Exhibits "A" and "B" attached).  I personally reviewed Ronald Riley's, institutional file and cannot find any copies of this request or a response in Riley's file.  In addition, I cannot locate any record of receiving those Request forms.

8.      If Ronald Riley submitted these Inmate Requests to the Superintendent I would have prepared a response and placed a copy in his institutional file.  No copies of these requests exist to indicate that these Request Forms were received.

4-20-01
**DATE**

*Diana G Baney*

**DIANA G. BANEY**

-3-

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1.  To: (Name and Title of Officer)<br>Kenneth D. Kyler, Superintendent | 2.  Date:<br>December 26, 2000 |
| 3.  By: (Print Inmate Name and Number)<br>RONALD A. RILEY, AK-8743<br><br>_Inmate Signature_ | 4.  Counselor's Name<br>WIEDEL |
| | 5.  Unit Manager's Name<br>J.J OGERSHOK |
| 6.  Work Assignment<br>PAINT SHOP | 7.  Housing Assignment<br>FA 3028 |

8.  Subject:  State your request completely but briefly.  Give details.

Dear Superintendent,
        This is an appeal from the Grievance Coordinator (Diana G. Ban-
ey) refusal to investigate the altering of my Prescriptive Program Plan
by my Counselor Mrs. Wiedel. Attached is a copy of the grievance that I
filed November 21, 2000. Sir, I am requesting that this matter be inves-
tigated because this action on the part of my Counselor calls into que-
stion all of the documentation in my prison file that my Counselor was
privileged to.

                                    Thank you,

9.  Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
                            Print                              Sign

Revised July 2000

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1.  To: (Name and Title of Officer)<br>KENNETH D. KYLER, SUPERINTENDENT | 2.  Date:<br>1-10-2001 |
| 3.  By: (Print Inmate Name and Number)<br>RONALD A. RILEY, AK-8743<br><br>Inmate Signature | 4.  Counselor's Name<br>MRS. WIEDEL<br><br>5.  Unit Manager's Name<br>J.J OGERSHOK |
| 6.  Work Assignment<br>PAINT SHOP | 7.  Housing Assignment<br>FA. 3028 |

8.  Subject:  State your request completely but briefly. Give details.

Superintendent Kyler,

This is an appeal from the decision of the PRC dated June 8, 1999. (Exhibit A). Appellant contends that the PRC's decision should be over turned because: (1) the Hearing Examiner refused to review the only evidence in this case in violation of DC-ADM 801-1 section (C), (2) the Hearing Examiner threw-out the charge (B-4) that specified the D-25 charge pursuant to DC-ADM 801-3, and (3) this is a retalotory misconduct which Appellant brought to the attention of Superintendent Franks before it happened by request slip 5-23-1999. (Exhibit B.).

Respectfully Submitted,

9.  Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
          Print                                    Sign

Revised July 2000

**EXHIBIT "C"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                       :
                                       :
      Plaintiff                  :
                                       :
  v.                                   :     No. 1:00-CV-0485
                                       :     (Judge Rambo)
MARTIN HORN, et al.,                   :
                                       :
      Defendants                 :

## UNSWORN DECLARATION
## OF DONALD WILLIAMSON

    I, **DONALD WILLIAMSON**, hereby declare under the penalty of perjury, that the following is true and correction, based upon my personal knowledge.

    1.    I am currently employed by the Pennsylvania Department of Corrections ("DOC"), Bureau of Inmate Services, as the Diagnostic and Classification Coordinator. I have been employed by the DOC for approximately 29 years, and have been the Diagnostic and Classification Coordinator since April, 1989.

    2.    I received a Bachelors Degree in Sociology from Shippensburg University in 1970, and a Master's Degree in Counseling from Shippensburg University in 1976.

    3.    As Diagnostic and Classification Coordinator, my duties and responsibilities include, but are not limited to the overall responsibility for inmate transfer within the DOC. This includes approval of and transferring inmates to an appropriate and approved DOC correctional facility, and making the arrangements to facilitate the actual transfer of the inmate. In addition, I am familiar with and participate in the designation of inmate classification levels. In 1992, I assisted in the

development of the DOC current Pennsylvania Additive Classification Tool known as "PACT". PACT contains the criteria that establish the classification level of an inmate.

4.     Pursuant to DOC regulation when an inmate is transferred for a parole to a Community Corrections Center ("CCC") with a parole date in excess of thirty days or more, the inmate is transferred to one of three correctional institutions. The institution that the inmate is transferred to is determined by the location of the CCC. Effective February 22, 1999, inmates paroled to CCC's in Region I are transferred to SCI-Graterford, inmates paroled to CCC's in Region II are transferred to SCI-Huntingdon and inmates parole to CCC's in Region III are transferred to SCI-Greene. (See Exhibits "A" and "B" attached).

6.     Prior to the addition of the CL-2 Unit at SCI-Huntingdon in February, 1999, inmates in Region II and III were sent to SCI-Greene. (See Exhibit "C" attached).

7.     These three institutions, SCI-Greene (Region III); SCI-Huntingdon (Region II); and SCI-Graterford (Region I) are designated to receive inmates awaiting parole to CCC's because they have significant minimum custody level housing available. By allowing placement of an inmate in a less secure environment for eventual placement into the outside community, housing becomes available at the inmate's prior facility for inmates who need a more secure environment.

8.     As Diagnostic and Classification Coordinator, and based upon my familiarity and development of PACT, I am also familiar with the custody level assigned to inmates. The DOC has five custody levels that are assigned to inmates. These classification levels are based upon the security concerns of each inmate.

9.     Custody Level 5 inmates require the most secure housing within the DOC. The inmates are housed in either the Restricted Housing Units ("RHU"'s). Special Management Units

-2-

("SMU"s), or the DOC Long Term Problematic Segregation Unit at SCI-Pittsburgh ("SCI-Pittsburgh").

10.     Level 4 inmates are maximum security level inmates, Level 3 inmates are medium security inmates, Level 2 inmates are minimum security inmates, and once an inmate is housed in a CCC he obtains Level 1 custody status.

11.     Level 2 custody inmates can be housed at any of the state correctional institutions. However, once an inmate has been granted parole to a CCC with more than a 30 day in advance parole date, the inmate is to be transferred to the appropriate institution within the Region of the CCC.

12.     I am familiar with the events surrounding the transfer of plaintiff, Ronald Riley, #AK-8743, as I approved and facilitated his transfer to SCI-Huntingdon.

13.     In April 1999, I received information from the transferred institution, SCI-Pittsburgh, that Riley was approved to be released on parole to a CCC upon the completion of certain terms and conditions established by the Pennsylvania Board of Probation and Parole. ("Board").

14.     Once an inmate has been approved to be released to a CCC by the Board, it is the duty and responsibility of the DOC, to transfer the inmates to the appropriate correctional institution to await placement to the CCC. Neither the Board nor its Chairman has the authority regarding an inmate's transfer to a DOC institution.

15.     Riley was approved to be paroled to a CCC located in Harrisburg, Pennsylvania. Because Harrisburg CCC is located within the area known to the DOC as Region 2, Riley's transfer petition listed SCI-Huntingdon as the institution to which he was to be transferred.

16.    I received Riley's transfer petition in April, 1999.  I initially denied the transfer because a staff separation was noted on Riley's files.  I was then contacted by the petitioning institution, SCI-Pittsburgh to verify the separation.  I then contacted SCI-Huntingdon to further inquire about the separation and learned that the separation was no longer valid, as the staff member Riley was separated from was on disability leave and was no longer working at the institution.

17.    Riley had parole date to a CCC that was more than 30 days in advance of the Board's action.  SCI-Huntingdon was the designated institution to receive Custody Level 2 (CL-2)inmates paroled to a CCC  Center within Region II with more than a 30 day in advance parole date.  Riley no longer had a valid staff separation at SCI-Huntingdon.  I approved Riley's transfer and on May 12, 1999, he was transferred to SCI-Huntingdon.

MAR-12-01 MON 11:10      ATTORNEY GENERAL          FAX NO. 717 772 4526            P.06/06

_3/12/01_
_____
**DATE**

_Donald Williamson_
_____
**DONALD WILLIAMSON**

**Exhibit "A"**

03/06/2001  13:59    8149416897              SCIH              PAGE 02

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**Bureau of Inmate Services**
(717) 737-6538
February 17, 1999

**SUBJECT:**  Transfer of Inmates Accepted for CCC's

**TO:**  Superintendents

**FROM:**  Donald Williamson
Coordinator
Diagnostic & Classification

As you know, Executive Deputy Beard established a new procedure for the processing of pre-release inmates who have CCC bed dates in excess of 30 days and for the processing of CCC accepted inmates in excess of 90 days, who are being paroled to a CCC.

At the present, inmates accepted into Centers in Region I are to be sent to the Outside Service Unit at Graterford. Those accepted into Centers of Region II and III are to be sent to the CL-2 Unit at SCI-Greene.

Effective February 22, 1999 we are now adding the CL-2 Unit at SCI-Huntingdon to start accepting Region 2 CCC acceptees. Region I cases should continue to go to SCI-Graterford and Region III cases should go to SCI-Greene.

As these units are eventually filled, arrangements may be made for placement at alternative regional CL-2 Unit placements and waiting lists will be established.

Thank you for your continued cooperation.

DW/jk

cc:    All Deputies
Director Harrison
Chief Gearhart
Rex Hildebrand
Robin Rutter
Richard Wigton
Tanya Brandt

RECEIVED

FEB 2 2 1999

SCI-HUNTINGDON

**Exhibit "B"**

03/07/01  10:26 FAX 7177317159          INMATE SERVICES                                ☑003

COMMONWEALTH OF PENNSYLVANIA
**Department of Corrections**
**Deputy Secretary's Office**
**May 4, 1999**

**SUBJECT:**     Transfer of Parole Inmates Accepted for CCC's to Graterford, Huntingdon, and
Greene

**TO:**          Superintendents

**FROM:**        Jeffrey A. Beard, Ph.D.
Executive Deputy Secretary

Effective immediately, there will be a change to the procedure for the processing of CCC accepted
inmates who are being paroled to a CCC.

Inmates who are <u>paroled</u> to a CCC and have an acceptance date in **excess of 30 days, who are
not problematic cases and have been recommended for parole by institutional staff** should
be transferred to the OSU at Graterford for Region I, the CL2 Unit at Huntingdon for Region II and
the CL2 Unit at Greene for Region III.

Cases which are currently awaiting transfer with an acceptance date beyond 30 days for pre-
release and parole placement should be processed for immediate transfer to these units.

Questions should be directed to your Regional Deputy.

JAB/jb

cc:     Secretary Horn
Deputy Secretary Love
Deputy Secretary Fulcomer
Deputy Secretary Erhard
Director Rogosky
Director Harrison
D. Gearhart
D. Williamson
CCC Regional Directors

**Exhibit "C"**

🖂 004

03/07/01  10:27 FAX 7177317159        INMATE SERVICES

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
December 15, 1998

**SUBJECT:**   Transfer of Inmates Accepted for CCC's to Greene and Graterford

**TO:**        Superintendents

**FROM:**      Jeffrey A. Beard, Ph.D.
               Executive Deputy Secretary

Effective immediately, there will be a new procedure for the processing of pre-release inmates who have CCC bed dates in excess of 30 days and for the processing of CCC accepted inmates who are being paroled to a CCC.

Pre-release inmates who are approved for a Community Corrections Center for an acceptance date beyond 30 days will either be sent to Graterford for placement in the Outside Service Unit or to Greene in the L-2 Unit.   Male inmates accepted into centers in Regions II and III will be processed for transfer to the L-2 Unit at SCI Greene and those accepted into a Region I facility will be processed for transfer to the Outside Service Unit at Graterford.  They will remain in these locations until they reach their acceptance date into the center.

Inmates who are being paroled to a CCC and have an acceptance date in excess of 90 days, who are not problematic cases and have been recommended for parole by institutional staff should similarly be transferred to SCI Greene and SCI Graterford as indicated above.

Should inmates fail in Community Corrections, they will be returned to their parent facility where they resided prior to transfer to Graterford or Greene.  If they were accepted as a result of a direct referral from Greene or Graterford, then they will return to the referring facility.

Acceptance letters will be modified to alert staff to process the inmates through the Automated Transfer Petition System for the appropriate transfers (samples attached).  Cases which are currently awaiting transfer with an acceptance date beyond 30 days for pre-release and 90 days for parole placement should be processed for immediate placement into the units.

Any questions should be directed to your Regional Deputy Secretary.

JAB/jb
Attachments

cc:    Secretary Horn
       Deputy Secretary Erhard
       Deputy Secretary Fulcomer
       Deputy Secretary Love
       Director Rogosky
       Director Harrison
       D. Gearhart
       D. Williamson

**EXHIBIT "D"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY, AK-8743, in          :
his own behalf,                        :

            PLAINTIFF:              :

                      :          NO. 1:00-CV-00485
                           (JUDGE RAMBO)

        -VS-                    :

MARTIN HORN, et al.,                   :

           DEFENDANT'S:            :

DEFENDANT KELLER'S RESPONSE TO
PLAINTIFF'S THIRD SET OF INTERROGATORIES

    In accordance with Rule 33 of the Federal Rules Of Procedure, Plaintiff request that Defendant Keller answer the following interrogatories separately and fully in writing under oath and that the answers be signed by the person making them and be served on Plaintiff within 45 days of service hereof.

    In response to these interrogatories, furnish all information which is available to you, including information in the possession of your Attorneys or investigator's for your Attorney's, and not merely information known of your own personal knowledge.

    If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

    These interrogatories shall be deemed continuing, so as to require sopplemental answers as new and different information materializes.

1. What is your name and address ?

RESPONSE:   Joel Keller
            SCI-Huntingdon
            1100 Pike St., Huntingdon, PA  16654

2. Where are you employed and for how long ?

RESPONSE:   SCI-Huntingdon
            13 years

3. What are your duties and responsibilities of your office ?

RESPONSE: See Exhibit "A" attached which is the job specification for
          Correstions Unit Manager.

4. Did you at anytime in 1999, review Plaintiff's prison file ?

RESPONSE: Yes.

5. If the answer is yes to question (4) did you observe the
separation documentation on Plaintiff's and a Correctional Officer
at SCI-Huntingdon in Plaintiff's file ?

RESPONSE:NO.

6. What did you do if anything upon observing the separation
documentation in Plaintiff's file on a Correctional Officer at SCI-
Huntingdon ?

RESPONSE:  N/A

7. Were you aware of the alleged assault by Plaintiff Novemb-
er 2, 1993, on Correctional Officer McFadden before you reviewed
Plaintiff's prison file ?

RESPONSE:  Yes.

8. Did Counselor Buzminsky notify you of the separation docu-
mentation in Plaintiff's file on a Correctional Officer ?

RESPONSE:  Yes.

9. Upon discovering separation documentation on a prisoner
for assaulting a staff/officer, what course of action as the Unit
Manager of the block in which the prisoner is housed are you suppo-
sed to take ?

RESPONSE:Confirm the information that in fact there is a separation and
         notify my supervisor.

10. Have you meet with Plaintiff since his arrival back to SCI-Huntingdon May 12, 1999, and discussed with him about any retaliatory action against him as a result of the alleged assault November 2, 1993 ?

RESPONSE:  I do not recall.

11. Did you talk with Unit Manager Tim Launtz about the misconduct Plaintiff received May 29, 1999 ?

RESPONSE:  No.

12. Are you presently under investigation for any unlawful activity ?

RESPONSE:  SEE SEPARATE PAGE.

13. How many grievances/complaints have been filed against you in the past five (5) years ?

RESPONSE:  SEE SEPARATE PAGE.

14. What Order's did you receive from Central Office to do with Plaintiff upon his arrival back to SCI-Huntingdon ?

RESPONSE:  To hold the plaintiff for placement at Community Corrections Center.

15. Did you writ an offical report on Plaintiff's situation upon his arrival to your block (EA. Block) May 12, 1999 ?

RESPONSE:  NO.

16. Did anyone speak with you about the separation documentation in Plaintiff's file ?

RESPONSE:  Yes.

17. What was the reason you did not support Plaintiff for parole in the staffing held August 6, 1999, at SCI-Huntingdon ?

RESPONSE:  Plaintiff's misconduct no. dated 5/29/99.

## DEFENDANT KELLER

## RESPONSE TO INTERROGATORY NO. 12.:

**OBJECTION.**        Defendant Keller objects to this interrogatory as irrelevant to plaintiff's claims and unlikely to lead to admissible evidence without waiving this objection, defendant Keller is not under investigation for any unlawful activity.

## RESPONSE TO INTERROGATORY NO. 13:

**OBJECTION.**        Defendant Keller objects to this interrogatory as overbroad, burdensome and irrelevant to plaintiff's claim. In addition to the grievance forms, inmate complaints are also found on request slips. These are filed and identified by number and the complaining inmate's name. In order to answer this interrogatory, defendants would have to search hundreds of inmate files and request slips to see if defendant Keller is named in any of the complaints. Likewise the Inmate Grievance Tracking System identifies only the inmate who filed the grievance. In order to respond, defendants would have to search hundreds of inmates files to see if defendant Keller is named.

Objections interposed on
behalf of defendants by:

By: _____

MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA 17120
FAX: (717) 772-4526
Direct Dial: (717) 787-9719

DATE: August 7, 2000

DATED: 7-3-2000

Respectfully Submitted,

RONALD A. RILEY, AK-5743
PLAINTIFF pro se
1100 PIKE STREET
HUNTINGDON, PA 16654

## CERTIFICATE OF SERVICE

    This is to certify that on the above date, service of a true
and correct copy of the enclosed discovery request was served on
Counsel for Defendant's First Class Mail, and, by placing said doc-
ument in my prison mail for service at the below address:


OFFICE OF ATTORNEY GENERAL
15th Flr., STRAWBERRY SQUARE
HARRISBURG, PA 17120


DATED: 2-3-2000


                              Respectfully Submitted,


                              RONALD A. RILEY, AK-8743
                              PLAINTIFF pro se
                              1100 PIKE STREET
                              HUNTINGDON, PA 16654

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                              :
                                             :
            Plaintiff                        :
                                             :
    v.                                       :     No. 1:00-CV-00485
                                             :     (Judge Rambo)
MARTIN HORN, et al.,                         :
                                             :
            Defendants                       :

## VERIFICATION

I, Joel Keller, hereby state that the foregoing answers to interrogatories are true and

correct and based upon my personal knowledge.

_____
JOEL KELLER

**EXHIBIT "A"**

01/01/92                                                        47470

CORRECTIONS UNIT MANAGER

DEFINITION:  This is professional work in planning, coordinating and
directing the security and treatment programs within a designated
housing unit(s) in a Commonwealth Correctional institution or
facility.

An employe in this class is responsible for the planning, directing
and coordinating of unit security and treatment programs.  Work
includes responsibility for supervising a multi-disciplinary unit
management team for the purpose of ensuring continuity of security
and treatment services on a 24 hour, seven (7) day a week basis.
Work includes responsibility for planning, developing and
implementing a unit plan which includes casework and counseling
services, psychological services and unit security.  The unit
manager coordinates the provision of educational services, activity
programs, job placement, religious services, medical services and
other centralized services with the respective institutional
departments.  The unit manager is responsible to chair inmate
staffings and votes on all actions relating to programming, release
and custody level changes.  The employe is responsible for arranging
unit staff development and training through the institution training
coordinator.  Work is performed independently within the framework
of departmental and institutional policies and procedures and is
reviewed by a deputy superintendent through conferences and
evaluations of unit operations.

EXAMPLES OF WORK:  Plans, directs and coordinates unit security and
treatment programs on a 24 hour, seven (7) day a week basis.

Develops a unit plan for the provision of casework and counseling
services, psychological services and security.

Approves/disapproves leave usage; selects and/or recommends staff
for unit assignments.

Works collaboratively with appropriate custody staff to insure that
unit security practices and procedures are consistent with the
institution's overall security policy.

Coordinates the provision of all centralized services with
appropriate departmental personnel; chairs inmate staffings for the
unit and votes on program placement, release decisions and custody
level changes; coordinates staff development and training with
institution training coordinator.

Schedules non-corrections officer staff and works collaboratively
with the zone or area lieutenant to ensure adequate corrections
officer coverage is available on the unit.

CORRECTIONS UNIT MANAGER (CONTD)

Directs the maintenance of inmate and unit records in accordance with institutional and Departmental standards.

Supervises corrections counselors, corrections case workers, corrections officers and clerical employes by assigning work, evaluating performance, and recommending and administering discipline.

Selects or recommends selection of staff and approves/disapproves leave for non-corrections officers staff.

Performs related work as required.

REQUIRED KNOWLEDGES, SKILLS, AND ABILITIES:  Knowledge of the principles and methods of correctional security and treatment programs.

Knowledge of individual and group behavior of persons with criminal backgrounds.

Knowledge of correctional institution operations.

Knowledge of custody and security standards, procedures and methods.

Knowledge of pardons, commutations, parole services and laws relating to criminal procedures in a correctional setting.

Knowledge of case recordings, documentation and data retrieval.

Ability to learn the principles and methods of supervision and management.

Ability to learn and practice team building concepts to manage a multi-disciplinary staff.

Ability to learn institutional and community based treatment and rehabilitative methods such as diagnostic and classification systems, psychological and counseling services, casework services and treatment plans.

Ability to plan, organize and direct the work of subordinate employes.

Ability to evaluate employe performance.

Ability to analyze and interpret rules, regulations, policies, procedures, standards and objectives of the correctional program.

Ability to interpret contractual and administrative rights and obligations of employes.

CORRECTIONS UNIT MANAGER (CONTD)

Ability to establish and maintain effective working relationships with subordinates and other institutional personnel.

Ability to act decisively, tactfully and with firmness in emergency situations.

Ability to communicate effectively, orally and in writing.

MINIMUM EXPERIENCE AND TRAINING:  Three years of professional treatment, education, health care, or activities experience in an adult correctional institution/facility and a bachelors degree.

or

Four years of experience as a Corrections Officer 3 or two years as a Corrections Officer 4 in a State Correctional Institution/Facility.

or

Seven years experience in an adult correctional institution/facility in support service in Administrative/Hearing work, facility maintenance, correctional industries, business management, personnel or food service.

or

Any equivalent combination of education, experience and training.

CORRECTIONS UNIT MANAGER (CONTD)

Ability to establish and maintain effective working relationships with subordinates and other institutional personnel.

Ability to act decisively, tactfully and with firmness in emergency situations.

Ability to communicate effectively, orally and in writing.

MINIMUM EXPERIENCE AND TRAINING:  Three years of professional treatment, education, health care, or activities experience in an adult correctional institution/facility and a bachelors degree.

or

Four years of experience as a Corrections Officer 3 or two years as a Corrections Officer 4 in a State Correctional Institution/Facility.

or

Seven years experience in an adult correctional institution/facility in support service in Administrative/Hearing work, facility maintenance, correctional industries, business management, personnel or food service.

or

Any equivalent combination of education, experience and training.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
      **Plaintiff**                   :
                                    :
    v.                              :          No. 1:00-CV-00485
                                    :          (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
      **Defendants**                 :


## CERTIFICATE OF SERVICE

      I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date

I caused to be served the foregoing Defendant Keller's Response to Plaintiff's Third Set of

Interrogatories, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA 16654-1112


                                                     **MARYANNE M. LEWIS**
                                                     **DEPUTY ATTORNEY GENERAL**


**DATE: August 7, 2000**

**EXHIBIT "E"**

8/17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
      Plaintiff                     :
                                    :
v.                                  :      No. 1:00-CV-00485
                                    :      (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
      Defendants                    :

## DEFENDANTS' RESPONSE TO REQUEST
## FOR PRODUCTION OF DOCUMENTS

      Defendants hereby respond to plaintiff's request for production of documents. Plaintiff may inspect and photocopy the documents upon the written request to the Assistant to the Superintendent at SCI-Rockview. Plaintiff may photocopy the produced documents at his own expense at the institution rate.

      1. All Rules Regulations and Policy Directives of the Department of Corrections that pertain to transferring of custody level (2) prisoner's.

**RESPONSE**:

      **OBJECTION.** Defendants object to this request as vague. Defendants are not certain what plaintiff is referring to by "transferring of custody level (2) prisoners." If plaintiff is referring to the transfer of inmates from one custody level to another custody level, or the transfer of inmates within custody level (2) from one institution to another institution, defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. If plaintiff is referring to the transfer or participation of custody level (2) prisoners in a pre-release program, defendants object in that this information is

privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 6-9. Without waiving this objection, procedures for obtaining pre-release transfer, is found in DC-ADM 805, which is in the Inmate Handbook, issued to all inmates.

2. All Rules Regulations and Policy Directives of the Department of Corrections that pertain to transferring of prisoners awaiting parole into a Community Center with an acceptance date of three months into the future.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmates. <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 6-9. Without waiving this objection, information concerning community corrections center referrals is found in DC-ADM 805, which is in the Inmate Handbook, issued to all inmates.

3. All Rules Regulations and Policy Directives of the Department of Corrections that pertain to transferring of custody level (3) and (4) Institutions.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as vague. Defendants are not certain what plaintiff is referring to in transferring of custody level (3) and (4) institutions. If plaintiff is referring to the transfer of inmates from custody level (3) to custody level (4), or transferring inmates within custody level (3) and (4) from one institution to another institution, defendants object to this request as privileged and containing information that if released could cause a threat to the

security of the institution and the rehabilitation of the inmates.    <u>See</u> Unsworn Declaration of

Secretary Horn, attached as Exhibit "A", ¶¶ 6-9.

     4.  All Rules Regulations and Policy Directives of the Department of Corrections that pertain

to transferring of prisoners back to the Institutions that have an active separation on said prisoner for

the assault on a Correctional Officer/Staff.

     **<u>RESPONSE</u>**:

     **OBJECTION.**  Defendants object to this request as privileged and containing information

that if released could cause a threat to the security of the institution and the rehabilitation of the

inmate.    <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-13.

     5.  A copy of the central file containing the complete prison records of plaintiff.

     **<u>RESPONSE</u>**:

     **OBJECTION.** Defendants object to this request as privileged and containing information

that if released could cause a threat to the security to the security of the institution, as well as

compromise the staff's ability to carry out the rehabilitation of the plaintiff.  Included in plaintiff's

file are reports of a confidential nature, such as pre-sentence reports, classification and diagnostic

information and psychological information.  Documents that reflect inmate behavior encourage staff

to write freely their opinion concerning the inmate.  If released, this would deter staff from writing

their opinion in a candid manner.  In addition, defendants object to this request as overbroad and

containing information that is irrelevant to the allegations contained in the complaint and unlikely

to lead to admissible evidence.  <u>See</u> Unsworn Declaration of Secretary Horn, attached as Exhibit

"A", ¶¶ 14-20. Without waiving this objection, plaintiff may inspect copies of the portion of his

inmate file that are authorized pursuant to the guidelines under DC-ADM 003.

6. All Documents pertaining to why plaintiff was transferred May 4, 1994

**RESPONSE:**

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-13.

7. All documents pertaining to Plaintiff's transfer from SCI-Pittsburgh to SCI-Huntingdon, including the reclassification of plaintiff to be transferred and by which employee/staff/officer's.

**RESPONSE:**

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-13.

8. A copy of the written report of Plaintiff's Initial Reception Committee Review May 12, 1999.

**RESPONSE:**

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. Initial Reception Committee Review reports are of a confidential nature that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 10-21.

-4-

9.  A copy of any and all follow up reports/investigations by Superintendent Frank, Deputy Superintendent Myers, Major Grace, Intelligence Captain Levy, Unite Manager Launtz, and Keller, in regards to the Initial Reception Committee Review Report on May 12, 1999.

**RESPONSE**:

No documents can be located.

10.  A copy of all the Complaints/Grievances filed against Officer Hoover.

**RESPONSE**:

**OBJECTION.**  Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence.  Grievance and inmate complaints are tracked by the individual inmate filing the complaint, not by the individual or event complained.  In addition, plaintiff has failed to give a time frame for his request.  In order to respond to this request, defendants would have to search hundreds of inmate grievances and complaints.

11.  A copy of all misconducts written by Officer Hoover on prisoner's and staff.

**RESPONSE**:

**OBJECTION.**  Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence.  In addition, plaintiff has failed to give a time frame to his request.  Misconducts are not tracked or indexed by individual officer filing the charge.  In order to respond to this request, defendants would have to search through hundreds if not thousands of misconducts.

12. A copy of all misconduct's written up against prisoner's at SCI-Huntingdon using the Video Tape from all of the cameras in the inside and outside visiting room in the last five (5) years.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. In addition, in order to produce copies of these misconducts, defendants would have to search hundreds if not thousands of misconducts over the least five years to determine if a video camera was used. Misconducts are not indexed by indicating the use of the video camera .

13. A copy of all the DC-15 Disciplinary Hearing Reports from Hearting Examiner Stidd where he refused or did not review the Video tape from the visiting room upon request by a prisoner.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. In addition, in order to produce copies of these disciplinary hearing reports, defendants would have to search Hearing Examiner Stidd's reports which could include the search of individual inmate files. Moreover, plaintiff has failed to give a time frame for this request.

14. A complete copy of the Parole Review dated August 6, 1999, at SCI-Huntingdon conducted by Defendant's Keller, Buzminsky, Sgt. Cuffman, and all other staff that participated in any decision ans recommendations.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the

-6-

inmate. This vote sheet contains recommendations and comments from the SCI-Huntingdon staff In addition this documents contains information of a confidential nature reflects the inmate's behavior and how the individual staff members voted regarding his parole recommendation. Release of this document could deter staff from writing and voting in a candid manner. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 14-21.

15. A copy of the Memo generated from SCI-Huntingdon to the Pennsylvania Board of Probation and Parole notifying them of the misconduct that plaintiff received on May 29, 1999.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 14-21. Without waiving the objection, defendant Ward's Response to the Second Set of Interrogatories, quoted the contents of the document.

16. A complete copy of the parole review September 28, 1999 at SCI-Huntingdon by the Pennsylvania Board of Probation and Parole.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution as well as compromise the Board's ability to carry out the rehabilitation of the plaintiff. Pursuant to 37 Pa. Code §61.2, '[r]ecords, reports and other written things, information, evaluation, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probation or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the

Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." This document contains information of a confidential nature, that are the frank observations and recommendations gathered by the Department of Corrections and the Board. Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. See Unsworn Declaration of William Ward, Chairman of the Board of Probation and Parole, attached as Exhibit "B", ¶¶ 7-8.

17. A copy of Defendant Words decision and recommendation pertaining to the parole review September 28, 1999 at SCI-Huntingdon by the Pennsylvania Board of Probation and Parole.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution as well as compromise the Board's ability to carry out the rehabilitation of the plaintiff. Pursuant to 37 Pa. Code §61.2, '[r]ecords, reports and other written things, information ,evaluation, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probation or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." This document contains information of a confidential nature, that are the frank observations and recommendations gathered by the Department of Corrections and the Board. Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate. If released, this would deter staff from writing their opinion in a candid manner. See Unsworn Declaration of William Ward, Chairman of the Board of Probation and Parole, attached

-8-

as Exhibit "B", ¶¶ 7-8.  Without waiving this objection, plaintiff may inspect a copy of the Notice

of the Decision of the Board, known as the 'green sheet" dated 12/8/99.

18.  A complete copy of the Pennsylvania Additive Classification Tool (PACT), and all of

the Rules and Regulations and Policy Directives that pertain to it.

**RESPONSE**:

**OBJECTION:**  Defendants object to this request as privileged and containing information

that if released could cause a threat to the security and orderly operation of the institution and the

staff's ability rehabilitation of the inmate.  This documents explains how the Department determines

the security classification of inmates.  If these procedures became known to any inmate, it would

become substantially easier for the inmate to manipulate their status.  This could result in the

improper placement of inmates and jeopardize the security of the staff, other inmates and the

institution.  See Unsworn Declaration of Secretary Horn, attached as Exhibit "A", ¶¶ 7-9.

19.  A copy of the misconduct or list of names (and why they received the misconduct) of

all the prisoner's released on parole or will be released on parole who received a misconduct prior

to their release date from January 1, 1995 to July 2000.  This information is to include what the

misconduct was for, when they received the misconduct and their release date.

**RESPONSE**:

**OBJECTION.**  Defendants object to this request as overbroad, burdensome, irrelevant to

plaintiff's complaint and unlikely to lead to admissible evidence.  In addition, the list the plaintiff

seeks is not routinely kept by the Department or the Board.  In order to create this list of names

defendants would have to review hundreds, if not thousands of inmate files.

20. A complete copy of the Vote Sheet with decisions and recommendation from all voting Parole Agents who rendered the decision in Plaintiff's case 12-8-99.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and the rehabilitation of the inmate. This vote sheet contains recommendations and comments from the Board's staff. In addition, this documents contains information of a confidential nature reflects the inmate's behavior and how the individual staff members voted regarding his parole recommendation. Release of this document could deter staff from writing and voting in a candid manner. See Unsworn Declaration of William Ward, Chairman of the Board of Probation and Parole, attached as Exhibit "B", ¶¶ 7-8. Without waiving this objection, plaintiff may inspect a copy of the Notice of the Decision of the Board, known as the 'green sheet" dated 12/8/99.

21. A copy of all misconduct's from all of the prisoners who were released on parole to an approved home plan or community center who received a misconduct 3 to 6 months before their release date from January 1, 1995 to June 2000.

**RESPONSE**:

**OBJECTION.** Defendants object to this request as overbroad, burdensome, irrelevant to plaintiff's complaint and unlikely to lead to admissible evidence. In addition, the documents plaintiff seeks are not routinely kept or identified by Department or the Board. In order to locate and copy these misconducts  defendants would have to review hundreds, if not thousands of inmate files.

**EXHIBIT "A"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
      Plaintiff                 :
                                    :
    v.                            :      No. 1:00-CV-00485
                                    :      (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
      Defendants                :

## UNSWORN DECLARATION OF MARTIN F. HORN

I, **MARTIN F. HORN,** hereby declare under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1. I am employed as the Secretary of the Pennsylvania Department of Corrections  and have held this position since February, 1995.  I have been employed in the field of Corrections in the State of New York and Pennsylvania since 1969.

2. As Secretary, I serve as the highest governmental official and administrative head of the Pennsylvania Department of Corrections, ( hereinafter "Department").   I am familiar with standard policies, procedures and documents utilized by State Correctional Institutions and the Department, understand their reasoning and purpose,  and have overseen the development and implementation of the Department of Corrections' policy.

3. In the course of this litigation the plaintiff has requested a variety of institutional records. Specifically, he seeks documents relied upon by defendants in support of their decisions regarding the plaintiff,  documents submitted by the Department's staff  to the Board of Probation and Parole, as well policies and regulations of the Department.

4. I have personally reviewed plaintiff's first set of interrogatories and request for production of documents, defendants' responses and objections. I am familiar with the kind of information contained in the documents, plaintiff, Ronald Riley, seeks and have reviewed portions of the specific documents he has requested to verify that they contain this information.

5. In my opinion, disclosure of these documents in their entirety would undermine the secure and orderly operation of the Department and would seriously compromise the Department, SCI-Huntingdon and their staff's ability to carry out a significant penological goal--the rehabilitation of the plaintiff.

6. In administering the Commonwealth's penal system, various operational policies exist relating to a wide variety of subjects including the identification, management, security and treatment of prisoners. In addition these policies also cover a very broad spectrum of different treatment-related activities, including, but not limited to: diagnostic testing, classification assessment, evaluations, prescription of treatment, and monitoring of institutional placement.

7. In his request for production of documents, plaintiff seeks all rules, regulations and policy directives of the Department of Corrections that pertain to transferring custody level (2) prisoners, custody level (3) and (4) prisoners, and prisoners awaiting parole into a Community Center with an acceptance date of three months into the future. In addition, plaintiff seeks a complete copy of the Pennsylvania Additive Classification Tool ("PACT"). I have reviewed the pertinent rules, regulations and policies as well as PACT and it is my opinion the release of these documents would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals.

8. These documents contain custody level provisions that explain how the Department classifies inmates. If these procedures became known to any inmate, it would become substantially easier for the inmate to manipulate the system through false statements, failure to divulge crucial information, and misleading requests. This could result in the improper placement of inmates who may have tendencies for assault, disruption, or escape, as well as an inability to accurately identify inmates requiring special care. My professional experience with inmates indicates that a substantial number are manipulative and would use the information provided to disrupt the system and prevent inaccurate classification. These rules, regulations and policies are not available to inmates.

9. Available to inmates, however, is the Inmate Handbook, which contains information regarding classifications and pre-release of inmates to Community Centers. This information found in the Handbook does not contain information that would jeopardize the security or operation of the institution or the treatment of the institution.

10. In his request, plaintiff Riley seeks all the documents pertaining to his transfer from SCI-Pittsburgh to SCI-Huntingdon in May, 1999, as well as the reclassification documentation pertaining to his transfer and the Initial Reception Committee Review dated May 12, 1999. Riley is also seeking the policies concerning the transfer of prisoners to institutions that have active separations for assaults on staff. I have reviewed theses documents and it is my opinion that release of this information would undermine the secure and orderly operation of the institution and compromise the staff's ability to carry out legitimate penological goals.

11. Transfer petitions are also maintained on each inmate. Aside from recording statical information about an inmate including his name and identification number, transfer petitions include an explanation as for the institution's reason for seeking a transfer from one facility to another.

Often this rationalization will include names, identification and other information about other inmates and Department staff with whom the subject inmate is to be separated from. The transfer petition may also specify security concerns related to the subject inmate which are not shared with the inmate.

12. Institutional reasons and concerns for the transfer of an inmate from one correctional facility to another are a confidential matter that, if released, could unjustifiably compromise the security of an institution as well as the safety of inmates and staff.

13. Inmates are transferred from one institution to another for reasons varying from separations (from other inmates or from staff at one institution), security risks, visitations accommodation, health reasons, or overcrowding. Regardless of the penological reason for transferring an inmate, it is not information that is freely available to inmates.

14. Plaintiff seeks a copy of the central file containing his complete prison record which contains the plaintiff's Transfer Petition of May, 1999, the Reception Committee Review Report of May, 1999, and the Parole Review notes of August 6, 1999. In addition to these documents, the inmates's file jacket contains copies of correspondence, commitment orders, psychological and psychiatric evaluations, corrections counselor's reports, conduct records, adjustment records, transfer petitions, work and quarters assignment records, misconduct reports and resolutions, requests to staff and responses, classification summaries, sentence status summaries, and identification documents.

15. In addition, one part of the file contains entries by numerous corrections treatment personnel, including counselors, physicians, and treatment staff. This portion of the jacket is considered a treatment document which enables the appropriate treatment staff to record their impressions, evaluations, and recommendations with respect to the inmate's treatment program.

-4-

16. It contains notations of inmate complaints and staff reaction thereto, status reports on adjustment progress, staff members opinions of the inmates attitude and behavior, narratives by counselors and information regarding the relationship of the subject inmate with his fellow staff.

17. If an inmate knows how he will be evaluated by staff, such as in the parole vote sheets plaintiff seeks, and how particular responses are likely to be interpreted, he is capable of manipulating the results. This can lead to all sorts of problems. First and foremost, the individual's situation may not be assessed accurately, and therefore, a valid course of rehabilitative treatment could not be prescribed. Second, these inaccuracies can lead to improper institutional placement, and as a result, the inmate may be placed where he is a danger to others or visa versa. Or, third, the inaccurate information may cause him to be prematurely released from custody, e.g. to be paroled, and thus would present a risk to the community at large.

18. Additionally, the respect to treatment information and related records, the treatment process would be impaired greatly if released to inmates. Much of what is contained in inmate treatment-related files, such as the psychiatric record, are frank observations and recommendations of treating professionals and institutional counseling staff. If this information or related records possibly were to be disclosed to others, including the inmate involved, it would necessarily inhibit them from performing their duties as they should. The value of their comments and observations would be lessened, and those making decisions regarding the inmate would not have the benefit of candid and honest appraisals.

19. The nature of the documents in the inmate's file makes it important from a security, administrative and sound correctional practices standpoint to maintain their confidentiality. Administrative decisions are made with the recommendation and comments contained in these

documents.  The value of these comments lies in their frankness; if the documents were readily available to the inmate or the public, the staff at the institutions would tend to refrain from entering their honest opinion and evaluations.  Consequently, the staff who make treatment and programming decisions based on these documents would not have the benefit of candid observations.

20.  It is my considered opinion, based upon my many years of experience in the field of corrections that if the entire inmate file were routinely made available to inmates, it would be detrimental to the treatment and safety of the inmates, the safety of the staff and the security and order of the institution, and would significantly increase the difficulty of prison administration. DOC-ADM 003 addresses information that is available to inmates that is found in their institutional file.  In accordance with this directive, plaintiff may review only these portions of his institutional file.

21.  Based upon my review of the documents requested and available documents, I believe that disclosure of the documents plaintiff seeks would undermine the secure and orderly operation of SCI-Huntingdon and compromise the staff's ability to carry out penological goals and ultimately threaten the security of the institution and the rehabilitation of the inmate.

_____
**DATE**

_____
**MARTIN F. HORN, SECRETARY**
Pennsylvanian Department of Corrections

**EXHIBIT "B"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
                                    :
      Plaintiff               :
                                    :
    v.                            :    No. 1:00-CV-00485
                                    :    (Judge Rambo)
MARTIN HORN, et al.,                :
                                    :
      Defendants              :

## UNSWORN DECLARATION OF WILLIAM F. WARD

I, William F. Ward, hereby state under the penalty of perjury that the following is true and correct based upon my personal knowledge:

1.      I am employed by Commonwealth of Pennsylvania, Board of Probation and Parole ("Board"). I am the Chairman of the Board and have held this position since March 31, 1997.

2.      As chairman, I am the chief executive and responsible for the overall administration of the Board. I am familiar with the standard policies, procedures and documents utilized by the Board and understand their reasoning and purpose. I am also familiar with the Board's record keeping practices and the policies concerning dissemination of the various records and information we maintain concerning inmates .

3.      In the course of this litigation the plaintiff has requested a variety of institutional records. Specifically, he seeks documents relied upon by defendants in support of their decisions, documents submitted to the Board by the Department of Corrections, and other sources, as well as psychological profiles, counselor and therapy records.

4.      I have personally reviewed plaintiff's request for production of documents and defendants responses and objections. I am familiar with the kind of information contained in the

documents plaintiff, Ronald Riley seeks and I have reviewed portions of the specific documents he has requested to verify that they contain this information.

5.    In my opinion disclosure of these documents in their entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and their staff's ability to carry out a significant penological goal — the rehabilitation of the plaintiff.

6.    Much of what is contained in parole files are documents such as Board and counselor's notes, parole reviews, vote sheets and psychological files contain frank observations and recommendations of the Board and the Department of Corrections.  This information is kept confidential and is not made available to inmates.  If this information or the related documents were disclosed it would inhibit the candor of those professionals in making their observation and remarks and, as a result impair rehabilitation efforts.  In addition, if plaintiff knows how he is likely to be evaluated by staff and how his responses are likely to be interpreted, he is capable of formulating his response to manipulate the results.  This could lead to inappropriate decisions regarding his eligibility to be released into the community through parole which might present a risk to the community at large.

7.    In addition, pursuant to  37 Pa.Code §61.2, "[r]ecords, reports and other written things, information, evaluation, opinions and voice recordings in the Board's custody or possession or touching on matters concerning probation or parole are private, confidential, and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing parole will at all reasonable times be open to public inspection in the offices of the Board."  Other than the

Notices of the Board's Decision or "green sheets" information contained in parole files is not available to inmates.

8.     In his request, Riley is seeking his parole review dated September 28, 1999 and the Vote Sheets dated December 8, 1999.  I have reviewed these documents and it is my opinion that release of this information could compromise the Board's and staff's ability to rehabilitate the plaintiff.  The information contained in these documents contain the same sort of remarks and observations described in paragraph 6 of this declaration and it is this type of information that is kept confidential and privileged pursuant to 37 Pa. Code §61.2.

9.     For these reasons, I conclude that disclosure of the information plaintiff seeks in document request 14, 16, 17 and 20 would undermine the legitimate penological goals of rehabilitating and paroling the plaintiff and other inmates, as well as create internal security concerns for the Department of Corrections.

August 14, 2000
**DATE**

William F. Ward
**WILLIAM F. WARD**

Objections interposed on
behalf of defendants by:

By: _____

MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA  17120
FAX:  (717) 772-4526
Direct Dial:  (717) 787-9719
DATE:  August 17, 2000

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                          :
                                          :
      **Plaintiff**                       :
                                          :
    v.                                  :   **No. 1:00-CV-00485**
                                          :   **(Judge Rambo)**
MARTIN HORN, et al.,                      :
                                          :
      **Defendants**                     :

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I

caused to be served the foregoing Defendants' Response to Request for Production of

Documents, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA 16654-1112


                                 **MARYANNE M. LEWIS**
                                 **DEPUTY ATTORNEY GENERAL**

**DATE: August 17, 2000**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                          :
                                          :
              Plaintiff                   :
                                          :
       v.                                 :        No. 1:00-CV-0485
                                          :        (Judge Rambo)
MARTIN HORN, et al.,                      :
                                          :
              Defendants                  :

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I

caused to be served the foregoing Documents in Support of Defendants' Reply in Support of

Their Motion for Summary Judgment, by depositing a copy of the same in the United States

mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Ronald A. Riley, #AK-8743
SCI-Huntingdon
Drawer R
1100 Pike St.
Huntingdon, PA  16654-1112


_____
MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL


DATE:  April 23, 2001