

51
7/20/01
MA

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. RILEY,                    :
           Plaintiff        :        No. 1:CV-00-0485

                       :

vs.                                 :

                       :        (Judge Rambo)

MARTIN F. HORN, et al.,             :
           Defendants       :

**FILED**
HARRISBURG, PA

JUL 2 0 2001

## <u>MEMORANDUM</u>

MARY E. D'ANDREA, CLERK
Per _____
               Deputy Clerk

## <u>Background</u>

       The plaintiff, Ronald Riley, an inmate at the State Correctional

Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed this civil

rights action pursuant to 28 U.S.C. § 1983. The complaint is accompanied by

an application to proceed <u>in forma pauperis</u>. The Prison Litigation Reform Act

(the "Act"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), imposed

new obligations on prisoners who file suit in federal court and wish to proceed

<u>in forma pauperis</u> under 28 U.S.C. § 1915, <u>e.g.</u>, the full filing fee ultimately

must be paid (at least in a non-habeas suit).[1] Named as defendants in the

---

1.   The plaintiff completed this court's form application to proceed <u>in forma pauperis</u> and
authorization to have funds deducted from his prison account. The court then issued an
administrative order directing the warden of SCI-Huntingdon to commence deducting the
full filing fee from plaintiff's prison trust fund account.

complaint are Martin Horn, commissioner of the Pennsylvania Department of Corrections ("DOC"); Frederick Frank, superintendent at SCI-Huntingdon; Clinton Myers, deputy superintendent at SCI-Huntingdon; James Grace, major of the guard at SCI-Huntingdon; Gil Levy, intelligence captain at SCI-Huntingdon; Diana Baney, grievance coordinator at SCI-Huntingdon; Joel Keller, unit manager of EA block at SCI-Huntingdon; Tim Launtz, unit manager of AA block and then FA block at SCI-Huntingdon; Buzminsky, a correctional counselor for EA block at SCI-Huntingdon; Stidd, a hearing examiner; Hoover, a correctional officer at SCI-Huntingdon; Julie McFadden, a correctional officer at SCI-Huntingdon; William Ward, chairman of the Pennsylvania Board of Probation and Parole; and J. Harvey Bell, director of inmate bureau services.

In the complaint, Riley claims that the defendants unlawfully transferred him to SCI-Huntingdon. Plaintiff further alleges that while at SCI-Huntingdon he received a "bogus" misconduct in retaliation for a prior charge of staff assault. Plaintiff alleges the misconduct resulted in his parole release date being revoked. (Doc. 1, Complaint.)

Pending before the court is defendants' motion for summary judgment. (Doc. 41.) Also pending before the court is plaintiff's motion to

amend his motion and memorandum in support of his motion to compel

discovery (Doc. 35) and plaintiff's motion for request for deposition transcript

(Doc. 36).  The motion for summary judgment  has been fully briefed and is

ripe for disposition.  For the reasons set forth below, the defendants' motion

for summary judgment will be granted.  Because summary judgment is

granted for defendants, plaintiff's discovery motions will be dismissed as

moot.[2]


## Discussion

### A.  Standard of Review

Summary judgment is appropriate when supporting materials, such

as affidavits and other documentation, show there are no material issues of

fact to be resolved, and the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56.  The Supreme Court has ruled that Fed. R. Civ. P.

56(c) "mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing

_____

2.    It should be noted, however, that the plaintiff has not contended that he needs the
discovery to oppose the motion for summary judgment.  See Pastore v. The Bell
Telephone Co. of Pennsylvania, 24 F.3d 508 (3d Cir. 1994); Dowling v. City of
Philadelphia, 855 F.2d 136 (3d Cir. 1988); Radich v. Goode, 886 F.2d 139 (3d Cir. 1989).

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. 317 (1986). The court further stated that "Rule 56 (e) . . . requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324. The Supreme Court in Anderson v. Liberty Lobby, 477 U.S. 242 (1986), held that the opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. See Celotex, 477 U.S. at 325. Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. Liberty Lobby, 477 U.S. at 256-57.

With these principles in mind, the court will first set forth the allegations in the complaint and the materials submitted by the defendants. Plaintiff states that on or about October 5, 1993, he was approved for release on parole on December 23, 1993, by the Pennsylvania Board of Probation and Parole ("Board"). Riley asserts that on or about October 10, 1993 he received a misconduct for assault on defendant Julie McFadden. Plaintiff

4

states a hearing was held on October 17, 1993.  On October 18, 1993, plaintiff was found guilty of assaulting McFadden and sentenced to approximately ninety (90) days in disciplinary lockup.  Plaintiff states he was stripped of his outside clearance and lost his parole date as a result of the misconduct.  (Doc. 1, p. 3.)

Plaintiff states he remained in lockup an additional ninety (90) days awaiting transfer.  On or about April 4, 1994, Riley was transferred to the State Correctional Institution in Pittsburgh, Pennsylvania ("SCI-Pittsburgh").  Plaintiff asserts that after receiving five (5) one year setbacks from the Board due to the misconduct at SCI-Huntingdon, he was again granted parole on March 2, 1999.  Plaintiff states that he was ordered on March 25, 1999, to be transferred to the State Correctional Institution at Greene ("SCI-Greene") for placement in outside units.  However, on May 12, 1999, Riley instead was transferred to SCI-Huntingdon.  (Doc. 1, p. 4.)

Plaintiff states that on May 12, 1999, defendant Buzminsky notified SCI-Huntingdon that there was an active separation between plaintiff and SCI-Huntingdon.  Plaintiff states that on May 12, 1999 he submitted a request slip to defendants Buzminsky and Keller requesting "a transfer immediately" before he was "set-up and put in the hole . . . ."  (Doc. 1, exhibit C.)

Plaintiff states that on May 23, 1999, he submitted a request slip to defendants Buzminsky and Franks, he sent a letter to defendant Horn, and filed an official grievance with Baney reporting racial remarks and threats to retaliate by defendant Hoover. (Doc. 1, exhibit D.)  On May 29, 1999, defendant Hoover charged plaintiff with a class 1 category B-4 violation (engaging in acts with others or sodomy) and a class 1 category D-25 violation (violation of visiting regulations 2D unacceptable personal conduct) based on a visit plaintiff had with a female friend. (Doc. 1, p. 4-5.)  Plaintiff states he submitted a request slip to defendant Buzminsky and a grievance with defendant Baney stating the misconduct was a setup by defendant Hoover and requesting a transfer. (Doc. 1, exhibit F.)

Plaintiff states that a hearing was held on June 2, 1999, regarding the above incident. Plaintiff asserts that defendant Stidd refused to review the videotape evidence from a camera inside the visiting room. The category B-4 charge was dismissed, but plaintiff was found guilty of the  category D-25 violation. Plaintiff states he appealed the finding to the prison review committee. The committee reduced the D-25 charge to a class 2 category 35 charge which is any violation of a rule or regulation in the inmate handbook

not specified as a class 1 misconduct charge.  Plaintiff states his parole

release date was suspended on July 6, 1999 by the Board.  (Doc. 1, p. 5.)

Plaintiff states that on or about July 24, 1999, he filed an appeal for

administrative relief from the Board's suspension of his parole release date.

He states that on August 16, 1999, he sent a request slip to his new

counselor after he was moved to a new block to apprize her of his situation

with defendant Hoover and his efforts to secure a transfer.  Plaintiff did the

same on September 6, 1999, with the unit manager of his new block.  (Doc. 1,

p. 5-6.)

Plaintiff asserts that on December 8, 1999, the Board officially

rescinded his parole release date because of his misconduct.  He states that

on December 20, 1999, he filed a motion for adjudication to compel the Board

to answer his appeal for administrative relief.  On January 7, 2000, plaintiff

filed an appeal for administrative relief from the Board as to their decision to

rescind his parole release date.  (Doc. 1, p. 6.)

On March 15, 2000, the plaintiff filed the instant civil rights action

pursuant to 28 U.S.C. § 1983.  Plaintiff contends that his transfer back to SCI-

Huntingdon while there was an active separation constituted cruel and

unusual punishment in violation of the Eighth Amendment and the due

7

process and equal protection clauses of the Fourteenth Amendment. In support of his claim, plaintiff states that "Defendants put Plaintiff's life in danger by excepting Plaintiff back inside SCI-Huntingdon having full knowledge that there is an active separation between Plaintiff and SCI-Huntingdon . . . ." (Doc. 1, p. 7.) Plaintiff further asserts that defendant's racial comments amounted to cruel and unusual punishment in violation of the Eighth and First Amendments. Plaintiff claims defendants conspired to deny plaintiff parole through the use of a "bogus" misconduct and retaliated against him for the October 10, 1993 incident. (Id.) Plaintiff also states the Board violated his First Amendment and Fourteenth Amendment rights by refusing to answer his appeals. (Id.) Finally, plaintiff alleges that defendants recklessly and with gross negligence and deliberate indifference to plaintiff's well being, failed to adequately train and supervise it's employees and is therefore liable to plaintiff for the violations of plaintiff's constitutional rights caused by the actions of "these" employees. (Id.)

For relief, the plaintiff requests declaratory judgment that defendants violated his constitutional rights. (Id.) Plaintiff also seeks injunctive relief including the removal of the bogus misconduct from his file and prohibiting defendants from punishing or retaliating against him. (Id.) Plaintiff also seeks

compensatory damages for his mental and emotional distress and punitive damages for defendants' intentional and knowing deprivation of plaintiff's constitutional rights. (Id.)

To pierce these allegations, the defendants submit a motion for summary judgment supported by unsworn declarations by defendants and witnesses as well as a copy of Ronald Riley's deposition transcript. (Doc. 46, Documents in Support of Defendants' Motion for Summary Judgment.) The first unsworn declaration is by defendant Baney who serves as grievance coordinator at SCI-Huntingdon. (Id. at 1.) Baney is responsible for maintaining records of all grievances filed by inmates at SCI-Huntingdon. The records are maintained manually as well as in the Inmate Grievance Tracking Systems database. (Id.)

Baney states that in accordance with DOC Administrative Directive 804 ("DOC-ADM 804"), the Consolidated Inmate Grievance Systems outlines the policies and procedures followed with respect to inmate grievances. The policy is found in the inmate handbook issued to all inmates. Inmate grievances are written on an official inmate grievance form. Baney states that upon receipt of an official inmate grievance, she reviews the grievance to determine the appropriate assignment to a grievance officer for written

response.  Baney claims that the routine practice is for the grievance officer to respond to the grievance in writing, make a copy of the grievance and response, and place a copy of both the grievance and the response in the inmate's institutional file.  The grievance is also recorded on the Inmate Grievance Tracking System.  (Id. at 2)

Baney states that in 1999 she would routinely respond to grievances in one of two ways.  If the grievance did not meet the standard criteria as outlined in DOC-ADM 804, she would return the grievance to the inmate without assigning a grievance number to the form.  Baney would respond to the inmate on a separate form indicating the deficiency with the grievance and what was needed in order for the grievance to meet DOC-ADM 804 standards.  Baney states she would copy the grievance and her response and place them in the inmate's institutional file.  (Id.)

Baney states that if the grievance met the standards of DOC-ADM 804, she would assign the grievance a number in the space provided on the form and review the grievance for appropriate assignment.  The grievance number, date of the grievance, and the subject of the grievance was recorded on a handwritten item log.  Baney states her secretary is responsible for inputting the same information in the Inmate Grievance Tracking System

10

database.  The grievance officer would then respond in writing to the inmate

within ten (10) working days of the action taken concerning the grievance.

(Id.)

Baney states that as a named defendant, she received a copy of the

complaint and attached exhibits.  The exhibits include two grievances which

plaintiff alleges he filed on May 23, 1999 and May 29, 1999.  Baney asserts

she has no record of receiving these grievances.  She furthers contends she

reviewed Riley's institutional file and there are no copies of those grievances

in his file.  The grievances do not appear in the Inmate Grievance Tracking

System database.  (Id.)

Baney also states that as assistant to the superintendent, it is her

duty and responsibility to maintain a record of an inmate's request to the

Superintendent.  Baney says that she follows a similar procedure for inmate

request forms as inmate grievance forms.  If Baney received an inmate

request form, she would place a copy of it and the superintendent's response

in the inmate's institutional file.  Baney states that an inmate request to staff

members form dated May 12, 1999 and marked as exhibit D by plaintiff does

not exist in Riley's institutional file.  (Id. at 4.)

An unsworn declaration was also submitted by defendant Buzminsky. As Riley's counselor when he first arrived at SCI-Huntingdon in May 1999, Buzminsky states he was part of Riley's Initial Reception Committee ("IRC"). Buzminsky asserts that the purpose of an IRC review is to screen inmates for housing needs, medical clearance, placement needs and to gather information from the inmate. (Doc. 46.)  Buzminsky states that during the IRC review he noted to the committee that Riley's file contained a staff separation. Buzminsky contends that the purpose of the separation was to protect the staff person from any further contact initiated by Riley.  He states that the separation was not issued for Riley's protection from any staff inmates or staff.  Buzminsky further states that he explained to Riley that McFadden was on long term disability leave and not working at the institution.  Buzminsky states there was no active institutional separation. (Id.)  Buzminsky also contends that he never received two inmate request staff member forms attached as exhibits D by plaintiff.  Buzminsky states that if he had received such a request, he would have responded in writing and a copy of the request and response would have been placed in Riley's institutional file, the DC-15, or his institutional treatment file, the DC-14. (Id.)  Buzminsky states no such documents exist in the DC-14 file or Riley's DC-15 file.

Debra Dell, executive secretary to the secretary of the DOC, submitted an unsworn declaration and stated that the inmate tracking system, the inmate record department, the secretary's correspondence record, and the deputy secretary of the eastern region's record were searched and that there are no records of any correspondence by plaintiff to former secretary Horn in May or June of 1999.  (Id.)

An unsworn declaration was submitted by Donald Williamson, diagnostic and classification coordinator for the DOC.  Williamson states that pursuant to DOC regulations, when an inmate is transferred for parole to a community corrections center ("CCC") with a parole date in excess of thirty days, the inmate is transferred to one of three correctional institutions.  The institution that the inmate is transferred to is determined by the location of the CCC.  Williamson states that effective February 22, 1999, inmates paroled to CCC's in Region II were transferred to SCI-Huntingdon.  Prior to the addition of the CL-2 unit at SCI-Huntingdon in February, 1999, inmates in Region II and III were sent to SCI-Greene.  Riley was approved to be paroled to a CCC in Harrisburg, Pennsylvania which is located within Region II; therefore, he was transferred to SCI-Huntingdon.  (Id.)

Stephen Dougherty, personnel director at SCI-Huntingdon also provided an unsworn declaration. Dougherty states that defendant McFadden's last day at work at SCI-Huntingdon was November 16, 1996. He further states that McFadden resigned from her position on November 18, 1997. (Id.)

To the extent that plaintiff bases any of his claims to his misconduct issued in October 1993, the defendants argue that the plaintiff is barred by the statute of limitations. As to plaintiff's retaliatory claim, defendants contend that Riley has no constitutionally protected right to be transferred to any particular prison, and his misconduct was not issued for retaliatory purposes. With regards to plaintiff's allegation that defendants violated his constitutional rights because they were deliberately indifferent to a pattern of racial discrimination, failed to adequately supervise and train their employees, and maliciously and intentionally failed to alleviate his endangered and vulnerable condition, defendants assert that as a matter of law, they were not deliberately indifferent and that plaintiff fails to demonstrate personal direction or actual knowledge and acquiescence of certain named defendants and relies upon a theory of respondeat superior as to other named defendants. Lastly, defendants contend that plaintiff failed to exhaust his administrative

14

remedies based upon the evidence presented by defendants and plaintiff's own admissions during his deposition.[3]

### B. Statute of Limitations

In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).

The United States Supreme Court clarified its decision in Wilson when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989).  Pennsylvania's applicable personal injury statute of limitations is two years.  See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir.), cert. denied, 474 U.S. 950 (1985).  Finally, the statute of limitations "begins to run from the time when

---

3.    In regard to the exhaustion of administrative remedies, 42 U.S.C. § 1997e(a) states that:  No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  Thus, the plaintiff, was required to exhaust available administrative remedies prior to initiating the instant § 1983 action.

the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." Gentry v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

Plaintiff received his first misconduct and sanction in October 1993 and as a result lost his December 23, 1993 parole date. In order to be timely, any claims against defendant McFadden or any other named defendant concerning those claims should have been filed in or before October 1995, and definitely no later than December 23, 1995. Riley admits in his deposition that the statute of limitations has run as to any claims arising from those incidents. (Doc. 46, Riley Dep. pp. 40-41.) Therefore, summary judgment is granted in favor of the defendants regarding any October 1993 claims. Furthermore, since McFadden resigned her position at SCI-Huntingdon in 1997, she was not involved in any claims arising from Riley's transfer to SCI-Huntingdon in 1999 and, therefore, summary judgment is granted in favor of defendant McFadden as to any of plaintiff's claims.

## C. Retaliation

Plaintiff alleges that defendants retaliated against him for the October 1993 incident by denying his parole through the use of a bogus misconduct charge. Riley contends that he was transferred to SCI-Huntingdon so they

16

could set him up for another misconduct in order to revoke his parole. Plaintiff asserts the retaliation constituted cruel and unusual punishment and violated his due process rights.

The Third Circuit Court of Appeals has addressed the issue of retaliation claims regarding government actions.  In Allah v. Seiverling, 229 F.3d 220, 224-25 (3rd Cir. 2000), the court held that, "government actions, while standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right," (quoting Thaddeus-X v. Blanter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  Accordingly, the law of this circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Allah, 229 F.3d at 225.

Recently, the Third Circuit revisited government action-retaliation claims and set forth the elements of a prisoner's cause of action and the burden of proof he must carry to succeed.  Rauser v. Horn, 241 F.3d 330 (2001).  As a threshold matter, a prisoner-plaintiff must prove that the conduct which lead to the alleged retaliation was constitutionally protected.  Id. at 333;

citing <u>Thaddeus-X</u>, 175 F.3d at 389; <u>see also Drexel v. Vaughn</u>, 1998 WL
151798 at *7 (E.D.Pa.)

     If the prisoner-plaintiff meets the threshold matter, he must then
show he suffered some "adverse action" at the hands of prison officials.  <u>Id.</u>
Under <u>Allah</u>, a prisoner-plaintiff satisfies this requirement by demonstrating
that the action "was sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights."  <u>Allah</u>, 229 F.3d at 225.

     Once these two threshold criteria are met, the prisoner must prove a
causal link between the exercise of the constitutional right and the adverse
action against him.  The Third Circuit in <u>Rauser</u> held that once a prisoner
demonstrates that his exercise of a constitutional right was a substantial or
motivating factor in the challenged decision, the prison officials may still
prevail by proving that they would have made the same decision absent the
protected conduct for reasons reasonably related to a legitimate penological
interest.  <u>Id.</u> at 334.

     In <u>Rauser</u>, plaintiff refused to participate in Alcoholics Anonymous
("AA") and/or Narcotics Anonymous ("NA") on the basis of his own religious

beliefs.[4]  Rauser was required to complete the programs before the DOC

would recommend release to the Board.  Rauser claimed the DOC took three

actions in retaliation for his insistence on religious freedom:  (1) the DOC

transferred Rauser from its correctional facility in Camp Hill to a facility far

from his home and family; (2) the DOC changed his job classification from the

highest level attainable by an inmate to the lowest possible designation; and

(3) the reclassification was accompanied by a dramatic drop in his rate of pay.

Id. at 332.  Finally, the DOC refused to recommend Rauser for parole due to

incompletion of treatment programs.  Id.  In Rauser, the district court

determined that Rauser's refusal to participate in a religious program was

protected by the First Amendment and that conclusion was not challenged on

appeal.  Id. at 333.  Because the prison officials did not dispute the facts that

Rauser was denied parole, transferred to distant prison where his family could

not visit him regularly, and penalized financially, the court found that Rauser

presented sufficient evidence of adversity to survive summary judgment on

that issue.  Rauser, 241 F.3d at 333.

---

4.    Both AA and NA are centered on a belief in a Supreme Being and require participants
to accept God as a treatment for their addictions.

Applying the <u>Rauser</u> standard to the facts of this case, plaintiff has failed to assert a proper claim of retaliation against the defendants. In fact, plaintiff cannot get past the threshold matter. Plaintiff alleges that defendants retaliated against him for the October 10, 1993 incident involving the assault of a fellow correctional officer. Plaintiff contends the retaliation consisted of the defendants conspiring to transfer him to SCI-Huntingdon instead of SCI-Greene and then issuing a bogus misconduct which resulted in his parole being denied. Although Riley has presented sufficient evidence of adversity, he fails to prove that the conduct, assaulting a correctional officer in 1993, which lead to the alleged retaliation was constitutionally protected. Accordingly, plaintiff fails to demonstrate that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision.

Even if plaintiff met the threshold requirement, Riley would not prevail on his retaliation claim. At the time of Riley's transfer, SCI-Huntingdon was the designated Region II CCC approved institution. (Doc. 46, Williamson ¶¶15-17). Riley was assigned to a CCC in Harrisburg, Pennsylvania which is located in Region II. Riley's transfer to SCI-Huntingdon was dictated by DOC policy. Accordingly, Riley's transfer to SCI-Huntingdon was reasonably related to a legitimate penological interest. As to the misconduct charge,

20

prison officials have a legitimate penological interest in enforcing the regulations of SCI-Huntingdon, and the Board has a legitimate penological interest in rescinding a parole release date based on the conduct of an inmate prior to his actual release date. Judgment shall be granted in favor of the defendants regarding Riley's retaliatory claims.

## D.  Eighth Amendment Claims

An Eighth Amendment claim against a prison official must meet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id.  Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 2001 WL 640713, *1 (3d Cir. June 11, 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  A defendant's knowledge of a risk can be proved indirectly by circumstantial evidence.  Beers-Capitol 2001 WL 640713 at *6.

Plaintiff contends that defendants put his life in danger in violation of the Eighth Amendment when they accepted him back into SCI-Huntingdon with full knowledge that there was an active separation between him and the institution.  (Doc. 1, p. 7.)  Applying the standard for summary judgment and

22

Fed. R. Civ. P. 56(c), plaintiff is unable to demonstrate that defendants actually knew or were aware of any excessive risk to Riley's safety under Farmer. Riley states there was an active separation between him and the institution but provides no evidence of such separation. The only separation imposed by SCI-Huntingdon regarding plaintiff was a separation between Riley and defendant McFadden for the protection of McFadden and not plaintiff. Since McFadden went on disability leave in 1996 and resigned her position in 1997, there was no valid separation at SCI-Huntingdon when plaintiff was transferred there in 1999. (Doc. 46, Keller, ¶¶ 9-11; Williamson, ¶ 16.)

Plaintiff further asserts that he submitted request slips, a letter and a grievance regarding his separation status. A review of Riley's institutional file, the institutional treatment file, the Inmate Grievance Tracking System, and the manual grievance item log shows none of these items were received by prison officials.[5] (Doc. 46, Baney, Dell, Buzminsky, Keller, Frank.) If defendants were not in receipt of the documents, they were not aware of his

---

5. Although plaintiff provided copies of inmate request to staff member slips and inmate grievance forms as part of his exhibits to his complaint (Doc. 1), the slips are not signed by staff members nor are responses written in the disposition section. As to the grievances, the grievances are not signed by the grievance coordinator and were not assigned grievance numbers which would verify that they were submitted and processed. Plaintiff cannot demonstrate that these documents were ever actually submitted.

23

concerns, whether the concerns were valid or not.  Arguably, there was no risk to plaintiff because no separation existed when he was transferred back to SCI-Huntingdon.  Because plaintiff fails to make a showing sufficient to establish the existence of deliberate indifference on the part of defendants, summary judgment will be granted on behalf of defendants regarding plaintiff's Eighth Amendment claims with respect to his transfer and alleged active separation with SCI-Huntingdon.

Insofar as Riley is alleging deliberate indifference to a pattern of racial discrimination and failure to adequately supervise and train employees, plaintiff fails to establish a constitutional claim against the defendants.  It is well-settled that liability under 42 U.S.C. § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct, shown through specific allegations of personal direction or actual knowledge and acquiescence.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  To be liable, a defendant must have directed, or known of and acquiesced in, the deprivation of plaintiff's constitutional rights.  Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990).

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements:  (1) that the conduct complained of was committed by a

person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode, 845 F.2d at 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).

Other than the seating arrangement in the dining hall at SCI-Huntingdon and an alleged racial slur by defendant Hoover (Doc. 1) on a day Hoover was not even working (Doc. 46, Dougherty ¶ 5), plaintiff fails to demonstrate any racial discrimination. Furthermore, plaintiff's allegations are devoid of specificity as to the named defendants; therefore, § 1983 liability is unavailable. Because plaintiff is clearly relying upon a theory of respondeat superior and fails to demonstrate any personal involvement, summary

judgment will be granted for defendants as to plaintiff's racial discrimination claims and inadequate supervision claims.[6]

Therefore, defendants' motion for summary judgment is granted. Plaintiff's motion to amend his motion/memorandum in support of motion to compel discovery and motion for request for deposition is dismissed as moot. An appropriate order will be issued.

SYLVIA H. RAMBO
United States District Court

Dated: July  20 , 2001.

---

6.   Defendants also contend that plaintiff failed to exhaust his administrative remedies. and summary judgment should be granted pursuant to Booth v. Churner, 121 S.Ct. 1819 (2001). From the information provided in the complaint, the attached documents to the briefs and complaint, and Riley's deposition, it is clear that Riley did not exhaust all of his administrative remedies. However, after his deposition and while this matter has been pending with this court, Riley has attempted to exhaust his remedies; therefore, dismissal solely on that ground would be futile at this point. (Doc. 48, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment).
        As to plaintiff's claim that the Board violated his First Amendment and Fourteenth Amendment rights by refusing to answer his appeals, the Board was not named as a defendant in this action.  If a claim had been properly filed as to the Board, any claim against the Board would have been dismissed pursuant to an Eleventh Amendment immunity analysis.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

\* \* MAILING CERTIFICATE OF CLERK \* \*

July 20, 2001

Re:  1:00-cv-00485   Riley v. Horn

True and correct copies of the attached were mailed by the clerk
to the following:

        Ronald A. Riley
        SCI at Huntingdon
        AK-8743
        Drawer R
        1100 Pike Street
        Huntingdon, PA  16654-1112

        Maryanne Mueller Lewis, Esq.
        Pennsylvania Office of Attorney-General
        Strawberry Square
        Harrisburg, PA  17120

cc:
Judge                       (X )              (X ) Pro Se Law Clerk
Magistrate Judge            (  )              (  ) INS
U.S. Marshal                (  )              (  ) Jury Clerk
Probation                   (  )
U.S. Attorney               (  )
Atty. for Deft.             (  )
Defendant                   (  )
Warden                      (  )
Bureau of Prisons           (  )
Ct Reporter                 (  )
Ctroom Deputy               (  )
Orig-Security               (X )
Federal Public Defender     (  )
Summons Issued              (  )  with N/C attached to complt. and served by:
                                  U.S. Marshal (  )    Pltf's Attorney (  )

Standard Order 93-5         (  )
Order to Show Cause         (  )  with Petition attached & mailed certified mail
                                  to:  US Atty Gen   (  )  PA Atty Gen (  )
                                       DA of County  (  )  Respondents (  )

Bankruptcy Court            (  )
Other_____      (  )
                                         MARY E. D'ANDREA, Clerk

DATE: July 20th, 2001                    BY: _____
                                              Deputy Clerk